Mark E. MacDonald, TX Bar No. 12758300
Mark E. MacDonald, Jr. IL Bar No. 6217592
Daniel J. Artz, TX Bar No. 01365570
MacDonald + MacDonald, P.C.
10300 N. Central Expressway, Suite 335
Dallas, TX 75231
(214) 237-4220; Facsimile: (214) 890-0818
Email: mark@macdonaldlaw.com
**PROPOSED COUNSEL FOR DEBTORS
AND DEBTORS IN POSSESSION**

## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| **IN RE** | § | **CASE NO. 3:10-30561-hdh-11** |
| | § | |
| **DLH Master Land Holding, LLC,** | § | **CHAPTER 11** |
| | § | |
| **Allen Capital Partners, LLC,** | § | **Application for Joint** |
| **Debtors.** | § | **Administration Pending** |
| _____ | § | |

### DEBTORS' MOTION FOR INTERIM AND FINAL ORDERS
### (I) AUTHORIZING DEBTORS TO OBTAIN POST-PETITION FINANCING
### PURSUANT TO 11 U.S.C. § 105 AND 364 (c)and(d); (II) SCHEDULING A FINAL
### HEARING PURSUANT TO BANKRUPTCY RULE 4001(b) AND (c);
### AND (III) GRANTING RELATED RELIEF

Debtors by their proposed attorneys, MacDonald + MacDonald, P.C., move for

interim and final orders  (i) authorizing debtors to obtain post-petition  financing pursuant to

11 U.S.C. §§ 105 and 364 (c) and (d);  (ii) scheduling a final hearing pursuant to Bankruptcy

Rule 4001(b) and (c); and (iii) granting related relief

### Background

1.      On January 25, 2010 (the "Petition Date"), Debtors commenced these cases by

each filing voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.

2.      Debtors remain in possession of their assets and continue to operate and manage their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107 and 1108.

3.      No trustee, examiner or committee of creditors has been appointed in these cases.

4.      The factual background regarding each Debtor, including its current and historical business operations and the events precipitating these Chapter 11 filings, is set forth in detail in (a) Declaration of Daniel J. McAuliffe in Support of First Day Motions ("McCauliffe Declaration") and the Declaration of Richard Allen of Background Facts Regarding Debtors ("Allen Declaration"), both of which are incorporated herein by reference.

5.      Pointe Property Group, Inc. and Allen Investments, Inc. (collectively, "DIP Lenders") loaned Debtors with a $ 590,000 secured by a junior lien on all DLH real estate filed in order to enable Debtors to fund retainers for its professionals and continue operations until a bankruptcy filing could be effectuated.

6.      The DIP Lenders are able and willing to lend up to one million dollars ($1,000,000) immediately under the proposed DIP Facility.

7.      For liquidity reasons, however, the obligation of the DIP Lenders to lend any monies beyond the initial $1,000,000 is contingent on the sale of non-debtor property by affiliates.

8.      There is no fee or interest expense associated with the unused portions of the proposed DIP Facility, so the size of the DIP Facility and the fact that part of the proposed DIP Financing is contingent does not impact the monies owed by the Debtors under the Facility.

## SUMMARY OF RELIEF REQUESTED

9.      Post-petition financing is vital to Debtors' ability to continue to operate their business during these chapter 11 cases and to Debtors' successful reorganization. If Debtors are unable to properly finance their business, they risk being forced to cease all operations and a fire sale liquidation which would not benefit the existing creditors and might destroy much of the work done to develop the Dallas Hub project as an Inland Port.

10.     To obtain post-petition financing, Debtors have engaged in good faith and arms-length negotiations with Pointe Property Group, Inc. and Allen Investments, Inc. (collectively the "DIP Lenders"). These negotiations have culminated in the DIP Lenders' agreement to provide Debtors with post-petition financing (the "DIP Facility") on the terms and subject to the conditions summarized below.

11.     Pursuant to Bankruptcy Rule 4001 and Local Rule 4001-2, below are the essential terms of the DIP Facility:

| | |
|---|---|
| Borrowers: | DLH Master Land Holding, LLC<br>Allen Capital Partners, LLC |
| DIP Lenders: | Pointe Property Group, Inc.<br>Allen Investments, Inc. |
| Revolving Credit Limit: | $ 2,250,000 |
| Maturity Date: | The earlier of (i) effective date for a confirmed Chapter 11 Plan of Reorganization or (ii) December 31, 2011. |
| Closing Date: | The date upon which the Court approves the DIP Facility on an interim basis. |
| Purpose/Use of Proceeds: | Proceeds of the Loans under the DIP Facility will be used solely in accordance within 110% of Debtors projected expenditures (on a cumulative basis) which shall be in form and substance satisfactory to the DIP Lenders (the "Expenditure Budget") and which will include the following payments: (i) funding of the Borrowers' post-petition |

| | |
|---|---|
| | operating expenses incurred in the ordinary course of business and (ii) certain other costs and expenses of administration of Debtors' Chapter 11 cases. |
| Interest Rate: | Fluctuating rate per annum which shall from day to day be equal to the lesser of (a) the Maximum Rate (as hereinafter defined), or (b) a rate ("Contract Rate"), calculated on the basis of the actual days elapsed but computed as if each year consisted of 365 days, equal to the sum of (i) the Prime Rate of interest ("Base Rate") as established from time to time by Bank of America (which may not be the lowest, best or most favorable rate of interest which Bank of America may charge on loans to its customers) plus (ii) 800 basis points, each change in the rate to be charged on this Note to become effective without notice to Borrower on the effective date of each change in the Maximum Rate or the Base Rate, as the case may be; provided, however, that if at any time the Contract Rate shall exceed the Maximum Rate, thereby causing the interest on this Note to be limited to the Maximum Rate, then any subsequent reduction in the Base Rate shall not reduce the rate of interest on this Note below the Maximum Rate until the total amount of interest accrued on this Note equals the amount of interest which would have accrued on this Note if the Contract Rate had at all times been in effect.  The term "Maximum Rate" shall mean at the particular time in question the lesser of 18% per annum or the maximum rate of interest which, under applicable law, may then be charged on outstanding loans under the DIP Facility. If such maximum rate of interest subsequently changes, the Maximum Rate shall be automatically increased or decreased, as the case may be, without notice to Debtors from time to time as of the effective date of each change in such maximum rate. The Lender and the Borrowers agree that the Quarterly Rate Ceiling provided under Chapter 303 of the Texas Finance Code shall apply to this Note. If applicable law ceases to provide for such a maximum rate of interest, the Maximum Rate shall be equal to 18% per annum. |
| Mandatory Repayments: | Mandatory repayments of the Loans under the DIP Facility shall be required in an amount equal to (i) 100% of the net sale proceeds from non-ordinary course asset sales (including, without limitation, a sale of all or substantially all of  Debtors' assets), (ii) 100% of net rents received from ADESA, (iii) 100% of the proceeds of the incurrence of any indebtedness other than in the ordinary course of business, and (iv) 100% of insurance and condemnation proceeds, in each case received by Debtors. |
| Voluntary Repayments: | Upon three (3) business days written notice and not more frequently than once per calendar week, permitted in whole or in part, with prior written notice but without premium or penalty, subject to limitations as to |

| | |
|---|---|
| | minimum amounts of prepayments and customary indemnification. Such repayments shall only be in increments of $10,000. |
| Repayment at Maturity: | The DIP Facility will be repaid in full at the Maturity Date. |
| Priority: | All amounts owing by Debtors under the DIP Facility shall be joint and several as to each Debtor and will be secured by (a) a perfected security interest with priority over the security interest securing Debtors' existing senior secured creditors to the extent to which the DIP Lenders pay the real estate property taxes due on or before January 31, 2010, enabling the DIP Lenders to be subrogated to the lien position of those taxing authorities; (b) lien on all DLH real estate junior only to all properly perfected pre petition liens against DLH real estate and (c) a junior lien against all assets of ACP except membership interests to which ACP cannot pledge without the consent of third parties.<br><br>All of the liens described herein shall be effective and perfected as of the entry of any DIP Order and without the necessity of the execution of mortgages, security agreements, pledge agreements, financing statements or other agreements. |
| Conditions Precedent to Closing: | The loan documentation will contain conditions to the closing of the DIP Facility customarily found in loan agreements for similar debtor in possession financings and other conditions deemed by the DIP Lenders to be appropriate to the specific transaction, and in any event including without limitation:<br><br>• All motions and other documents to be filed with and submitted to the Bankruptcy Court in connection with the DIP Facility and the approval thereof shall be in form and substance reasonably satisfactory to the DIP Lenders.<br><br>• The DIP Lenders shall have received and approved the Expenditure Budget, which shall include the items set forth in "Use of Proceeds" and any changes or amendments to the Expenditure Budget. |
| Conditions Precedent to Each Loan: | On the Closing Date and the funding date of each Loan, the following conditions precedent shall have been satisfied:<br><br>• Each of the DIP Orders, as the case may be, shall be in a form that is acceptable to the DIP Lenders in its sole and absolute discretion;<br><br>• The Interim Order or Final Order, as the case may be, shall be in full force and effect, and shall not have been reversed, modified, amended, stayed for a period of five (5) business days or longer, vacated or subject |

| | |
|---|---|
| | to a stay pending appeal, in the case of any modification, amendment or stay pending appeal, in a manner, or relating to a matter, that is materially adverse to the interests of the DIP Lenders;<br><br>• Debtors' use of the proceeds is consistent with the Budget and the cumulative expenditures for each category in the budget are not more than 110% of the budget amount (on a cumulative basis) without the consent of the DIP Lenders;<br><br>• There shall exist no default under the loan documentation; and<br><br>• The representations and warranties of Debtors shall be true and correct immediately prior to, and after giving effect to, funding. |
| Representations and Warranties: | The loan documentation will contain representations and warranties customarily found in loan agreements for similar debtor in possession financings and other representations and warranties deemed by the DIP Lenders appropriate to the specific transaction, including, without limitation, with respect to: valid existence, requisite power, due authorization, no conflict with applicable law, enforceability of loan documentation, accuracy of financial statements and all other information provided, compliance with law, absence of material adverse change, no default under the loan documentation, ownership of properties, no burdensome restrictions, inapplicability of Investment Company Act, compliance and continued effectiveness of the applicable DIP Order. |
| Affirmative Covenants: | Debtors jointly and severally covenant and agree with the Lenders that prior to the termination of this Agreement each Debtor will do, and if necessary cause to be done, and cause its Subsidiaries to do, each and all of the following:<br><br>CORPORATE FUNDAMENTALS. At all times: (a) renew and keep in full force and effect all of its licenses, permits and franchises; (b) do all things necessary to preserve its corporate existence and its qualifications and rights in all jurisdictions where such qualification is necessary or desirable; (c) comply with all applicable Legal Requirements in respect of the conduct of its business and the ownership of its Property; and (d) cause its Property to be protected, maintained and kept in good repair and make all replacements and additions to its Property as may be reasonably necessary to conduct its business properly and efficiently.<br><br>INSURANCE. Maintain insurance with such reputable insurers, on such of its Property and personnel, in such amounts and against such |

| | |
|---|---|
| | risks as is customary with similar Persons or as may be reasonably required by the DIP Lenders, and furnish the DIP Lenders satisfactory evidence thereof promptly upon request. The DIP Lenders shall be named as a beneficiary of such insurance as its interest may appear and Debtors shall provide the DIP Lenders, within 20 days after execution of this Agreement, with copies of the policies of insurance and a certificate of the insurer that the insurance required by this section may not be canceled, reduced or affected in any manner without 30 days' prior written notice to the DIP Lenders.<br><br>INSPECTION. Permit the DIP Lenders and its affiliates to inspect and photograph its Property, to examine its files, books and records and make and take away copies thereof, and to discuss its affairs with its officers, all at such times and intervals and to such extent as the DIP Lenders may reasonably desire.<br><br>CERTAIN CHANGES. Notify the DIP Lenders at least 30 days prior to the date that any of the Parties changes its name or the location of its chief executive office or principal place of business or the place where it keeps its books and records or the location of any of the Collateral. |
| Negative Covenants. | Debtors jointly and severally covenant and agree with the DIP Lenders that prior to the termination of this Agreement no Borrower will:<br><br>RESTRICTED PAYMENTS. At any time: (a) redeem, retire or otherwise acquire, directly or indirectly, any shares of its capital stock or membership interest or any other equity interest; (b) declare or pay any dividend (except stock dividends and dividends paid to a Borrower); or (c) make any other distribution of any Property or cash to owners of an equity interest in their capacity as such.<br><br>NATURE OF BUSINESS; MANAGEMENT. Change the nature of its business or enter into any business which is substantially different from the business in which it is presently engaged, or permit any material change in its management. |
| Events of Default: | (a) Debtors shall fail to pay any principal of or interest on the monies owed to the DIP Lenders under the DIP facility as and when due; or<br><br>(b) Any representation or warranty made in connection with any Loan Document shall prove to have been incorrect, false or misleading; or<br><br>(c) Default shall occur in the punctual and complete performance of |

| | |
|---|---|
| | any covenant of any of the Parties contained in any Loan Document, unless cured within 30 days after written notice specifying such non-performance. |
| Taxes | The DIP Facility will include customary provisions reasonably acceptable to the DIP Lenders, as to the DIP Facility, to the effect that all payments are to be made free and clear of any taxes (other than applicable franchise taxes and taxes on overall net income), imposts, assessments, withholdings or other deductions whatsoever. |
| Assignments and Participations | The DIP Lenders may assign all or any part of the DIP Facility to one or more affiliates, banks, financial institutions or other entities. Upon such assignment, such affiliate, bank, financial institution or entity will become a DIP Lender for all purposes under the loan documents. |
| Texas Property Tax Lender Act Inapplicable | Notwithstanding the DIP Lenders' subrogation to the priority of the taxing authorities pursuant to Bankruptcy Code §§ 105 and 364, the DIP Facility and DIP Lenders shall not otherwise be governed by the Texas Property Tax Lender Act or associated regulations. |

12.     Debtors submit that these terms are customary and reasonable for financing of this type.

13.     Furthermore, to the extent the current secured creditors of Debtors are willing to participate in the DIP Facility and can demonstrate an ability to fund the requested loans under the DIP Facility, the DIP Lenders are willing to allow any such existing secured creditor to participate in an agreed share of the DIP Facility.

14.     To the extent to which any existing secured creditor agrees to voluntarily pay the applicable taxing authority the real property taxes due on the property where such secured lender has a lien or mortgage or before January 29, 2010, such a creditor shall be entitled to increase their claim by the amounts so paid and the DIP Lenders will not be subrogated to the taxing authorities' lien with respect to such a property.

15.     In order to exercise this option, the secured creditor must give the DIP Lenders and Debtors notice of its intent to pay the property taxes due on such a property by January 27, 2010 and actually pay all real estate taxes due on the property in question or before January 28, 2010.

## RELIEF REQUESTED

16.     The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.

17.     This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

18.     Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

19.     The statutory bases for the relief requested herein are Bankruptcy Code sections 105 and 364.

20.     By this Motion, Debtors request the entry of the Interim Order and Final Order (i) authorizing Debtors to obtain the DIP Facility from the DIP Lenders on the terms set forth above, pursuant to Bankruptcy Code sections 105, 361, 362, 363, and 364; and (ii) scheduling a final hearing pursuant to Bankruptcy Rule 4001(b) and (c).

## BASIS FOR EXPEDITED RELIEF

**A.     Applicable Authority for Obtaining DIP Financing**

21.     Bankruptcy Code section 364(c) and (d) provides:

(c) If the trustee is unable to obtain unsecured credit allowable under section 503(b)(l) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt –
> (1) with priority over any or all administrative expenses of the kind specified in section 503(b) or 507(b) of this title;
> (2) secured by a lien on property of the estate that is not otherwise subject to a lien; or
> (3) secured by a junior lien on property of the estate that is subject to a lien.

(d)　　(1) The court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt secured by a senior or equal lien on property of the estate that is subject to a lien only if:

　　　　(A) the trustee is unable to obtain such credit otherwise; and

　　　　(B) there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted.

(2) In any hearing under this subsection, the trustee has the burden of proof on the issue of adequate protection.

22.　　Debtors who exercise sound business judgment, within the confines of the policies underlying the Bankruptcy Code, in obtaining post-petition financing are afforded deference by courts. *See*, *In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990).

23.　　Bankruptcy Rule 4001(c) governs the procedures for obtaining authorization for debtor in possession financing and provides, in relevant part: The court may commence a final hearing on a motion for authority to obtain credit no earlier than 15 days after service of the motion. If the motion so requests, the court may conduct a hearing before such 15 day period expires, but the court may authorize the obtaining of credit only to the extent necessary to avoid immediate and irreparable harm to the estate pending a final hearing.

24.　　Debtors seek entry of the Interim Order in order to avoid immediate and irreparable harm to the estate. Accordingly, pursuant to Bankruptcy Rule 4001 and Local Rule 4001-2, the Court is authorized to grant the relief requested herein.

**B.　　The DIP Lenders Are Entitled to Priming Liens as Set Forth in the DIP Facility To The Extent To Which The DIP Lenders Are Subrogated to The Existing Tax Liens**

25.　　Pursuant to Bankruptcy Code section 364(c), if a debtor is unable to obtain post-petition credit on an unsecured basis, a court may authorize the debtor to obtain post-petition credit or incur post-petition debt which entitles the post-petition lender to priming

liens, a first-priority lien on unencumbered property of the debtor, and superpriority administrative expense status. 11 U.S.C. § 364(c)(1), (2), and (3).

26.    Debtors and DIP Lenders are not seeking to have this Court grant a complete priming lien to the DIP lenders, but rather are merely seeking that the DIP Lenders be subrogated to the lien of the various taxing authorities to the extent to which the DIP Lenders are authorized to and actually pay Debtors' real estate taxes to the taxing authorities. *See also* Texas Tax Code § 32.06 which allows such subrogation in connection with payment of a delinquent tax bill or where the mortgagee has consented..

27.    A debtor seeking post-petition financing must make reasonable efforts to seek credit on an unsecured basis, but the debtor is granted deference by the court if the court finds the debtor acted within its business judgment when seeking out alternative sources of financing. *See, e.g.*, *Bray v. Shenandoah Fed. Sav. & Loan Ass'n (In re Snowshoe Co.)*, 789 F.2d 1085 (4th Cir. 1986). Moreover, a debtor is not required to exhaustively seek out every potential source of post-petition financing. *See id.*; see also *In re Mid-State Raceway, Inc.*, 323 B.R. 40, 58 (Bankr. N.D.N.Y. 2005); *In re Baxco Corp.*, 148 B.R. 855, 860 (Bankr. N.D. Ill. 1992).

28.    Debtors have unsuccessfully sought other alternatives to the DIP Lenders. Debtors negotiated in good faith and at arms-length with the DIP Lender, despite the relationships between the DIP Lenders and Debtors. To date, the DIP Lenders were the only lender that offered sufficient post-petition financing to Debtors during these Chapter 11 proceedings. Accordingly, Debtors' efforts to obtain necessary post-petition financing satisfy the requirements of Bankruptcy Code section 364(c).

**C.    Debtors Could Not Obtain Alternative Financing and the Pre-petition Senior Secured Lenders' Interests Are To Be Adequately Protected**

29.    Bankruptcy Code section 364(d) allows post-petition financing that provides a post-petition lender a senior or equal lien on a debtor's encumbered property (a "priming" lien) if (i) the debtor could not obtain alternative financing and (ii) the interests of the secured parties whose security interests are being primed are adequately protected. See 11 U.S.C. § 364(d)(1).

30.    Substantially all of Debtors' assets are encumbered and, despite the diligent efforts of Debtors and their financial advisors, Debtors have been unable to procure the required funding absent the proposed super priority claims and priming lien. Debtors have negotiated the best possible terms to obtain the funding they need to maintain sufficient liquidity to preserve their assets over the course of their Chapter 11 cases, and the DIP Lenders are unwilling to pay the applicable real estate taxes without being subrogated to the taxing authorities lien pursuant to Texas law. Accordingly, the first requirement of Bankruptcy Code section 364(d)(1) is satisfied.

**D.    The DIP Facility Should Be Authorized as Fair and Reasonable and a Sound Exercise of Debtors' Business Judgment**

31.    The terms and Conditions of the DIP Facility are fair and reasonable and were negotiated by Debtors and DIP Lenders at arms-length and in good faith.

32.    Moreover, approval of the DIP Facility will provide Debtors with immediate and ongoing access to funds to pay its current and ongoing operating expenses, including post-petition wages and salaries and vendor costs. Unless these expenditures are made, Debtors will be forced to cease operations, which would result in irreparable harm to the business, deplete going concern value, and jeopardize Debtors' ability to reorganize.

33.     Because cash collateral is insufficient to fund such expenditures, the credit provided under the DIP Facility is necessary to preserve and enhance the value of the estates for the benefit of all stakeholders. Additionally, the availability of credit under the DIP Facility will provide confidence to the residents, employees, and trade vendors, thereby promoting a successful reorganization. Accordingly, the timely approval of the relief requested herein is imperative.

34.     Debtors submit that the circumstances of this case require Debtors to obtain financing under Bankruptcy Code sections 364(c) and (d), and accordingly, the DIP Facility reflects the exercise of sound business judgment.

**E.     Section 364(e) Protections Should Apply to the DIP Financing**

35.     The terms and conditions of the DIP Facility are fair and reasonable, and were negotiated extensively by well-represented, independent parties in good faith and at arms-length despite the relationships between the parties.

36.     Accordingly, the DIP Lenders and all obligations incurred under the DIP Facility should be accorded the benefits of Bankruptcy Code section 364(e).

**F.     Interim Approval And Scheduling Of Final Hearing**

37.     Bankruptcy Rules 4001(b) and (c) provide that a final hearing on a motion to obtain credit pursuant to Bankruptcy Code section 364, respectively, may not be commenced earlier than fifteen (15) days after the service of such motion. Upon request, however, the Court is empowered to conduct a preliminary expedited hearing on the motion and authorize the use of cash collateral and the obtaining of credit to the extent necessary to avoid immediate and irreparable harm to a debtor's estate pending a final hearing.

38.     Pursuant to Bankruptcy Rules 4001(b) and (c), Debtors request that the Court conduct an expedited preliminary hearing on this motion and (a) authorize Debtors to borrow up to $1,000,000 under the DIP Facility on an interim basis, pending entry of a Final Order, in order to (i) maintain and finance the ongoing operations of Debtors, (ii) allow Debtors to avoid additional penalties and interest on their property taxes and (iii) avoid immediate and irreparable harm and prejudice to Debtors' estates and all parties in interest, and (b) schedule the Final Hearing.

39.     Debtors have an urgent and immediate need for cash to continue to operate. Without post-petition financing Debtors will not have sufficient funds with which to operate the business on an ongoing basis during these Chapter 11 cases. Absent authorization from the Court to obtain secured credit, as requested, on an interim basis pending the Final Hearing, Debtors will be immediately and irreparably harmed. Accordingly, the interim relief requested is critical to preserving and maintaining the going concern value of Debtors and facilitating its reorganization efforts.

## G.     Waiver of Bankruptcy Rules 6004(a) and (h)

40.     Debtors believe an efficient and expeditious approval and implementation of the DIP Facility is in the best interests of its creditors and other parties in interests. Accordingly, Debtors seek waiver of the notice requirements under Bankruptcy Rule 6004(a) and any stay of orders authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

**NOTICE**

41.     Notice of this Motion is being provided to (i) the United States Trustee for the Northern District of Texas; (ii) Debtors' 30 largest unsecured creditors on a consolidated

basis; (iii) counsel to the DIP Lenders; (iv) the pre-petition secured lenders; and (iv) any known lienholders whose liens are impacted by the DIP Lenders' subrogation to the liens of the property tax authorities. Debtors submit that, in light of the nature of the relief requested, no other or further notice is necessary or required.

WHEREFORE, Debtors respectfully request that the Court enter an order granting the relief requested herein and such other relief as is just and proper.

Respectfully submitted,

By: /s/ Mark E. MacDonald
Mark E. MacDonald, TX Bar No. 12758300
MACDONALD + MACDONALD, P.C.
10300 N. Central Expressway, Suite 335
Dallas, TX 75231
(214) 237-4220; Facsimile: (214) 890-0818
Email: mark@macdonaldlaw.com
**PROPOSED COUNSEL FOR DEBTORS
AND DEBTORS IN POSSESSION**

**EXHIBIT A**

Proposed Interim Order

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **In re:** | § | **CASE NO. 3:10-30561-hdh-11** |
| | § | |
| **DLH Master Land Holding, LLC,** | § | **CHAPTER 11** |
| | § | |
| **Allen Capital Partners, LLC,** | § | **Application for Joint** |
| Debtors. | § | **Administration Pending** |
| _____ | § | |

**INTERIM ORDER (I) AUTHORIZING DEBTORS TO OBTAIN POST-PETITION
FINANCING PURSUANT TO 11 U.S.C. §§ 105 AND 364;
(II) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY
RULE 4001(b) AND (c); AND (III) GRANTING RELATED RELIEF**

Upon the Motion For An Interim Order (I) Authorizing Debtors To Obtain Post-Petition Financing Pursuant To 11 U.S.C. §§ 105 And 364; (II) Scheduling A Final Hearing Pursuant To Bankruptcy Rule 4001(B) And (C); And (III) Granting Related Relief (the "Motion") of the above-captioned debtors and debtors in possession (the "Debtors"); and all as more fully set forth in the Motion[1], the Court has held a hearing (the "Hearing") to consider the relief requested in the Motion. After considering of the Motion, the supporting Declarations, the record of the Hearing, and all of the proceedings before the Court and after

_____

[1]     Unless otherwise noted, capitalized terms used but not defined herein shall have the meanings provided in the Motion.

due deliberation and sufficient cause appearing therefore, the Court hereby enters the following findings of fact and law:

1.    The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

2.    The Motion and the relief requested therein is a core proceeding pursuant to 28 U.S.C. §157.

3.    Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

4.    Due and proper notice of the Motion has been provided to the necessary parties and no other or further notice need be provided.

5.    Sufficient and adequate notice of this Interim Order has been provided and no further notice of, or hearing with respect to this interim relief requested in the Motion is necessary or required.

6.    The relief sought in the Motion is in the best interests of Debtors, their creditors, and all parties in interest.

7.    The legal and factual bases set forth in the Motion establish just cause for the relief granted herein.

8.    Debtors are unable to obtain sufficient levels of unsecured credit necessary to maintain and conduct their business allowable only under Bankruptcy Code §§ 364(c)(2), (c)(3) and (d), except under the terms and conditions provided in this Interim Order.

9.    The credit and financial accomodations to be extended under the DIP facility are being extended by the DIP Lenders in good faith.

10.    The DIP Lenders are entitled to the protection of Bankruptcy Code § 364(e).

11.     It is in the best interest of Debtors' estates that they be allowed to finance their operations under the terms and conditions set forth herein.

12.     Debtors represent that without the financing proposed by the Motion, Debtors will not have the funds necessary to pay real estate taxes, post-petition payroll, payroll taxes, trade vendors, suppliers, overhead and other expenses necessary for the continued operation of Debtors' businesses and the management and preservation of Debtors' assets and properties.

13.     Debtors have requested that, pursuant to this Interim Order and the DIP Facility as finally documented between the parties, the DIP Lenders make loans and advances to be used by Debtors solely for the purposes set forth in the Motion and the DIP Facility.

14.     The ability of Debtors to continue their business and reorganize under Chapter 11 of the Bankruptcy Code depends on Debtors obtaining such financing from the DIP Lenders.

15.     The DIP Lenders are willing to make such loans and advances on a secured basis as more particularly described pursuant to the terms of the DIP Facility as finally documented between the parties and in accordance with this Interim Order.

16.     Accordingly, the relief requested in the Motion is necessary, essential and appropriate for the continued operation of Debtors' business, the management and preservation of their assets and properties and is in the best interest of Debtors, their estates and creditors.

17.     Debtors represent that they are unable to obtain unsecured credit allowable under (i) Section 503(b)(1) of the Bankruptcy Code, (ii) an administrative expense pursuant to Sections 364(a) or (b) of the Bankruptcy Code, (iii) an unsecured debt having the priority

afforded by Section 364(c)(1) of the Bankruptcy Code, or (iv) secured credit pursuant to Sections 364(c)(2).

18.     Debtors were able to obtain secured credit only by (a) granting the liens under the terms and conditions set forth in this Interim Order pursuant to Section 364(c)(3) of the Bankruptcy Code and (b) allowing the DIP Lenders to be subrogated to the lien of the taxing authorities whose claims will be paid prior to January 31, 2010 pursuant to Sections 105 and 364(c)(4) of the Bankruptcy Code.

19.     Notwithstanding the DIP Lenders' subrogation to the priority of the taxing authorities pursuant to Bankruptcy Code §§ 105 and 364(c)(4), the DIP Facility and DIP Lenders shall not otherwise be governed by the Texas Property Tax Lender Act or associated regulations.

20.     Debtors represent and the Court expressly finds that the terms of the DIP Facility among Debtors and DIP Lenders, pursuant to which the post-petition loans or advances will be made or provided to Debtors by the DIP Lenders have been negotiated at arms' length and in good faith, as that term is used in section 364(e) of the Bankruptcy Code, and are in the best interests of Debtors, their estates and creditors.

21.     Debtors represent that the relief requested by the Motion is necessary to avoid immediate and irreparable harm to Debtors' estates.

22.     Good adequate and sufficient cause has been shown to justify the granting of the relief requested in the Motion and the immediate entry of this Interim Order.

23.     Debtors have requested adequate protection for their secured lenders which are arguably being primed pursuant to 364(d)(3) pursuant to a separate Motion and the Court

incorporates its findings and Order with respect to that Motion herein by reference. A copy of this Court's Order granting adequate protection is attached hereto as **Exhibit 1** to this Order.

For the reasons set forth above, it is hereby:

ORDERED that the Motion is GRANTED; and it is further

ORDERED that the proposed borrowings under the DIP Facility are hereby approved; and it is further

ORDERED that the terms and conditions of this Order shall be immediately effective and enforceable upon its entry; and it is further

ORDERED that until such time as the Final Order is entered by this Court, Debtors are hereby authorized to borrow funds from and incur debt to the DIP Lenders in an amount up to $ 1,000,000, pursuant and in accordance with the terms and conditions of the DIP Facility, from and after the date of this Interim Order, whether prior or subsequent to the execution and delivery of the DIP Facility, and spend those funds consistent (on a cumulative basis) within 10% of the amount and type of expenditure set forth by the Expenditure Budget which is attached as **Exhibit 2** hereto and incorporated herein by reference; and it is further

ORDERED that Debtors shall provide notice, via first class mail, of this Interim Order within three business days of entry of this Interim Order on (i) the Office of the United States Trustee for the Northern District of Texas; (ii) Debtors' thirty largest creditors; and (iii) the prepetition secured lenders; and it is further

ORDERED that prior to the entry of the Final Order, the DIP Facility may be amended, modified, supplemented or the provisions thereof waived in accordance with their terms, provided, however, notice of any such amendment, modification, supplement or waiver

shall be provided to (i) the Office of the United States Trustee for the Northern District of Texas; (ii) Debtors' thirty largest creditors unless the U.S. Trustee has appointed a Creditors' Committee in this case whereupon the notice shall go to the counsel for the Creditors' Committee; and (iii) the prepetition secured lenders, each of which shall have five (5) days from the date of such notice to objection, and upon timely objections, such amendment, waiver, modifications, or supplement shall only be permited upon the entry of an order of this Court; and it is further

ORDERED that loans under the DIP Facility will be secured by (a) a perfected security interest with priority over the security interest securing Debtors' existing senior secured creditors to the extent to which the DIP Lenders pay the real estate property taxes due on or before January 31, 2010, enabling the DIP Lenders to be subrogated to the lien position of those taxing authorities; (b) a lien on all DLH real estate junior only to all properly perfected pre petition liens against DLH real estate, and (c) a junior lien against all assets of ACP except membership interests to which ACP cannot pledge without the consent of third parties; and it is further

ORDERED that all of the liens described herein shall be effective and perfected as of the entry of this Order and without the necessity of the execution of mortgages, security agreements, pledge agreements, financing statements or other agreements; and it is further

ORDERED that a final hearing on the relief sought in the Motion will be held on _____, 2010 (the "Final Hearing"), and Debtors shall provide notice, via first class mail, of the Motion, the Final Hearing, and the Final Order within three business days of the entry of the Final Order on (i) the Office of the United States Trustee for the Northern District of

Texas; (ii) Debtors' thirty largest creditors on a consolidated basis; and (iii) Debtors' prepetition secured lenders; and it is further

ORDERED that any deadline by which objections to the Motion must be filed and served is five days prior to the Final Hearing (the "Objection Deadline"). Objections to the Motion must be served on (i) Mark MacDonald, MACDONALD + MACDONALD, P.C., 10300 N. Central Expressway, Suite 335, Dallas, TX 75231 and (ii) the Office of the United States Trustee for the Northern District of Texas. A Final Hearing, if required on the Motion will be held on _____ _____, 2010 at _____ (prevailing Central Time). If no objections are filed to the Motion by the Objection Deadline, then this Court may enter a Final Order on the Motion without further notice or a hearing; and it is further

ORDERED that Debtors are authorized and empowered to take all actions necessary to effectuate the relief granted pursuant to this Interim Order in accordance with the Motion; and it is further

ORDERED that this Court will retain jurisdiction to address all disputes related to the interpretation or enforcement of this Interim Order; and it is further

ORDERED that a copy of the documents constituting the DIP Facility as finally documented between the parties shall be promptly filed with this Court as an exhibit to an affidavit or declaration once the documents have been executed by the parties; and it is further

ORDERED that the DIP Facility as finally documented between the parties shall contain the following terms and conditions:

| Borrowers: (Jointly and Severally Liable) | DLH Master Land Holding, LLC<br>Allen Capital Partners, LLC |
|---|---|
| DIP Lenders: | Pointe Property Group, Inc.<br>Allen Investments, Inc. |

| | |
|---|---|
| Revolving Credit Limit: | $ 2,250,000 |
| Maturity Date: | The earlier of (i) the Effective Date for a confirmed Chapter 11 Plan of Reorganization or (ii) December 31, 2011. |
| Closing Date: | The date upon which the Court approves the DIP Facility on an interim basis. |
| Purpose/Use of Proceeds: | Proceeds of the Loans under the DIP Facility will be used solely in accordance within 110% of Debtors projected expenditures (on a cumulative basis) which shall be in form and substance satisfactory to the DIP Lenders (the "Expenditure Budget") and which will include the following payments: (i) funding of the Borrowers' post-petition operating expenses incurred in the ordinary course of business and (ii) certain other costs and expenses of administration of Debtors' Chapter 11 cases. |
| Interest Rate: | Fluctuating rate per annum which shall from day to day be equal to the lesser of (a) the Maximum Rate (as hereinafter defined), or (b) a rate ("Contract Rate"), calculated on the basis of the actual days elapsed but computed as if each year consisted of 365 days, equal to the sum of (i) the Prime Rate of interest ("Base Rate") as established from time to time by Bank of America (which may not be the lowest, best or most favorable rate of interest which Bank of America may charge on loans to its customers) plus (ii) 800 basis points, each change in the rate to be charged on this Note to become effective without notice to Debtors on the effective date of each change in the Maximum Rate or the Base Rate, as the case may be; provided, however, that if at any time the Contract Rate shall exceed the Maximum Rate, thereby causing the interest on this Note to be limited to the Maximum Rate, then any subsequent reduction in the Base Rate shall not reduce the rate of interest on this Note below the Maximum Rate until the total amount of interest accrued on this Note equals the amount of interest which would have accrued on this Note if the Contract Rate had at all times been in effect. The term "Maximum Rate" shall mean at the particular time in question the lesser of 18% per annum or the maximum rate of interest which, under applicable law, may then be charged on outstanding loans under the DIP Facility. If such maximum rate of interest subsequently changes, the Maximum Rate shall be automatically increased or decreased, as the case may be, without notice to Debtors from time to time as of the effective date of each change in such maximum rate. The DIP Lenders and Debtors agree that the Quarterly Rate Ceiling provided under Chapter 303 of the Texas Finance Code shall apply to this Note. If applicable law ceases to provide for such a maximum rate of interest, the |

| | |
|---|---|
| | Maximum Rate shall be equal to 18% per annum. |
| Mandatory Repayments: | Mandatory repayments of the Loans under the DIP Facility shall be required in an amount equal to (i) 100% of the net sale proceeds from non-ordinary course asset sales (including, without limitation, a sale of all or substantially all of Debtors' assets), (ii) 100% of net rents received from ADESA, (iii) 100% of the proceeds of the incurrence of any indebtedness other than in the ordinary course of business, and (iv) 100% of insurance and condemnation proceeds, in each case received by Debtors. |
| Voluntary Repayments: | Upon three (3) business days written notice and not more frequently than once per calendar week, permitted in whole or in part, with prior written notice but without premium or penalty, subject to limitations as to minimum amounts of prepayments and customary indemnification. Such repayments shall only be in increments of $10,000. |
| Repayment at Maturity: | The DIP Facility will be repaid in full at the Maturity Date. |
| Conditions Precedent to Closing: | The loan documentation will contain conditions to the closing of the DIP Facility customarily found in loan agreements for similar debtor in possession financings and other conditions deemed by the DIP Lenders to be appropriate to the specific transaction, and in any event including without limitation:<br><br>• All motions and other documents to be filed with and submitted to the Bankruptcy Court in connection with the DIP Facility and the approval thereof shall be in form and substance reasonably satisfactory to the DIP Lenders.<br><br>• The DIP Lenders shall have received and approved the Budget, which shall include the items set forth in "Use of Proceeds" and any changes or amendments to the Budget. |
| Conditions Precedent to Each Loan: | On the Closing Date and the funding date of each Loan, the following conditions precedent shall have been satisfied:<br><br>• Each of the DIP Orders, as the case may be, shall be in a form that is acceptable to the DIP Lenders in its sole and absolute discretion;<br><br>• The Interim Order or Final Order, as the case may be, shall be in full force and effect, and shall not have been reversed, modified, amended, stayed for a period of five (5) business days or longer, vacated or subject to a stay pending appeal, in the case of any modification, amendment or stay pending appeal, in a manner, or relating to a matter, that is |

| | |
|---|---|
| | materially adverse to the interests of the DIP Lenders;<br><br>• Debtors' use of the proceeds is consistent with the Budget and the cumulative expenditures for each category in the budget are not more than 110% of the cumulative budgeted amount without the consent of the DIP Lenders<br><br>• There shall exist no default under the loan documentation; and<br><br>• The representations and warranties of Debtors shall be true and correct immediately prior to, and after giving effect to, funding. |
| Representations and Warranties: | The loan documentation will contain representations and warranties customarily found in loan agreements for similar debtor in possession financings and other representations and warranties deemed by the DIP Lenders appropriate to the specific transaction, including, without limitation, with respect to: valid existence, requisite power, due authorization, no conflict with applicable law, enforceability of loan documentation, accuracy of financial statements and all other information provided, compliance with law, absence of material adverse change, no default under the loan documentation, ownership of properties, no burdensome restrictions, inapplicability of Investment Company Act, compliance and continued effectiveness of the applicable DIP Order. |
| Affirmative Covenants: | Debtors jointly and severally covenant and agree with the DIP Lenders that prior to the termination of this Agreement each Debtor will do, and if necessary cause to be done, and cause its Subsidiaries to do, each and all of the following:<br><br>CORPORATE FUNDAMENTALS. At all times: (a) renew and keep in full force and effect all of its licenses, permits and franchises; (b) do all things necessary to preserve its corporate existence and its qualifications and rights in all jurisdictions where such qualification is necessary or desirable; (c) comply with all applicable Legal Requirements in respect of the conduct of its business and the ownership of its Property; and (d) cause its Property to be protected, maintained and kept in good repair and make all replacements and additions to its Property as may be reasonably necessary to conduct its business properly and efficiently.<br><br>INSURANCE. Maintain insurance with such reputable insurers, on such of its Property and personnel, in such amounts and against such risks as is customary with similar Persons or as may be reasonably required by the Lender, and furnish the Lender satisfactory evidence |

| | |
|---|---|
| | thereof promptly upon request. The Lender shall be named as a beneficiary of such insurance as its interest may appear and the Borrowers shall provide the Lender, within 20 days after execution of this Agreement, with copies of the policies of insurance and a certificate of the insurer that the insurance required by this section may not be canceled, reduced or affected in any manner without 30 days' prior written notice to the Lender.<br><br>INSPECTION. Permit the DIP Lenders and affiliates to inspect and photograph its Property, to examine its files, books and records and make and take away copies thereof, and to discuss its affairs with its officers, all at such times and intervals and to such extent as the Lender may reasonably desire.<br><br>CERTAIN CHANGES. Notify the DIP Lenders at least 30 days prior to the date that any of the Parties changes its name or the location of its chief executive office or principal place of business or the place where it keeps its books and records or the location of any of the Collateral. |
| Negative Covenants. | Debtors jointly and severally covenant and agree with the Lender that prior to the termination of this Agreement no Debtor will:<br><br>RESTRICTED PAYMENTS. At any time: (a) redeem, retire or otherwise acquire, directly or indirectly, any shares of its capital stock or membership interest or any other equity interest; (b) declare or pay any dividend (except stock dividends and dividends paid to a Borrower); or (c) make any other distribution of any Property or cash to owners of an equity interest in their capacity as such.<br><br>NATURE OF BUSINESS; MANAGEMENT. Change the nature of its business or enter into any business which is substantially different from the business in which it is presently engaged, or permit any material change in its management. |
| Events of Default: | (a)　Debtors shall fail to pay any principal of or interest on the monies owed to the DIP Lenders under the DIP facility as and when due; or<br><br>(b)　Any representation or warranty made in connection with any Loan Document shall prove to have been incorrect, false or misleading; or<br><br>(c)　Default shall occur in the punctual and complete performance of any covenant of any of the Parties contained in any Loan Document, unless cured within 30 days after written notice specifying such non-performance. |

| | |
|---|---|
| Taxes | The DIP Facility will include customary provisions reasonably acceptable to the DIP Lenders, as to the DIP Facility, to the effect that all payments are to be made free and clear of any taxes (other than applicable franchise taxes and taxes on overall net income), imposts, assessments, withholdings or other deductions whatsoever. |
| Assignments and Participations | The DIP Lenders may assign all or any part of the DIP Facility to one or more affiliates, banks, financial institutions or other entities. Upon such assignment, such affiliate, bank, financial institution or entity will become a DIP Lender for all purposes under the loan documents. |

### End of Order ###

Form of order prepared by:

Mark E. MacDonald, TX Bar No. 12758300
MacDonald + MacDonald, P.C.
10300 N. Central Expressway, Suite 335
Dallas, TX 75231
(214) 237-4220; Facsimile: (214) 890-0818
Email: mark@macdonaldlaw.com
**PROPOSED COUNSEL FOR DEBTORS
AND DEBTORS IN POSSESSION**

**Exhibit 1 to Interim Order**

**Court's Order Granting Adequate Protection**

[To be provided]

**Exhibit 2 to Interim Order**

**Projected Monthly Cash Flows**