Mark E. MacDonald, TX Bar No. 12758300
Mark E. MacDonald, Jr. IL Bar No. 6217592
Daniel J. Artz, TX Bar No. 01365570
MacDonald + MacDonald, P.C.
10300 N. Central Expressway, Suite 335
Dallas, TX 75231
(214) 237-4220; Facsimile: (214) 890-0818
Email: mark@macdonaldlaw.com
**PROPOSED COUNSEL FOR DEBTORS**
**AND DEBTORS IN POSSESSION**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | **CASE NO. 3:10-30561-hdh-11** |
| | § | |
| **DLH Master Land Holding, LLC,** | § | **CHAPTER 11** |
| | § | |
| **Allen Capital Partners, LLC,** | § | **Application for Joint** |
| Debtors. | § | **Administration Pending** |
| _____ | § | |

**DECLARATION OF DANIEL J. MCAULIFFE**
**IN SUPPORT OF FIRST DAY MOTIONS**

Pursuant to 28 U.S.C. § 1746, I, Daniel J. McAuliffe, make the following

declaration:

1.     In my capacity as President of DLH Development Manager, LLC, which

is the manager of DLH Master Land Holding, LLC, I have personal knowledge of, and

am familiar with, the business affairs, day-to-day operations, books and records, and

financial condition of Debtors, and I am authorized to submit this Declaration on behalf

of Debtors.

2.     On January 25, 2010 (the "Petition Date"), Debtors, DLH Master Land

Holding, LLC (DLH) and Allen Capital Partners, LLC (ACP), filed voluntary petitions

for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Bankruptcy Court").

3.      Debtors remain in possession of their assets and continue to manage their businesses as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

4.      No trustee, examiner, or committee has been appointed in these cases.

5.      Contemporaneously herewith, Debtors have filed the following motions and applications (collectively, the "First Day Motions"): (1) Motion For Order Directing Joint Administration of Debtors Chapter 11 Cases; (2) Motion For An Order Pursuant To Bankruptcy Rule 1007 Granting An Extension Of Time For Filing Schedules And Statements Of Financial Affairs; (3) Debtors' Motion For An Order Pursuant To 11 U.S.C. §105(a) And Bankruptcy Rule 2002 Establishing Notice Procedures; (4) Debtors' Motion For Interim and Final Orders (I) Prohibiting Utilities From Altering, Refusing Or Discontinuing Service, (II) Deeming the Utility Companies Adequately Assured Of Future Performance, (III) Authorizing Debtors To Maintain Their Prepetition Relationships And Practices With The Third Party Vendor; And (IV) Establishing Procedures For Determining Requests For Additional Adequate Assurance; (5) Debtors' Motion For Interim And Final Orders (I) Authorizing Use Of Cash Collateral, (II) Granting Adequate Protection To All Secured Lenders, And (III) Scheduling A Final Hearing; (6) Application To Employ Counsel For Debtors And Debtors In Possession; (7) Debtors' Motion To Approve DIP Financing; (8) Debtors' Application to Employ Lain Faulkner & Co., P.C. As Accountants For Debtors; and (9) Debtors' Motion for Order Pursuant To 11 U.S.C. §105(a) and Bankruptcy Rule 331 Establishing Procedures For

Interim Compensation and Reimbursement of Expenses of Professionals.

6.    I am submitting this Declaration in support of Debtors' First Day Motions.

7.    Capitalized terms not defined in this Declaration shall have the meanings ascribed to the term in the relevant First Day Motion.

8.    Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge, my review of relevant documents, my opinion based upon my experience and knowledge of Debtors' operations and financial condition, and information provided to me by management, advisors, or other representatives of Debtors.

9.    If I were called upon to testify, I would testify consistently with the facts set forth in this Declaration.

10.    Concurrently with the filing of their Chapter 11 petitions, Debtors have filed First Day Motions.

11.    Debtors request that each of the First Day Motions described below be granted, as they constitute a critical element in ensuring Debtors' successful reorganization in  these Chapter 11 cases.

**Motion for Order Directing Joint Administration of Debtors' Chapter 11 Cases (the "Joint Administration Motion")**

12.    By the Joint Administration Motion, Debtors seek an order consolidating, for procedural purposes only, administration of Debtors' Chapter 11 cases with Debtor, DLH Master Land Holding, LLC as the lead debtor, pursuant to Bankruptcy Rule 1015.

13.    In addition, Debtors request that the Clerk make an entry on the docket of each of Debtors' cases stating that an order has been entered directing joint

administration of the Chapter 11 cases and that all further pleadings and other papers, excluding proofs of claim, shall be filed in and all further docket entries shall be made in the docket for DLH Master Land Holding, LLC. All proofs of claim should be filed in the case of the Debtor against which the claim is asserted.

14.     Allen Capital Partners, LLC and DLH Master Land Holding, LLC are affiliates and are filing petitions in the same court.

15.     I believe that joint administration will be less costly and burdensome than the separate administration of the estates due to the combined docket and combined notice to creditors and parties in interest.

16.     Many applications, motions, orders, hearings and notices will be made in both of these cases and will affect both Debtors.

17.     Joint administration will keep all parties informed of substantive matters related to these cases without the inconvenience and confusion of reviewing separate dockets.

18.     In addition, because Debtors are only seeking joint administration by this motion, rather than substantive consolidation, I do not believe any creditors' interests will be harmed.

19.     If each Debtor's case were administered independently, there would be a number of duplicative pleadings and overlapping service.

20.     This unnecessary duplication of identical documents would waste Debtors' resources, as well as other parties' and this Court's resources.

21.     Therefore, I believe that Debtors' Chapter 11 cases should be jointly administered for procedural purposes only.

**Motion for an Order Pursuant to Bankruptcy Rule 1007 Granting an Extension of Time for Filing Schedules and Statements of Financial Affairs (the "Motion for Extension of Time for Filing Schedules and SOFA")**

22.     By the Motion for Extension of Time for Filing Schedules and SOFA, Debtors seek an order extending their time for filing the Schedules and Statements of Financial Affairs ("SOFAs") until February 22, 2010.

23.     As a result of the nature of Debtors' Chapter 11 filings, Debtors have only recently commenced preparation of their schedules and statements, and I am informed that Lain Faulkner & Co., P.C., which is assisting in-house staff in preparing schedules, believes that the fifteen-day automatic extension of time to file Schedules and SOFAs will not be sufficient to permit completion of the Schedules and SOFAs.

24.     At this juncture, I believe that an extension until February 22, 2010 will provide sufficient time to prepare and file the Schedules and SOFAs and will not interfere with the U.S. Trustee scheduling the First Meeting of Creditors. I am informed that the U.S. Trustee has no objection to this extension.

**Debtors' Motion for an Order Pursuant to 11 U.S.C. § 105(A) and Bankruptcy Rule 2002 Establishing Notice Procedures (the "Notice Procedures Motion")**

25.     By the Notice Procedures Motion, Debtors request entry of an order limiting notice on various matters to only the affected parties.  Debtors have approximately 750 potential creditors who may be entitled to receive notice in these cases.

26.     Notice of all pleadings and other papers filed in these cases to each creditor is unnecessary and would be burdensome and costly to the estates, as a result of photocopying, postage expenses, and other expenses associated with these mailings.

27.     Debtors request establishment of a master service list (the "Master Service List") that would include: (a) the Office of the United States Trustee; (b) Debtors' 30 largest unsecured creditors on a consolidated basis (until an official committee of unsecured creditors is appointed and has retained counsel, in which event, such committee's counsel); (c) counsel to the various secured lenders; (d) any party whose interests are directly affected by a specific pleading; and (e) those persons who have formally appeared and requested service in these proceedings pursuant to Bankruptcy Rule 2002.

28.     The proceedings with respect to which notice would be limited to the Master Service List would include all matters covered by Bankruptcy Rule 2002, with the express exception of the following: (a) meeting of creditors under sections 341 or 1104(b); (b) any notices related to claims bar dates; (c) the time fixed for filing objections and the hearing to consider approval of a disclosure statement or confirmation of a plan of reorganization or liquidation; and (d) notice and transmittal of ballots for accepting or rejecting a plan of reorganization.

29.     The Master Service List would also be used for pleadings, papers and procedures that may, pursuant to the Local Rules, require service upon all parties in interest.

30.     Debtors will update the Master Service List regularly to include the names and addresses of any parties in interest who have made written request for notice, and provide notice to the Master Service List of each such update.

31.     Further, Debtors will submit to the Court upon the completion of noticing any particular matter, either an affidavit of service or certification of service annexing the

list of those parties receiving notice.

32.    I believe that the administration of these Chapter 11 cases would be more efficient and cost effective if the relief requested is granted. Debtors submit that the relief requested in this Motion is in the best interests of Debtors' estates, their creditors, and parties in interest and will not prejudice the rights of any party in interest in this case.

**Motion for Order (I) Prohibiting Utility Providers from Altering, Refusing or Discontinuing Service, (II) Deeming Utility Providers Adequately Assured of Future Performance, and (III) Establishing Procedures for Providing Adequate Assurance of Future Performance to Utility Providers (the "Utilities Motion")**

33.    With respect to the Utilities, Debtors request interim and final orders to (a) determine that the Utility Providers have been provided with adequate assurance of payment within the meaning of section 366 of the Bankruptcy Code, (b) approve Debtors' proposed adequate assurance of a deposit of approximately one month of the aggregate cost of utility service into a segregated interest bearing account, (c) prohibit the Utility Providers from altering, refusing, or discontinuing services on account of prepetition amounts outstanding and on account of any perceived inadequacy of Debtors' proposed adequate assurance pending entry of the Final Order, and (d) determine that Debtors are not required to provide any additional adequate assurance beyond what is proposed by the Utilities Motion.

34.    In the ordinary course of business, Debtors obtain gas, water, sewer, electric, data, telephone, and other similar utility services from various utility providers. Approximately nine utility providers provide these services to Debtors.

35.    On average, Debtors spend approximately $16,800 each month for utility services.

36. At all relevant times, Debtors have been current with regard to their utility bills.

37. Furthermore, to the best of my knowledge, Debtors are current on all amounts owing to the Utility Providers, other than payment interruptions that may be caused by the commencement of these Chapter 11 cases with checks caught in the collection process.

38. Uninterrupted utility services are essential to Debtors' ongoing operations and to the successful resolution of these cases.

39. Any interruption of utility services, even for a brief period of time, would negatively affect Debtors' operations, relationships with our lessees, revenues and profits, seriously jeopardizing Debtors' efforts and, ultimately, the value of creditor recoveries.

40. It is, therefore, critical that utility services continue uninterrupted during the Chapter 11 cases.

41. Debtors propose to deposit into an interest-bearing, newly-created, segregated account (the "Utility Deposit Account") a sum equal to approximately $16,800, which is calculated based on the average monthly payments made by Debtors to the Utility Providers.

42. Debtors propose to make such deposit within twenty (20) days of the Petition Date.

43. The funds in the Utility Deposit Account will remain segregated, pending further order of this Court, for the purpose of providing each Utility Company with adequate assurance of payment of its postpetition date services to Debtors.

44. Debtors also expect to receive postpetition financing during the pendency

of these Chapter 11 cases which can be used to pay these expenses and are also seeking use of in excess of $400,000 of net rents per month.

45.     Thus, Debtors should have funds available for payment to the Utility Providers.

46.     Debtors propose to further protect the Utility Providers by establishing the Procedures under which any Utility Provider can request additional adequate assurance if it believes there are facts and circumstances with respect to its providing postpetition services to Debtors which merit greater protection. Therefore, I believe that the Utility Providers have adequate assurance of future performance, and the relief sought in the Utility Motion should be granted.

### Motion of for Interim and Final Orders (I) Authorizing Use of Cash Collateral, (II) Granting Adequate Protection, and (III) Scheduling a Final Hearing (the "Cash Collateral and Adequate Protection Motion")

47.     By the Cash Collateral and Adequate Protection Motion, Debtors seek entry of interim and final orders, pursuant to sections 105(a), 361, 362, 363, 1107 and 1108 of the Bankruptcy Code, (i) authorizing Debtors to use Cash Collateral, (ii) approving the form of adequate protection provided to the various Secured Lenders, and (iii) scheduling a final hearing.

48.     As described in the Cash Collateral Motion and set forth in part below, Debtors have extensive secured debt.

49.     As of the Petition Date, DLH had approximately $169,981,000 in outstanding secured debt and ACP had approximately $23,485,000 in secured debt of which approximately $15,260,000 of claims represent security interests which stand as additional collateral for a fully secured Compass Bank land loan to DLH.

50. In the ordinary course of business, Debtors require cash on hand and cash flow from their operations to fund their working capital and liquidity needs, satisfy payroll obligations, and pay other routine payables.

51. Debtors have an emergency need for the immediate use of Cash Collateral to, among other things, maintain ongoing day-to-day operations, fund working capital needs, and satisfy payroll obligations.

52. I believe that without the use of Cash Collateral, the success of these Chapter 11 proceedings will be jeopardized.

53. Debtors have submitted with the Cash Collateral Motion and a proposed interim order granting the relief requested (the "Interim Order").

54. Attached to the Interim Order is a detailed operating budget (the "Budget").

55. I believe that the relief requested in the Cash Collateral Motion is in the best interests of Debtors, their estates and creditors, and absent such relief, Debtors will experience immediate and irreparable harm and their reorganization efforts will be jeopardized.

56. Tier One Bank has a lien on the property leased to the ADESA auto auction operation which secures approximately $47,480,000 owed by DLH to Tier One Bank. This loan is guaranteed by ACP.

57. A loan from Compass Bank, as successor to Guaranty Bank, of approximately (a) $19,960,000 is secured by Building A, which is partially leased to Advanced H2O; and (b) a loan by Compass Bank of approximately $6,355,000 secured by Building B, which is currently unoccupied. Building A, located at 4800 Langdon

Road, Dallas, Texas, and Building B, located at 4900 Langdon Road, Dallas, Texas, were valued "as is" as of April 28, 2009 by Guaranty Bank's appraiser at $18,700,000 and $4,800,000, respectively. These loans are cross collateralized and guaranteed by ACP.

58.     DLH's Seller Financing Noteholders, whose names and secured loan amounts are listed on **Exhibit A,** are secured by liens in one or more parcels of land totaling more than 3,000 acres. Those liens cover individual parcels and are not cross collateralized.  That debt was incurred to acquire the land by various entities which were merged pre-petition into DLH.

59.     Compass Bank is a fully secured creditor on a land loan (the "Land Loan") of approximately $15,260,000. This loan is adequately protected by its existing equity cushion in the land alone.  Independent appraisals obtained by Compass Bank show a fair market value of $37,500,000, valuing 1325 acres of vacant industrial land alone, without considering various grants of personal property security.   Based upon existing negotiations, multiple parcels of land on which Compass Bank has liens will probably be sold prior to confirmation of a plan for the Debtors for an amount sufficient not only to pay this secured claim in full, but also provide significant liquidity toward payment of the DIP Revolving Balance, the Replacement Lien (described below) and fund ongoing operations of the Debtors. This loan is guaranteed by ACP.

60.     American Bank of Texas (American Bank) is owed approximately $19,400,000, which is fully secured by approximately 1031 acres of land which had a fair market value of $89,460,000 (based upon independent appraisers obtained by American Bank as of September 2008). American Bank's loan amount includes an unapplied future interest reserve of approximately $596,000.

61.     The Dallas County Tax Office holds, for the benefit of various taxing authorities (collectively, the "Taxing Authorities"), first and prior tax liens on various individual parcels of DLH land described on **Exhibit B** totaling approximately $1,445,000. The County collects these taxes for the cities of Dallas, Lancaster, Wilmer and Hutchins, as well as school districts and other Taxing Authorities. Each such Taxing Authority has an equity cushion but any payment on those taxes also benefits the holders of any deeds of trust on such properties and cooperation with the cities of Dallas, Lancaster, Williams and Hutchins is vital to the economic success of this Project.

62.     At this time, to the extent to which each DLH secured lender has perfected its liens and security interests (other than the ADESA loan and Building A and B loans), the fair market going concern value of the secured lenders' collateral is significantly greater than the obligations to those secured lenders. However, until Debtors successfully sell some of the Dallas Logistics Hub project property, Debtors do not have sufficient cash flow to support further development or to pay interest on their current obligations during the pendency of this case.

63.     Debtors need to use Cash Collateral to maintain ongoing day-to-day operations and fund their working capital needs.

64.     The principal source of regularly reoccurring cash flow to DLH is provided from a triple net lease of the ADESA auto auction operation which generates approximately $381,000 per month, excluding reimbursement of taxes and insurance relative to such property. DLH proposes to use this cash to pay real estate taxes and fund operations in exchange for a replacement lien described below.

65.     The only other regularly recurring cash flow source from either of the filed

entities is the net income stream from a lease within Building A of approximately $35,000 per month. DLH proposes to use this cash to repay the DIP lender under the Revolving Loan Agreement and fund operations in exchange for a replacement lien described in the Cash Collateral and Adequate Protection Motion.

66.     As of the filing date, DLH owed ad valorem real estate taxes on its properties totaling approximately $1,445,000. The County collects these taxes for the cities of Dallas, Lancaster, Wilmer and Hutchins, as well as school districts, and other taxing authorities (the "Taxing Authorities"). Each such Taxing Authority has an equity cushion but any payment on those taxes also benefits the holders of deeds of trust on such properties, and cooperation with the cities of Dallas, Lancaster, Wilmer and Hutchins is vital to the economic success of the Dallas Logistics Hub Project. These unpaid taxes constitute a first and prior lien on the respective parcels.  Substantial penalties and interest may accrue unless these taxes are paid by January 31, 2010.

67.     Under its Revolving Credit Agreement, Debtors' DIP lender is unwilling to advance to pay any real estate taxes without obtaining a court order directing that those advances be repaid from ADESA and Building A cash flow.

68.     DLH projects that the cost to operate and insure Buildings A and B in order to preserve the existing tenant and protect the value of the collateral will be less than the available rents which are expected to be received from existing tenant.

69.     DLH could not currently sell Buildings A and B for amounts sufficient to pay the applicable loan from Compass Bank. Debtors believe that having the buildings available for sale or lease enhances the value of the remaining Dallas Logistics Hub land and that the buildings are necessary for an effective reorganization.

70.     The Compass Bank Land Loan is also secured by a variety of personal property interests in ACP and DLH, some of which may generate cash collateral in the future.

71.     American Bank of Texas still has an unused interest reserve of approximately $596,000 on its loan.

72.     I believe that the Secured Creditors' Pool should help bind the secured creditors together so that each secured creditor participating in the Creditors Pool would benefit from each successful sale of property in the Dallas Logistic Hub, even if the parcel being sold is not currently subject to that creditor's lien. I believe that the value of each creditor's collateral is enhanced by its ability to be marketed through DLH, which is capable of obtaining world-wide exposure in a way which could not be achieved by each secured creditor individually. DLH is currently in discussions with several real estate marketing organizations with world-wide offices to accelerate marketing efforts to potential users. If the Secured Creditors stand together with Debtors, demonstrating that the developer is not going to be forced into a series of distress sales, all creditors should benefit.

73.     DLH has been in negotiations for the last several months which involve the sale of a significant amount of land (all of DLH's land in the City of Dallas) to a single organization. Although this sale, if successful, would clearly constitute a distressed price which the owners of DLH and I do not believe adequately reflects the long term going concern value of the remaining DLH parcels, equity will consider sacrifice of this portion of their upside value in order to stabilize the overall situation with creditor cooperation. The prospective purchaser has been in discussions with Debtors and the City

of Dallas about this potential transaction, which is still being actively negotiated. Even at a distressed price, assuming that this transaction closes, the formula set forth in the Cash Collateral and Adequate Protection Motion should:

(a)     Pay post petition interest to all over-secured non building creditors during the Chapter 11 at the 7% rate,

(b)     Payoff the Guaranty/Compass Bank land loan of approximately $15 million, pay approximately $7 million of the American Bank of Texas loan, as well as payoff approximately $4.4 million of underlying first liens of several seller-financed parcels.

(c)     Pay all outstanding DLH real estate taxes of approximately $1.4 million or any liens for loans to pay those taxes.

(d)     Payoff the DIP loan,

(e)     Make the Replacement Lien first priority against approximately parcels containing approximately 600 acres,

(f)     Fund approximately one year's post petition operating expenses for the Debtors, and

(g)     Provide funds to otherwise consummate and perform an ACP/DLH reorganization plan.

## Motion to Approve DIP Financing Agreement

74.     A true and correct copy of the proposed DIP financing agreement is attached as an exhibit to that Motion.

75.     That agreement contemplates a revolving line of credit of up to $2,250,000. There is no cross collateralization to pre-petition debt and relatively few covenants other than Debtors' agreement to only draw funds in accordance with the stated budget attached as an exhibit to the Motion.

76.     Although the lenders under the revolving loan agreement are insiders controlled by the father, brother and various family entities related to Richard S. Allen, the grant of the line of credit was negotiated on an arm's-length basis and fell far short of the monies which Richard Allen had requested as salary to pay his own personal living and debt service expenses. The budget was also extensively discussed and negotiated on an arm's-length basis.

77.     Because of the current financial conditions in the United States, the failure or substantial weakening of numerous financial entities which formerly engaged in debtor-in-possession financing and the substantial restrictions on lending against land currently in effect in the commercial banking arena, Debtors focused their efforts to obtain loans for operating expenses upon various individual lenders who had previously advanced funds to Debtors for that purpose on both a secured and, in some cases, an unsecured basis.

78.     Another DIP proposal was received by Debtors but it required Debtors to provide a priming lien to the lender on all of Debtors' assets, included interest at 900 basis points over prime, certain of the lender's fees, an origination fee to a broker, an exit fee and an unused line fee – resulting in a net cost substantially greater than the DIP Facility proposed.

79.     The DIP Facility proposed bears interest at 800 basis points in excess of the Bank of America "prime" rate. The loan is secured by a junior lien on all real estate of DLH, a junior security interest in all assets of ACP for which ACP can lawfully grant security without obtaining the consent of third-party members of limited liability companies directly or indirectly owned by ACP, and

80.     Prior to filing these Chapter 11 cases, Debtors met with various secured creditors and groups of secured creditors to discuss adequate protection to be offered to those creditors in lieu of cash payment of interest or principal. As a part of those discussions, Debtors indicated to such creditors and creditor groups that if the group would want to participate in the line of credit, DLH, ACP and the Allen Family are receptive to any such offers so long as funding capability is clear.

81.     No such funding offers have been received even from current secured creditors of Debtors.  I am also familiar with the fact that the Allen Family members attempted to shop this prospective loan to third party lenders and were unable to obtain any acceptable commitments.

82.     Accordingly, Debtors believe that they have demonstrated that they are unable to obtain unsecured credit allowable as an administrative expense and that the Court should authorize the obtaining of credit with priority under Section 364(c) as to both Debtors secured by a) a subrogation to real estate tax priority to the extent of monies advanced to pay DLH real estate taxes, b)junior lien on all real property of DLH estate, but senior to any replacement lien for use of cash collateral; and (c) a junior security interest in all assets of ACP for which ACP can lawfully grant security without consent of third parties.

## CONCLUSION

83.     For all the foregoing reasons, I respectfully request that the Court grant the relief requested in the First Day Motions.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 25, 2010.

Signature: _____
Daniel J. McAuliffe

**EXHIBIT A**
**DLH'S SELLER FINANCING NOTEHOLDERS**
**Amount of Claim includes Accrued Interest**
**December 31, 2009**

| Name and Address of Creditor | Amount of Claim |
|---|---|
| Van de Green InvestmentsTract c/o Don Teague<br>428 W. Pleasant Run Road, Lancaster, TX 75146 | 2,172,064.46 |
| 1086 Capital Partners I, LTD & 1086 Hutchins/Wilmer L.P.<br>428 W. Pleasant Run Road, Lancaster, TX 75146 | 2,011,445.89 |
| 1086 Capital Partners I, LTD & 1086 Hutchins/Wilmer L.P.<br>428 W. Pleasant Run Road, Lancaster, TX 75146 | 4,113,390.48 |
| 1086 Capital Partners I, LTD & 1086 Hutchins/Wilmer L.P.<br>428 W. Pleasant Run Road, Lancaster, TX 75146 | 2,733,802.88 |
| 1086 Capital Partners I, LTD & 1086 Hutchins/Wilmer L.P.<br>428 W. Pleasant Run Road, Lancaster, TX 75146 | 471,357.80 |
| Wintergreen 42 Acre Dev. Tract c/o Don P. Teague.<br>428 W. Pleasant Run Road, Lancaster, TX 75146 | 876,252.84 |
| Wintergreen Realty Corp. c/o Don P. Teague<br>428 W. Pleasant Run Road, Lancaster, TX 75146 | 1,305,472.12 |
| Wintergreen Investment Tract c/o Don P. Teague<br>428 W. Pleasant Run Road, Lancaster, TX 75146 | 1,678,090.09 |
| Wintergreen 188 Tract c/o Don P. Teague<br>428 W. Pleasant Run Road, Lancaster, TX 75146 | 3,505,966.55 |
| Dallas County Farm Joint Vent. c/o Don P. Teague<br>428 W. Pleasant Run Road, Lancaster, TX 75146 | 3,803,358.80 |
| 99 Acre Investment Tract c/o Don P. Teague<br>428 W. Pleasant Run Road, Lancaster, TX 75146 | 3,486,911.54 |
| Talco Investment Tract c/o Don P. Teague<br>428 W. Pleasant Run Road, Lancaster, TX 75146 | 1,891,751.14 |
| Dallas 216 AC. J.V. c/o Don P. Teague<br>428 W. Pleasant Run Road, Lancaster, TX 75146 | 3,922,447.97 |

**EXHIBIT A**
**DLH'S SELLER FINANCING NOTEHOLDERS**
**Amount of Claim includes Accrued Interest**
**December 31, 2009**

| Name and Address of Creditor | Amount of Claim |
|---|---|
| Pleasant Run Investment Tract c/o Don P. Teague<br>428 W. Pleasant Run Road, Lancaster, TX 75146 | 4,280,372.60 |
| Dallas County Dev. Tract No. 5 c/o Don P. Teague<br>428 W. Pleasant Run Road, Lancaster, TX 75146 | 2,089,217.02 |
| Pilsner Holding Corp. c/o Don P. Teague<br>428 W. Pleasant Run Road, Lancaster, TX 75146 | 4,909,406.99 |
| Beltline Investment Tract c/o Don P. Teague<br>428 W. Pleasant Run Road, Lancaster, TX 75146 | 1,763,845.40 |
| Beltline Investment Tract c/o Don P. Teague<br>428 W. Pleasant Run Road, Lancaster, TX 75146 | 2,288,140.59 |
| Greene Road Investment Tract c/o Don P. Teague<br>428 W. Pleasant Run Road, Lancaster, TX 75146 | 1,560,562.06 |
| 1086 Capital Partners I, LTD & 1086 Hutchins/Wilmer L.P.<br>428 W. Pleasant Run Road, Lancaster, TX 75146 | 503,549.80 |
| 1086 Capital Partners I, LTD & 1086 Hutchins/Wilmer L.P.<br>428 W. Pleasant Run Road, Lancaster, TX 75146 | 407,204.36 |
| Forty-Three Acre Investment c/o Don P. Teague<br>428 W. Pleasant Run Road, Lancaster, TX 75146 | 692,385.54 |
| Forty-Three Investment Tract 2 C/O Don P. Teague<br>428 W. Pleasant Run Road, Lancaster, TX 75146 | 691,422.70 |
| 55-Acre Investment Tract C/O Don P. Teague<br>428 W. Pleasant Run Road, Lancaster, TX 75146 | 694,724.15 |
| Juanita Madrigal<br>8125 Breezeway, Jonestown, TX 78645<br><br>Celeste Madrigal<br>605 Palestine, Hutchins, TX 75141<br><br>Eleno Madrigal<br>998 Highway Drive, Hutchins, TX 75141 | 586,613.78 |

**EXHIBIT A**
**DLH'S SELLER FINANCING NOTEHOLDERS**
**Amount of Claim includes Accrued Interest**
**December 31, 2009**

| Name and Address of Creditor | Amount of Claim |
|---|---|
| Southport Properties, LP c/o Ralph Miller<br>4741 Alta Rica Drive, La Mesa, CA 91941 | 2,487,383.97 |
| Roza Frumkin<br>3905 Bosque Drive, Plano, TX 75074 | 1,694,897.44 |
| T.E. Frossard, Jr.<br>P.O. Box 170446, Dallas, TX 75217 | 871,230.05 |
| Kroney Morse Lan, PC, as agent for Coffman Inv. and Diane Garvin<br>12221 Merit Drive, Suite 1210, Dallas, TX 75251 | 1,805,109.98 |
| William Ernst & Linda Ernst<br>933 Grand Cypress Lane, Fairview, TX 75069 | 195,554.65 |
| | $  59,493,933.64 |

## Exhibit B - Obligations to Taxing Authority by Secured Creditor

| City Code | Co# | Collateral | DLH Tract No. | Gross Area from Survey and Closing Docs. | Net Area from Survey and Closing Documents | DCAD Acreage | Tax Parcel # | 2009 DCAD Market A/V Notice | 2009 Ag Value or Assessed Value Final | 2009 Tax Actual | Comments |
|---|---|---|---|---|---|---|---|---|---|---|---|
| NT | 856 | ABOT | 21 | 202.24 | 202.24 | 202.24 | 65112838510010000 | $4,048,900 | $36,458 | 1,018.05 | Ag + $4100.00 improvements |
| H | 876 | ABOT | 33 | | | 17.7078 | 65045349510130100 | $354,100 | $2,833 | 69.03 | 1000 E.Cleveland Rd |
| L | 880 | ABOT | 35 | 105.29 | 105.29 | 104.621 | 65043233510030000 | $2,092,420 | $16,749 | 467.68 | |
| L | 880 | ABOT | 38 | 16.32 | 16.32 | 16.234 | 65043233510030200 | $320,000 | $2,560 | 71.84 | |
| L | 884 | ABOT | 41 | 186.47 | 186.47 | 183.851 | 65072087010070000 | $3,677,020 | $28,560 | 797.51 | |
| H | 886 | ABOT | 54 | 54.08 | 53.48 | 53.48 | 65045349010010000 | $1,069,600 | $4,278 | 104.24 | |
| D | 688 | ABOT | 87 | 156.00 | 156.00 | 156.121 | 0000801109000000 | $1,023,750 | $1,023,750 | 26,837.15 | Hrg Ag Denied -Saplings No Hay Production |
| | 687 | ABOT | 198-200 | | | 1 | 65049912510080001 | $88,130 | $85,356 | 607.39 | 1 ac & House |
| | 687 | ABOT | 198-200 | | | 2.092 | 65049912510130200 | $41,840 | $41,840 | 1,019.46 | |
| | 687 | ABOT | 198-200 | | | 1.908 | 65049912510130100 | $66,450 | $66,450 | 1,619.08 | 1 ac & House |
| | 687 | ABOT | 198-200 | | | 30.1594 | 65049912510130000 | $663,520 | $663,520 | 16,167.03 | |
| | 687 | ABOT | 198-200 | | | 26.7061 | 65049912510080000 | $400,590 | $41,981 | 1,022.89 | |
| H | 876 | ABOT | 33-1 | 47.32 | 47.32 | 47.319 | 65045349010020000 | $946,380 | $3,785 | 92.22 | |
| D | 876 | ABOT | 33-2 | 39.899 | 39.899 | 39.899 | 0000800872000000 | $797,980 | $3,191 | 83.66 | |
| H | 876 | ABOT | 33-2 | 126.21 | 126.21 | 86.305 | 65153819510050000 | $1,726,100 | $6,904 | 168.22 | |
| L | 882 | ABOT | 39-40 | 75.61 | 75.61 | 73.681 | 65043233510010000 | $1,473,620 | $7,671 | 214.21 | Hearing Ag Granted |
| | | Total American Bank of Texas (ABOT) | | | | | | | | 50,359.30 | |
| | | | | | | | | | | | |
| H | 874 | Free | 32 | | | 48.857 | 65046157010010000 | $321,630 | $2,058 | 50.14 | |
| NT | 816 | Free | 69 | 47.85 | 47.85 | 47.85 | 65144414010010000 | $478,530 | $7,656 | 202.97 | |
| D | 654 | Free | 156 | 9.60 | 9.60 | 9.5926 | 0000800845000100 | $143,900 | $143,900 | 3,772.28 | Hrg Ag Denied -Hvy Brush, Trash DNQ |
| D | 654 | Free | 157 | 65.04 | 65.04 | 65.1218 | 0000800845000000 | $976,830 | $654,693 | 17,162.47 | Hearing Ag Granted on 1/3 of the tract |
| | | Total Land Without Debt (Free) | | | | | | | | 21,187.86 | |
| | | | | | | | | | | | |
| D | 678 | Guaranty | 42 | 12.49 | 12.49 | 2 | 0000800977000000 | $50,000 | $50,000 | 1,310.73 | |
| | 678 | Guaranty | 43 | 129.09 | 129.09 | 124.218 | 0000800978000000 | $1,242,180 | $9,937 | 260.50 | Hearing Ag Granted |
| D | 678 | Guaranty | 44 | 9.95 | 9.95 | 9.95 | 0000801962000000 | $248,850 | $248,850 | 6,523.50 | |
| D | 678 | Guaranty | 45 | 53.92 | 53.92 | 53.927 | 0000801961000000 | $1,347,900 | $1,347,900 | 35,334.59 | |
| D | 678 | Guaranty | 46 | 52.68 | 52.68 | 52.6722 | 0000801976000000 | $1,316,800 | $7,374 | 193.30 | |
| D | 678 | Guaranty | 47 | 97.12 | 97.12 | 93.442 | 0000801967000000 | $2,046,030 | $13,094 | 343.26 | |
| L | 678 | Guaranty | 47 | | | 4.4 | 65056568510040000 | $22,880 | $146 | 4.08 | |
| D | 678 | Guaranty | 48 | 0.41 | 0.41 | 0.4137 | 0000801970000100 | $4,140 | $4,140 | 108.52 | |
| D | 678 | Guaranty | 49 | 2.46 | 2.46 | 2.4582 | 0000801970000200 | $61,450 | $196 | 5.15 | |
| D | 678 | Guaranty | 51 | 11.73 | 11.73 | 11.7392 | 0000802189000000 | $237,530 | $1,520 | 41.99 | |
| L | 894 | Guaranty | 53 | | | 1.9 | 65056568510050200 | $47,500 | $47,500 | 1,326.40 | |
| NT | 894 | Guaranty | 53 | 42.00 | 42.00 | 40.1 | 65056568510050300 | $94,080 | $94,080 | 2,425.30 | |
| NT | 888 | Guaranty | 55 | 0.05 | 0.05 | 0.05 | 65086718010040200 | $1,000 | $8 | 0.16 | |
| NT | 888 | Guaranty | 56 | 81.02 | 81.02 | 80.81 | 65086718010040000 | $1,212,150 | $12,929 | 333.30 | |
| NT | 888 | Guaranty | 57 | 19.00 | 19.00 | 18.04 | 65086718010040100 | $270,600 | $2,886 | 80.59 | |
| L | 888 | Guaranty | 58 | 55.34 | 53.83 | 53.83 | 65072187510060000 | $1,047,450 | $570,010 | 15,917.03 | |
| H | 890 | Guaranty | 59 | 13.06 | 13.06 | 13.061 | 300050000A0040000 | $261,220 | $261,220 | 6,364.76 | |
| H | 890 | Guaranty | 60 | 8.79 | 8.79 | 8.79 | 300050000C0010000 | $175,800 | $175,800 | 4,283.45 | |
| H | 890 | Guaranty | 61 | 9.85 | 9.85 | 9.846 | 300050000C0020000 | $196,920 | $196,920 | 4,798.06 | |
| L | 894 | Guaranty | 64 | 94.81 | 94.81 | 93.342 | 65112336010010000 | $378,330 | $4,035 | 112.67 | |

**Exhibit B - Obligations to Taxing Authority by Secured Creditor**

| City Code | Co# | Collateral | DLH Tract No. | Gross Area from Survey and Closing Docs. | Net Area from Survey and Closing Documents | DCAD Acreage | Tax Parcel # | 2009 DCAD Market A/V Notice | 2009 Ag Value or Assessed Value Final | 2009 Tax Actual | Comments |
|---|---|---|---|---|---|---|---|---|---|---|---|
| L | 892 | Guaranty | 66 | 37.87 | 37.87 | 37.87 | 65038807510010100 | $378,700 | $6,059 | 169.20 | |
| L | 679 | Guaranty | 70 | 125.90 | 125.90 | 125.90 | 65112336010020000 | $0 | $0 | | ACCOUNT DELETED FOR 2009/BNSF |
| D | 607 | Guaranty | 79 | 4.99 | 4.99 | 4.991 | 008314000A0010000 | $66,750 | $66,750 | 1,749.83 | |
| | 607 | Guaranty | 79 | | | 1.135 | 008314000A0010200 | $28,380 | $28,380 | 743.96 | |
| D | 898 | Guaranty | 80 | 15.42 | 15.42 | 15.387 | 00000801028000000 | $230,810 | $2,461 | 64.52 | |
| D | 898 | Guaranty | 81 | 5 | 5 | 4.99 | 00000801019000000 | $74,850 | $798 | 20.93 | |
| D | 898 | Guaranty | 82 | 5 | 5 | 5 | 00000801022000000 | $75,150 | $801 | 20.99 | Hearing Ag Granted - |
| D | 898 | Guaranty | 83 | 5 | 5 | 5.03 | 00000801025000000 | $75,450 | $804 | 21.06 | |
| H | 605 | Guaranty | 84 | 5.30 | 5.30 | 5.3087 | 300050000B0040000 | $132,380 | $132,380 | 3,225.51 | |
| D | 898 | Guaranty | 85 | 4.2 | 4.2 | 4.204 | 00000801085000000 | $147,140 | $147,140 | 3,857.21 | |
| D | 670 | Guaranty | 86 | 49.61 | 49.61 | 49.61 | 00000801112000000 | $1,736,320 | $1,736,320 | 45,516.86 | Hrg Ag Denied -Land Fill, No Hay, No Fence |
| D | 670 | Guaranty | 88 | 19.85 | 19.85 | 19.85 | 00000800842000000 | $397,000 | $397,000 | 10,407.17 | |
| D | 670 | Guaranty | 89 | 95.49 | 95.49 | 95.49 | 00000800866000000 | $1,909,800 | $1,909,800 | 50,064.54 | Hrg Ag Denied -Saplings No Hay Production |
| D | 670 | Guaranty | 97 | 10.38 | 10.38 | 10.38 | 00000801100000000 | $363,300 | $363,300 | 9,523.75 | |
| NT | 664 | Guaranty | 104 | 25.11 | 24.64 | 23 | 65050917510010000 | $460,000 | $460,000 | 8,618.36 | |
| NT | 664 | Guaranty | 104 | | | 2 | 65050917510010001 | $20,820 | $20,820 | 390.08 | |
| L | 624 | Guaranty | 108 | 8.99 | 8.37 | 8.0792 | 65112838510100000 | $161,580 | $1,292 | 36.09 | |
| L | 624 | Guaranty | 109 | 8.98 | 8.71 | 8.98 | 65112838510110000 | $179,560 | $179,560 | 5,014.05 | |
| L | 624 | Guaranty | 110 | 8.97 | 8.70 | 8.971 | 65112838510120000 | $179,420 | $1,435 | 40.06 | |
| L | 624 | Guaranty | 111 | 8.96 | 8.69 | 8.964 | 65112838510130000 | $179,280 | $1,434 | 40.04 | |
| H | 618 | Guaranty | 115 | 18.41 | 18.41 | 18.41 | 300095000700020100 | $368,200 | $2,945 | 71.75 | |
| D | 670 | Guaranty | 139 | 1.08 | 1.08 | 1.07 | 00000801085500000 | $37,450 | $37,450 | 981.73 | |
| D | 652 | Guaranty | 140 | 3.52 | 3.52 | 3.518 | 00000801031000000 | $98,500 | $98,500 | 2,582.13 | |
| NT | 656 | Guaranty | 188 | 4.50 | 4.50 | 4.496 | 65010172610150200 | $74,960 | $74,960 | 1,404.42 | |
| W | 658 | Guaranty | 197 | 4.03 | 4.03 | 4.03 | 65076744010010000 | $80,620 | $80,620 | 1,861.96 | This account was just created for 2008. |
| L | 603 | Guaranty | 67,68 | 106.20 | 106.20 | 106.2 | 65038807510020000 | $1,062,000 | $16,992 | 474.50 | |
| NT | 603 | Guaranty | 67,68 | 100.00 | 100.00 | 100 | 65076643510010000 | $1,000,000 | $16,000 | 424.16 | |
| D | 678 | Guaranty | 42-52 | 119.87 | 119.87 | 115.47 | 00000802198000000 | $1,236,430 | $7,913 | 218.62 | |
| | 678 | Guaranty | 42-52 | | | 32.7182 | 00000802198000200 | $817,950 | $5,234 | 144.61 | |
| | 678 | Guaranty | 42-52 | | | 0.18 | 00000802192000100 | $4,500 | $28 | 0.78 | |
| | 678 | Guaranty | 42-52 | | | 6.865 | 00000801967000700 | $171,630 | $1,098 | 28.78 | |
| | 678 | Guaranty | 42-52 | | | 1.3368 | 00000801967000600 | $33,430 | $213 | 5.58 | |
| | 678 | Guaranty | 42-52 | | | 0.1438 | 00000801967000500 | $3,600 | $23 | 0.59 | |
| D | 678 | Guaranty | 43-1 | | | 12.493 | 00000800978000100 | $31,230 | $999 | 26.19 | |
| L | 679 | Guaranty | 70-72 | | | 53.607 | 65112336010020100 | $1,340,180 | $8,577 | 239.51 | |
| L | 679 | Guaranty | 71-1 | 28.32 | 28.32 | 27.32 | 65112336010080000 | $438,560 | $30,945 | 864.12 | Hearing Ag Granted - |
| L | 679 | Guaranty | 71-1 | | | 1 | 651123360100800HS | $53,560 | $53,560 | 1,495.61 | 1 ac & House |
| L | 679 | Guaranty | 71-2 | 33.53 | 33.53 | 33.53 | 65112336010090000 | $502,950 | $2,682 | 74.90 | Hearing Ag Granted - |
| L | 679 | Guaranty | 71-3 | 0.58 | 0.58 | 0.5804 | 36032500000010500 | $8,700 | $46 | 1.28 | |
| L | 679 | Guaranty | 72-1 | 8.57 | 8.57 | 8.574 | 65112336010100000 | $257,220 | $1,371 | 38.29 | Hearing Ag Granted - |
| L | 679 | Guaranty | 72-2 | 2.54 | 2.54 | 2.538 | 36032500000010100 | $38,070 | $406 | 11.35 | |
| L | 679 | Guaranty | 72-3 | 6.7 | 6.7 | 6.701 | 36032500000010400 | $100,520 | $1,072 | 29.94 | |

**Exhibit B - Obligations to Taxing Authority by Secured Creditor**

| City Code | Co# | Collateral | DLH Tract No. | Gross Area from Survey and Closing Docs. | Net Area from Survey and Closing Documents | DCAD Acreage | Tax Parcel # | 2009 DCAD Market A/V Notice | 2009 Ag Value or Assessed Value Final | 2009 Tax Actual | Comments |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | 609 | Guaranty | Bldg A | | | 38.12 | 008284000A0020000 | $32,828,880 | $17,317,330 | 453,966.01 | Langdon Warehouse "A" |
| | 671 | Guaranty | Bldg B | | | 13.6 | 008284000A0030000 | $10,908,170 | $6,169,120 | 161,720.70 | Langdon Warehouse "B" |
| | | Total Guaranty Bank (Guaranty) | | | | | | | | 845,959.06 | |
| H | 826 | Seller | 3 | 51.47 | 51.47 | 51.47 | 650015125101600000 | $1,104,450 | $7,068 | 172.22 | |
| H | 828 | Seller | 4 | 83.07 | 83.07 | 83.07 | 3000030000000000000 | $2,076,850 | $2,076,850 | 50,603.60 | Hrg Ag Denied -Saplings No Hay Production |
| H | 830 | Seller | 5 | 134.44 | 134.44 | 134.44 | 30000300000000000100 | $3,361,000 | $21,510 | 524.10 | Hearing Ag Granted - |
| W | 832 | Seller | 6 | 106.65 | 106.65 | 106.65 | 6507674401006000000 | $2,133,000 | $17,064 | 394.10 | Hearing Ag Granted - |
| W | 834 | Seller | 7 | 36.35 | 36.35 | 36.3462 | 6512716001009000000 | $540,180 | $4,321 | 99.80 | Hearing Ag Granted |
| H | 836 | Seller | 8 | 42.73 | 42.73 | 42.73 | 6500499125100200000 | $854,600 | $6,836 | 166.57 | |
| H | 838 | Seller | 9 | 51.83 | 51.83 | 50.84 | 6500151210010000000 | $1,271,000 | $8,134 | 198.18 | |
| | 840 | Seller | 10 | | | 38.971 | 300256000A0010000 | $779,420 | $3,117 | 75.95 | This account was just created for 2008. |
| | 840 | Seller | 10 | | | 17.836 | 300256000A0020000 | $356,720 | $1,426 | 34.74 | This account was just created for 2008. |
| | 840 | Seller | 10 | | | 8.471 | 3002250008001000000 | $169,420 | $677 | 16.49 | This account was just created for 2008. |
| H | 842 | Seller | 11 | 156.58 | 156.58 | 105.2917 | 6512928201006000000 | $3,157,670 | $14,435 | 351.72 | |
| H | 842 | Seller | 11 | | | 50.9633 | 6501017251023000000 | $509,630 | $5,601 | 136.48 | |
| NT | 844 | Seller | 13 | 215.62 | 215.62 | 215.34 | 6508671801002000000 | $3,230,100 | $34,454 | 888.20 | |
| L | 846 | Seller | 14 | 98.84 | 98.84 | 98.84 | 6507218751001000000 | $1,482,600 | $15,814 | 441.58 | |
| NT | 848 | Seller | 15 | 101.45 | 101.45 | 101.45 | 6502993401001000000 | $2,029,000 | $2,029,000 | 38,014.43 | Hrg Ag Denied -Saplings No Hay Production |
| W | 850 | Seller | 16 | 85.27 | 85.27 | 85.27 | 6512857851016000000 | $1,705,400 | $13,643 | 315.09 | |
| W | 850 | Seller | 17 | 80.29 | 80.29 | 80.29 | 6502993401004000000 | $1,605,800 | $12,846 | 296.69 | |
| W | 850 | Seller | 18 | 49.71 | 49.71 | 49.71 | 6505091751011000000 | $994,200 | $7,953 | 183.67 | |
| W | 852 | Seller | 19 | 212.33 | 212.33 | 212.33 | 6502993401003000000 | $4,246,600 | $33,972 | 784.59 | |
| | 854 | Seller | 20 | | | 42 X 180 | 0000089985741000000 | $9,000 | $9,000 | 235.93 | |
| NT | 858 | Seller | 22 | 103.69 | 103.69 | 103.69 | 6511283851003000000 | $2,073,800 | $16,590 | 334.27 | |
| NT | 858 | Seller | 23 | 210.93 | 210.93 | 210.93 | 6505031401001000000 | $3,148,400 | $25,187 | 667.71 | |
| W | 860 | Seller | 24 | 48.30 | 48.30 | 48.28 | 6503798001001000000 | $965,600 | $7,724 | 178.39 | |
| W | 860 | Seller | 25 | 47.27 | 47.27 | 47.286 | 6503798001016000000 | $945,600 | $7,564 | 174.69 | Hearing Ag Granted - |
| NT | 862 | Seller | 26 | 111.58 | 111.58 | 111.578 | 6505031401003000000 | $2,231,400 | $17,851 | 473.24 | |
| L | 864 | Seller | 27 | 76.10 | 76.10 | 76.1 | 6511283851008000000 | $1,522,000 | $12,176 | 340.00 | |
| H | 866 | Seller | 28 | 39.46 | 39.46 | 39.46 | 6504534901003000000 | $789,200 | $3,156 | 76.90 | |
| H | 868 | Seller | 29 | 31.91 | 31.91 | 31.91 | 6504991251006000000 | $638,200 | $2,552 | 62.17 | |
| H | 870 | Seller | 30 | 43.12 | 43.12 | 43.12 | 6504991251003000000 | $862,400 | $862,400 | 21,012.85 | |
| H | 872 | Seller | 31 | 43.06 | 43.06 | 43.06 | 6504615701003000000 | $861,200 | $861,200 | 20,983.63 | |
| H | 878 | Seller | 34 | 55.38 | 55.38 | 55.605 | 3000950007014000000 | $1,112,000 | $4,448 | 108.38 | |
| H | 666 | Seller | 78 | 39.82 | 39.82 | 39.82 | 6515381951006000000 | $833,620 | $833,620 | 20,311.62 | |
| D | 611 | Seller | 93 | | | 1 | 0000080109400000000 | $15,000 | $15,000 | 393.23 | |
| D | 611 | Seller | 94 | 1.68 | 1.68 | 1.6795 | 0000080110600000000 | $25,200 | $134 | 3.52 | |
| D | 611 | Seller | 95 | 25.50 | 25.50 | 25.5 | 0000080110600000300 | $382,500 | $382,500 | 10,027.07 | |
| H | 660 | Seller | 114 | 114.95 | 114.95 | 114.95 | 6504991251021000000 | $2,299,000 | $9,196 | 224.07 | |
| D | 622 | Seller | 161 | 7.80 | 7.80 | 7.80 | 0000080218300000000 | $196,300 | $196,300 | 5,423.40 | |
| D | 622 | Seller | 164 | 86.39 | 86.39 | 86.39 | 0000080094100000000 | $1,036,680 | $13,822 | 362.34 | |
| L | 662 | Seller | 177 | 23.67 | 23.67 | 23.67 | 6509872851017000000 | $373,250 | $14,567 | 406.77 | |
| L | 662 | Seller | 177 | 0.50 | 0.50 | 0.5 | 6509872851017000HS | $55,320 | $55,320 | 1,544.76 | NEW for 2008.1AC AND House |

**Exhibit B - Obligations to Taxing Authority by Secured Creditor**

| City Code | Co# | Collateral | DLH Tract No. | Gross Area from Survey and Closing Docs. | Net Area from Survey and Closing Documents | DCAD Acreage | Tax Parcel # | 2009 DCAD Market A/V Notice | 2009 Ag Value or Assessed Value Final | 2009 Tax Actual | Comments |
|---|---|---|---|---|---|---|---|---|---|---|---|
| L | 615 | Seller | 98-99 | 46.61 | 40.78 | 193.204 | 65098728510090000 | $2,898,080 | $27,048 | 755.30 | |
| H | 854 | Seller | 20-1 | 14.51 | | 14.51 | 65056568510110000 | $60,380 | $60,380 | 1,556.55 | |
| H | 854 | Seller | 20-2 | 33.03 | 33.03 | 25.6281 | 65056568510080000 | $34,200 | $34,200 | 881.65 | |
| H | 854 | Seller | 20-2 | | | 7.4169 | 65046157010060000 | $5,580 | $5,580 | 135.97 | |
| H | 854 | Seller | 20-3 | 95.66 | 95.66 | 82.53 | 65046157010040000 | $1,650,600 | $13,204 | 321.73 | |
| H | 854 | Seller | 20-3 | | | 2.53 | 65155328510150100 | $50,600 | $50,600 | 1,232.90 | |
| H | 854 | Seller | 20-3 | | | 4.978 | 65155328510150000 | $99,560 | $796 | 19.40 | |
| | 858 | Seller | 22-23 | | | 53.51 | 65050314010010100 | $1,070,200 | $8,561 | 160.40 | |
| | | Total Seller Financing (Seller) | | | | | | | | 182,107.04 | |
| | | | | | | | | | | | |
| H | 677 | TierOne | 32 | | | 41.906 | 65056568510070000 | $1,011,780 | $1,011,780 | 26,082.80 | ADUSA |
| NT | 677 | TierOne | 162 | 15.55 | 15.55 | 14.88 | 65056568510050000 | $372,050 | $372,050 | 9,591.13 | ADUSA |
| NT | 677 | TierOne | 163 | 4.16 | 4.16 | 3.78 | 65056568510050100 | $94,500 | $94,500 | 2,436.13 | ADUSA |
| | 677 | TierOne | 178 | | | 7.35 | 65046157010060100 | $183,750 | $183,750 | 4,477.17 | ADUSA |
| | 677 | TierOne | 178 | | | 35.7002 | 65046157010010100 | $892,500 | $892,500 | 21,746.26 | ADUSA |
| | 677 | TierOne | 178 | | | 12.095 | 65056568510110100 | $302,380 | $302,380 | 7,795.09 | ADUSA |
| | 677 | TierOne | 178 | | | 24.088 | 65056568510080100 | $602,200 | $602,200 | 15,524.20 | ADUSA |
| | 677 | TierOne | 178 | | | 36.667 | 65056568510050400 | $916,680 | $916,680 | 23,631.21 | ADUSA |
| | 677 | TierOne | ADESA | | | | | | | 50,005.64 | |
| | 677 | TierOne | ADESA | | | | | | | 2,242.95 | |
| | 677 | TierOne | ADESA | | | | | | | 8,052.29 | |
| | 677 | TierOne | ADESA | | | | | | | 18,325.30 | |
| | 677 | TierOne | ADESA | | | | | | | 36,688.23 | |
| | 677 | TierOne | ADESA | | | | | | | 42,757.40 | |
| | 677 | TierOne | ADESA | | | | | | | 15,982.39 | |
| | 677 | TierOne | ADESA | | | | | | | 38,738.50 | |
| | 677 | TierOne | ADESA | | | | | | | 9,228.86 | |
| | 677 | TierOne | ADESA | | | | | | | 1,761.79 | |
| | 677 | TierOne | ADESA | | | | | | | 10,045.87 | |
| | | Total TierOne Bank (TierOne) | | | | | | | | 345,113.21 | |
| | | | | | | | | | | | |
| | | Totals Including Rollback Taxes | | | | | | | | 1,444,726.47 | |