Mark E. MacDonald, TX Bar No. 12758300
Mark E. MacDonald, Jr. IL Bar No. 6217592
Daniel J. Artz, TX Bar No. 01365570
MacDonald + MacDonald, P.C.
10300 N. Central Expressway, Suite 335
Dallas, TX 75231
(214) 237-4220; Facsimile: (214) 890-0818
Email: mark@macdonaldlaw.com
**PROPOSED COUNSEL FOR DEBTORS**
**AND DEBTORS IN POSSESSION**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **In re:** | § | **CASE NO. 3:10-30561-hdh-11** |
| | § | |
| **DLH Master Land Holding, LLC,** | § | **CHAPTER 11** |
| | § | |
| **Allen Capital Partners, LLC,** | § | **Application for Joint** |
| **Debtors.** | § | **Administration Pending** |
| _____ | § | |

**DEBTORS' RESPONSE TO OBJECTION OF TIERONE BANK and**
**BB&T F/K/A COLONIAL BANK TO DEBTORS' MOTION FOR INTERIM**
**AND FINAL ORDERS (I) AUTHORIZING USE OF CASH COLLATERAL,**
**(II) GRANTING ADEQUATE PROTECTION TO SPECIFIED SECURED**
**LENDERS, AND (III) SCHEDULING A FINAL HEARING**

Debtors, by their proposed attorneys MacDonald + MacDonald, P.C., request the

Court overrule the Objection of TierOne Bank and BB&T to Debtors' Motion for Interim

and Final Orders (I) Authorizing Use of Cash Collateral, (II) Granting Adequate

Protection to Specified Secured Lenders and (III) Scheduling a Final Hearing (hereafter

the "Objection").

**Additional Factual Background**

1.      When DLH Hutchins Wintergreen 178, LLC (hereafter "Borrower"), one

of the predecessors to DLH Master Land Holding, LLC borrowed monies from TierOne

Bank ("TierOne"), the transaction documents, which were executed substantially contemporaneously, included the following in addition to the Assignment of Leases and Rents attached as an Exhibit to the Objection:

    a. Construction Security Agreement/Deed Of Trust And Security Agreement (a true and correct copy of this Agreement is attached as **Exhibit A** hereto, hereafter "Deed of Trust") and

    b. Construction Loan Agreement (a true and correct copy of this Agreement is attached as **Exhibit B** hereto).

2.    TierOne also requested and received guaranties from (a) Allen Development, Inc. (merged into Allen Capital Partners, LLC), (b) Allen Capital Partners, LLC, (c) Richard S. Allen, Inc., and (d) Richard S. Allen individually which were also executed substantially contemporaneously with the other transaction documents.

3.    TierOne's counsel drafted the transaction documents in question.

4.    The Borrower's representations in the transaction agreements were true and correct when made.

5.    Furthermore, the representations concerning Borrower's organization as of the time the transaction documents were executed are as true of DLH now as it was of its Borrower - namely, Borrower is duly organized, validly existing, and in good standing as a limited liability company under the laws of the State of Delaware, and is qualified, in good standing, and authorized to do business in the State of Texas.

6.    The Deed of Trust is clearly not an absolute assignment but rather a collateral assignment.

> "Borrower in consideration of the indebtedness herein recited and the trust herein created, irrevocably grants, bargains, sells, sets over, transfers, assigns, and conveys to Trustee, IN TRUST, WITH POWER OF SALE, for the benefit of and security of Lender all of the Mortgaged Property." (Emphasis added) Construction Security Agreeement/Deed Of Trust And Security Agreement, p. 1

7.      Leases, rents and royalties are expressly defined and included as

"Mortgaged Property" under the Deed of Trust.

8.      The Deed of Trust also specifically includes in its grant clause: the real

estate and all buildings, structures and other improvements, and the leases, rents, and

royalties.

9.      At the top of page 3 in the Deed of Trust the following occurs:

" **IT IS UNDERSTOOD BY THE BORROWER AND LENDER THAT THIS SECURITY INSTRUMENT, WHICH IS SECURED BY THE ABOVE-REFERENCED MORTGAGED PROPERTY, IS A CONSTRUCTION SECURITY AGREEMENT; THAT IT DOES OR WILL SECURE AN OBLIGATION WHICH THE BORROWER HAS OR WILL INCUR FOR THE PURPOSE OF MAKING AN IMPROVEMENT OR IMPROVEMENTS ON MORTGAGED PROPERTY THEREIN DESCRIBED**…"

10.     The Deed of Trust not only treats the rents as part of Debtors' property, it

specifically provides for TierOne to receive adequate protection as a condition to the

Debtors' use of the collateral. Paragraph 8 of the Deed of Trust reads in part as follows:

"8.      Bankruptcy   …In the event Borrower becomes a debtor in bankruptcy, the debtor in possession or trustee shall not be permitted to use, sell, or lease any of the Mortgaged Property, whether or not in the ordinary course of business, without providing adequate protection to Lender. The parties agree that the language "United States Bankruptcy Code, As Amended", shall be the definition of the term "adequate protection" in connection with any use, sale or lease of the Mortgaged Property."

11.     After the occurrence of an event of default, section 23.3 of the Deed of

Trust permits Lender to apply rents collected by trustee:

"…Lender may hold, lease, manage, operate or otherwise use or permit the use of the Mortgaged Property…and apply all rents and other amounts collected by Trustee in connection therewith in accordance with the provisions of Paragraph 23.12."

12. Paragraph 23.12 of the Deed of Trust captioned "Application of Proceeds; Deficiency Obligations; Limitation on Liability" sets forth a priority of application of "…the proceeds of any sale, and the rents and other income generated by the holding, leasing, operating or other use, of the Mortgaged Property shall be applied by Lender (or the receiver, if one is appointed)…" in a specified order of priority. The fourth category is payment "…to Borrower or such other persons as may be entitled to the proceeds of any sale pursuant to applicable law." This paragraph also provides permission for Lender to interplead "…in the event Lender is uncertain as to which person(s) are entitled to such proceeds…"

13. Paragraph 29 is entitled OTHER DOCUMENTS, which recognizes that Borrower has also executed other Loan Documents simultaneously with the Note and this Security Instrument. The paragraph then states:

> "The parties hereto agree that said Loan Documents shall survive the closing, and that a default or violation of any one Loan Document is a default or violation of all Loan Documents, and that as a result thereof the Security Instrument (including the assignment of rents) can be foreclosed…" (Emphasis added)

14. The Construction Loan Agreement defines "Security Documents" to include the Assignment of Leases and Rents.

15. Tier One has apparently also objected to the DLH merger, which brought more than $100 million of net worth available to pay Tier One's less than fully secured recourse loan.

## ARGUMENTS AND AUTHORITIES

16. Texas courts considering rents assigned as security have followed the common law rule that the assignment does not become operative until the mortgagee takes some affirmative action to enforce the lien, such as taking possession of the

property, impounding the rents, securing the appointment of a receiver, or taking some other similar action. NCNB Texas Nat. Bank v. Sterling Projects, Inc., 789 S.W.2d 358 (Tex. App-- Dallas 1990, writ dism'd w.o.j.). An absolute assignment, however, operates to transfer the right to rents automatically upon the occurrence of a specified condition, such as default and does not create a security interest but passes title to the rents. An absolute assignment is not security but is a pro tanto payment of the obligation. *Id*. The law favors the assignment of rents as additional security as opposed to an absolute assignment. See *Taylor v. Brennan*, 621 S.W.2d 592, 594 (Tex. 1981); *see also Oryx Energy Co. v. Union Nat'l Bank of Texas*, 895 S.W.2d 409, 414-15 (Tex. App.—San Antonio 1995, writ denied) (holding that courts are reluctant to construe an assignment of rents clause as an absolute assignment given the public policy against such assignments).

17.      Where an assignment of rents has been issued contemporaneously with a deed of trust and other documents, the question of whether the assignment clause operates as a security pledge or an absolute assignment is determined by the intent of the parties. *Cadle Co. v. Collin Creek Phase II Assocs.*, Ltd., 998 S.W.2d 718 (Tex.App.--Texarkana 1999, no pet. h.).  The intent may be ascertained by reading the documents together. *Id*.  On information and belief, the Deed of Trust and Assignment of Rents were each signed on or as of the same date and recorded sequentially.

18.      Explicit language is required to justify finding an absolute assignment of rents. *801 Nolana, Inc. v. RTC Mortgage Trust 1994-S6*, 944 S.W.2d 751 (Tex. App.-Corpus Christi 1997, writ denied). The Fifth Circuit, in *FDIC v. Int'l Prop. Mgmt., Inc.*, 929 F.2d 1033 (5th Cir. 1991), evaluated a rental assignment clause, holding the clause there created a collateral assignment. The clause contained language that the assignment

was intended to be "absolute, unconditional and presently effective" and that it would never be necessary for the holder to institute legal proceedings of any kind to enforce the provisions. *Id*. at 1037. Despite this language, the court stressed Texas public policy and noted other inclusions in the clause. Specifically, the court said that provisions in the assignment allowing the mortgagor to receive rents until default required the mortgagee to apply rental income to the debt (with any remainder going to the mortgagor) and providing for termination of the assignment of rents on release of the deed of trust would have been unnecessary in an absolute assignment. *Id*. at 1038.

19.    Reading these documents together, it is clear that the intent of the parties was that the Assignment of Rents was intended as security and not an absolute assignment.  In the words of Judge Bohm in a very similar case:

> This is a clear case of a lender attempting to "have its cake and eat it too." On the one hand, the Lender drafted the Deed of Trust to create a security interest in the Rents to secure payment of La Placita's loan obligations. On the other hand, the Lender drafted the Assignment, which was executed contemporaneously with the Deed of Trust, to effectuate a present transfer of any and all future Rents to the Lender. The Lender cannot have it both ways. Either the Rent is collateral for its loans, or all of the La Placita's interest in the Rents has been absolutely assigned to the Lender. As drafter of the Deed of Trust and the Assignment, the Lender must bear the risk that the Documents it drafted would be construed in the light least favorable to its interpretation. This Court's conclusion also comports with the strong presumption in Texas against construing a contract to create an absolute assignment of rents.
> *In Re Las Torres Development, L.L.C. and La Placita Shopping Center, L.L.C.*, 408 B.R. 876, 888 (Bankr.S.D.Tex. 2009)

*See also*, *In re Spears*, 352 B.R. 83 (Bankr.N.D.Tex. 2006); *In re Allen*, 357 B.R. 103 (Bankr.S.D.Tex. 2006).

20.    In addition, whether or not the assignment of rents is absolute, the rents are still "property of the estate" as that term is defined in § 541(a). Section 541(a)(6) places all rents "from property of the estate" in the bankruptcy estate even if such rents

have been absolutely assigned.  *See*, *In Re Las Torres Development, L.L.C. and La Placita Shopping Center, L.L.C.*, 408 B.R. 876 (Bankr.S.D.Tex. 2009)(Boehm)

**MACDONALD + MACDONALD, P.C.**

By: /s/ Mark E. MacDonald
Mark E. MacDonald, TX Bar No. 12758300
MACDONALD + MACDONALD, P.C.
10300 N. Central Expressway, Suite 335
Dallas, TX 75231
(214) 237-4220; Facsimile: (214) 890-0818
Email: mark@macdonaldlaw.com
**PROPOSED COUNSEL FOR DEBTORS AND DEBTORS IN POSSESSION**