

**The following constitutes the ruling of the court and has the force and effect therein described.**

*[Signature]*

**Signed February 17, 2010**                                    **United States Bankruptcy Judge**

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | CASE NO. 10-bk-30561-hdh-11 |
| | § | |
| DLH Master Land Holding, LLC, | § | CHAPTER 11 |
| | § | |
| Allen Capital Partners, LLC, | § | |
| Debtors. | § | |
| _____ | § | |

**SECOND INTERIM ORDER (I) AUTHORIZING DEBTORS TO
OBTAIN POST-PETITION FINANCING PURSUANT TO
11 U.S.C. §§ 105 AND 364 AND (II) GRANTING RELATED RELIEF**

Upon the Motion For An Interim Order (I) Authorizing Debtors To Obtain Post-Petition Financing Pursuant To 11 U.S.C. §§ 105 And 364; (II) Scheduling A Final Hearing Pursuant To Bankruptcy Rule 4001(B) And (C); And (III) Granting Related Relief (the "Motion") of the above-captioned debtors and debtors in possession (the

"Debtors"); and all as more fully set forth in the Motion[1], the Court has held a hearing (the "Hearing") to consider the relief requested in the Motion. After considering of the Motion, the supporting Declarations, the record of the Hearing, and all of the proceedings before the Court and after due deliberation and sufficient cause appearing therefore, the Court hereby enters the following findings of fact and law:

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

2. The Motion and the relief requested therein is a core proceeding pursuant to 28 U.S.C. §157.

3. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

4. Due and proper notice of the Motion has been provided to the necessary parties and no other or further notice need be provided.

5. Sufficient and adequate notice of this Interim Order has been provided and no further notice of, or hearing with respect to this interim relief requested in the Motion is necessary or required.

6. The limited relief sought by Debtors in open court at the hearing on the Motion is in the best interests of Debtors, their creditors, and all parties in interest.

7. The legal and factual bases set forth in the Motion establish just cause for the relief granted herein.

---

[1] Unless otherwise noted, capitalized terms used but not defined herein shall have the meanings provided in the Motion.

8. Debtors are unable to obtain sufficient levels of unsecured credit necessary to maintain and conduct their business allowable only under Bankruptcy Code §§ 364(c)(2), (c)(3) and (d), except under the terms and conditions provided in this Interim Order.

9. The credit and financial accommodations to be extended under the DIP facility are being extended by the DIP Lenders in good faith.

10. The DIP Lenders are entitled to the protection of Bankruptcy Code § 364(e).

11. It is in the best interest of Debtors' estates that they be allowed to finance their operations under the terms and conditions set forth herein.

12. Debtors have requested that, pursuant to this Interim Order, the DIP Lenders make loans and advances to be used by Debtors (i) for the purposes of making certain payments of monies owed to taxing authorities where the prepetition secured creditor either has not agreed to advance the monies directly to the taxing authorities or has objected to the subrogation of the DIP Lenders to the lien of the taxing authorities and (ii) to fund general operations of the Debtors.

13. The DIP Lenders are willing to make such loans and advances on a secured basis in accordance with this Interim Order.

14. Accordingly, the relief requested in the Motion is necessary, essential and appropriate for the continued operation of Debtors' business, the management and preservation of their assets and properties and is in the best interest of Debtors, their estates and creditors.

15. Debtors represent that they are unable to obtain unsecured credit allowable under (i) Section 503(b)(1) of the Bankruptcy Code, (ii) an administrative expense pursuant to Sections 364(a) or (b) of the Bankruptcy Code, (iii) an unsecured debt having the priority afforded by Section 364(c)(1) of the Bankruptcy Code, or (iv) secured credit pursuant to Sections 364(c)(2).

16. Debtors were able to obtain secured credit only by allowing the DIP Lenders to be (i) subrogated to the lien of the taxing authorities whose claims will be paid pursuant to this Order, (ii) by granting the DIP Lenders a junior lien on all real property owned by DLH Master Land Holdings, LLC other than those parcels which are rented to ADESA or contain Buildings A or Building B, and (iii) by granting the DIP Lenders a lien on a junior lien against all assets of ACP except membership interests to which ACP cannot pledge without the consent of third parties.

17. Notwithstanding the DIP Lenders' subrogation to the priority of the taxing authorities pursuant to Bankruptcy Code §§ 105 and 364(c)(4), the DIP Facility and DIP Lenders shall not otherwise be governed by the Texas Property Tax Lender Act or associated regulations.

18. Debtors represent and the Court expressly finds that the terms of the DIP Facility among Debtors and DIP Lenders, pursuant to which the post-petition loans or advances will be made or provided to Debtors by the DIP Lenders have been negotiated at arms' length and in good faith, as that term is used in section 364(e) of the Bankruptcy Code, and are in the best interests of Debtors, their estates and creditors.

19. Debtors represent that the relief requested by the Motion is necessary to avoid immediate and irreparable harm to Debtors' estates.

20. Good adequate and sufficient cause has been shown to justify the granting of the relief requested in the Motion and the immediate entry of this Interim Order. For the reasons set forth above, it is hereby:

ORDERED that the Motion is GRANTED solely to the extent set forth herein; and it is further

ORDERED that $250,000 of additional borrowing is authorized pursuant to this Second Interim Order under the DIP Facility (in addition to the borrowing to pay certain pre-petition real estate taxes as previously approved by this Court); and it is further

ORDERED that the terms and conditions of this Order shall be immediately effective and enforceable upon its entry; and it is further

ORDERED that loans under the DIP Facility will be secured by (a) a perfected security interest with priority over the security interest securing Debtors' existing senior secured creditors to the extent to which the DIP Lenders pay the real estate property taxes due on or before January 31, 2010, enabling the DIP Lenders to be subrogated to the lien position of those taxing authorities; (b) a lien on all DLH real estate junior only to all properly perfected pre petition liens against DLH real estate, and (c) a junior lien against all assets of ACP except membership interests to which ACP cannot pledge without the consent of third parties; and it is further

ORDERED that all of the liens described herein shall be effective and perfected as of the entry of this Order and without the necessity of the execution of mortgages, security agreements, pledge agreements, financing statements or other agreements; and it is further

ORDERED that Debtors are authorized and empowered to take all actions necessary to effectuate the relief granted pursuant to this Interim Order in accordance with the Motion; and it is further

ORDERED that this Court will retain jurisdiction to address all disputes related to the interpretation or enforcement of this Interim Order; and it is further

ORDERED that a copy of the documents constituting the DIP Facility as finally documented between the parties shall be promptly filed with this Court as an exhibit to an affidavit or declaration once the documents have been executed by the parties; and it is further

ORDERED that the DIP Facility as finally documented between the parties shall contain the following terms and conditions except as otherwise provided herein:

| Borrowers: (Jointly and Severally Liable) | DLH Master Land Holding, LLC<br>Allen Capital Partners, LLC |
|---|---|
| DIP Lenders: | Pointe Property Group, Inc.<br>Allen Investments, Inc. |
| Maturity Date: | The earlier of (i) the Effective Date for a confirmed Chapter 11 Plan of Reorganization or (ii) December 31, 2011. |
| Closing Date: | The date upon which the Court approves the DIP Facility on an interim basis. |
| Purpose/Use of Proceeds: | Proceeds of the Loans under the DIP Facility will be used solely in accordance within 110% of Debtors projected expenditures (on a cumulative basis) which shall be in form and substance satisfactory to the DIP Lenders (the "Expenditure Budget") and which will include the following payments: (i) funding of the Borrowers' post-petition operating expenses incurred in the ordinary course of business and (ii) certain other costs and expenses of administration of Debtors' Chapter 11 cases. |
| Priority: | All amounts owing by Debtors under the DIP Facility shall be joint and several as to each Debtor and will be secured by (a) a perfected |

| | |
|---|---|
| | security interest with priority over the security interest securing Debtors' existing senior secured creditors to the extent to which the DIP Lenders pay the real estate property taxes due on or before January 31, 2010, enabling the DIP Lenders to be subrogated to the lien position of those taxing authorities; (b) lien on all DLH real estate (excluding the ADESA, Building A and Building B parcels) junior only to all properly perfected pre petition liens against DLH real estate and (c) a junior lien against all assets of ACP except membership interests to which ACP cannot pledge without the consent of third parties.<br><br>All of the liens described herein shall be effective and perfected as of the entry of any DIP Order and without the necessity of the execution of mortgages, security agreements, pledge agreements, financing statements or other agreements. |
| Interest Rate: | Fluctuating rate per annum which shall from day to day be equal to the lesser of (a) the Maximum Rate (as hereinafter defined), or (b) a rate ("Contract Rate"), calculated on the basis of the actual days elapsed but computed as if each year consisted of 365 days, equal to the sum of (i) the Prime Rate of interest ("Base Rate") as established from time to time by Bank of America (which may not be the lowest, best or most favorable rate of interest which Bank of America may charge on loans to its customers) plus (ii) 800 basis points, each change in the rate to be charged on this Note to become effective without notice to Debtors on the effective date of each change in the Maximum Rate or the Base Rate, as the case may be; provided, however, that if at any time the Contract Rate shall exceed the Maximum Rate, thereby causing the interest on this Note to be limited to the Maximum Rate, then any subsequent reduction in the Base Rate shall not reduce the rate of interest on this Note below the Maximum Rate until the total amount of interest accrued on this Note equals the amount of interest which would have accrued on this Note if the Contract Rate had at all times been in effect. The term "Maximum Rate" shall mean at the particular time in question the lesser of 18% per annum or the maximum rate of interest which, under applicable law, may then be charged on outstanding loans under the DIP Facility. If such maximum rate of interest subsequently changes, the Maximum Rate shall be automatically increased or decreased, as the case may be, without notice to Debtors from time to time as of the effective date of each change in such maximum rate. The DIP Lenders and Debtors agree that the Quarterly Rate Ceiling provided under Chapter 303 of the Texas Finance Code shall apply to this Note. If applicable law ceases to provide for such a maximum rate of interest, the Maximum Rate |

| | |
|---|---|
| | shall be equal to 18% per annum. |
| Voluntary Repayments: | Upon three (3) business days written notice and not more frequently than once per calendar week, permitted in whole or in part, with prior written notice but without premium or penalty, subject to limitations as to minimum amounts of prepayments and customary indemnification. Such repayments shall only be in increments of $10,000. |
| Mandatory Repayments: | Mandatory repayments of the Loans under the DIP Facility shall be required in an amount equal to (i) 100% of the net sale proceeds from non-ordinary course asset sales (including, without limitation, a sale of all or substantially all of Debtors' assets), (ii) 100% of the proceeds of the incurrence of any indebtedness of the Debtors incurred other than in the ordinary course of business, and (iii) 100% of insurance and condemnation proceeds, in each case received by Debtors. |
| Repayment at Maturity: | The DIP Facility will be repaid in full at the Maturity Date. |
| Conditions Precedent to Each Advance under DIP Facility | On the date of any advance under the DIP Facility, the following conditions precedent shall have been satisfied:<br><br>• Each of the DIP Orders, as the case may be, shall be in a form that is acceptable to the DIP Lenders in its sole and absolute discretion;<br><br>• The Interim Order or Final Order, as the case may be, shall be in full force and effect, and shall not have been reversed, modified, amended, stayed for a period of five (5) business days or longer, vacated or subject to a stay pending appeal, in the case of any modification, amendment or stay pending appeal, in a manner, or relating to a matter, that is materially adverse to the interests of the DIP Lenders; and<br><br>• Debtors' use of the proceeds is consistent with the Budget and the cumulative expenditures for each category in the budget are not more than 110% of the cumulative budgeted amount without the consent of the DIP Lenders. |
| Affirmative Covenants: | Debtors jointly and severally covenant and agree with the DIP Lenders that prior to the termination of this Agreement each Debtor will do, and if necessary cause to be done, and cause its Subsidiaries to do, each and all of the following: |

|  | |
|---|---|
|  | CORPORATE FUNDAMENTALS. At all times: (a) renew and keep in full force and effect all of its licenses, permits and franchises; (b) do all things necessary to preserve its corporate existence and its qualifications and rights in all jurisdictions where such qualification is necessary or desirable; (c) comply with all applicable Legal Requirements in respect of the conduct of its business and the ownership of its Property; and (d) cause its Property to be protected, maintained and kept in good repair and make all replacements and additions to its Property as may be reasonably necessary to conduct its business properly and efficiently.<br><br>INSURANCE. Maintain insurance with such reputable insurers, on such of its Property and personnel, in such amounts and against such risks as is customary with similar Persons or as may be reasonably required by the Lender, and furnish the Lender satisfactory evidence thereof promptly upon request. The Lender shall be named as a beneficiary of such insurance as its interest may appear and the Borrowers shall provide the Lender, within 20 days after execution of this Agreement, with copies of the policies of insurance and a certificate of the insurer that the insurance required by this section may not be canceled, reduced or affected in any manner without 30 days' prior written notice to the Lender.<br><br>INSPECTION. Permit the DIP Lenders and affiliates to inspect and photograph its Property, to examine its files, books and records and make and take away copies thereof, and to discuss its affairs with its officers, all at such times and intervals and to such extent as the Lender may reasonably desire.<br><br>CERTAIN CHANGES. Notify the DIP Lenders at least 30 days prior to the date that any of the Parties changes its name or the location of its chief executive office or principal place of business or the place where it keeps its books and records or the location of any of the Collateral. |
| Negative Covenants. | Debtors jointly and severally covenant and agree with the Lender that prior to the termination of this Agreement no Debtor will:<br><br>RESTRICTED PAYMENTS. At any time: (a) redeem, retire or otherwise acquire, directly or indirectly, any shares of its capital stock or membership interest or any other equity interest; (b) declare or pay any dividend (except stock dividends and dividends paid to a Borrower); or (c) make any other distribution of any Property or cash to owners of an equity interest in their capacity as such. |

| | |
|---|---|
| | NATURE OF BUSINESS; MANAGEMENT. Change the nature of its business or enter into any business which is substantially different from the business in which it is presently engaged, or permit any material change in its management. |
| Events of Default: | (a) Debtors shall fail to pay any principal of or interest on the monies owed to the DIP Lenders under the DIP facility as and when due; or<br><br>(b) Any representation or warranty made in connection with any Loan Document shall prove to have been incorrect, false or misleading; or<br><br>(c) Default shall occur in the punctual and complete performance of any covenant of any of the Parties contained in any Loan Document, unless cured within 30 days after written notice specifying such non-performance. |
| Taxes | The DIP Facility will include customary provisions reasonably acceptable to the DIP Lenders, as to the DIP Facility, to the effect that all payments are to be made free and clear of any taxes (other than applicable franchise taxes and taxes on overall net income), imposts, assessments, withholdings or other deductions whatsoever. |
| Assignments and Participations | The DIP Lenders may assign all or any part of the DIP Facility to one or more affiliates, banks, financial institutions or other entities. Upon such assignment, such affiliate, bank, financial institution or entity will become a DIP Lender for all purposes under the loan documents. |

### End of Order ##