
**The following constitutes the ruling of the court and has the force and effect therein described.**

*/s/ Harlin DeWayne Hale*

**Signed April 23, 2010**              **United States Bankruptcy Judge**

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | CASE NO. 10-bk-30561-hdh-11 |
| | § | |
| DLH Master Land Holding, LLC, | § | CHAPTER 11 |
| | § | |
| Allen Capital Partners, LLC, | § | |
| Debtors. | § | |
| _____ | § | |

**FINAL ORDER (I) AUTHORIZING DEBTORS TO
OBTAIN POST-PETITION FINANCING PURSUANT TO
11 U.S.C. §§ 105 AND 364 AND (II) GRANTING RELATED RELIEF**

Upon the Motion For Final Order (I) Authorizing Debtors To Obtain Post-Petition Financing Pursuant To 11 U.S.C. §§ 105 And 364 (the "Motion") of the above-captioned debtors and debtors in possession (the "Debtors"); and all as more fully set forth in the Motion[1], the Court has held multiple evidentiary hearings to consider the relief requested in the Motion. After considering the Motion, the supporting Declarations, the record of

---

[1]  Unless otherwise noted, capitalized terms used but not defined herein shall have the meanings provided in the Motion.

the hearings, and all proceedings on the Motion before the Court, and after due deliberation and sufficient cause appearing therefor, the Court hereby makes the following findings of fact and law:

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

2. The Motion and the relief requested is a core proceeding pursuant to 28 U.S.C. §157.

3. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

4. Due and proper notice of the Motion has been provided to the necessary parties and no other or further notice need be provided.

5. Sufficient and adequate notice of this Final Order has been provided and no further notice of this Final Order, or hearing with respect to the relief requested in the Motion, is necessary or required.

6. The relief sought by Debtors, as modified by the Debtors from time to time in open court at the hearing on the Motion, is in the best interests of Debtors, their creditors, and all parties in interest.

7. The legal and factual bases set forth in the Motion establish just cause for the relief granted herein.

8. Debtors are unable to obtain sufficient levels of unsecured credit necessary to maintain and conduct their business allowable only under Bankruptcy Code §§ 364(c)(2) or 364(c)(3), except under the terms and conditions provided in this Order.

9. The credit and financial accommodations extended and to be extended under the DIP facility have been and are being extended by the DIP Lenders in good faith.

10. The DIP Lenders are entitled to the protection of Bankruptcy Code § 364(e).

11. It is in the best interest of Debtors' estates that they be allowed to finance their operations under the terms and conditions set forth herein.

12. Debtors originally requested that, pursuant to the prior Interim Orders, the DIP Lenders make loans and advances to be used by Debtors (i) for the purposes of making certain payments of monies owed to taxing authorities where the prepetition secured creditor either had not agreed to advance the monies directly to the taxing authorities or had objected to the subrogation of the DIP Lenders to the lien of the taxing authorities and (ii) to fund general operations of DLH, Allen Capital Partners, LLC ("ACP") and Allen Development of Central California, LLC ("ADCC") pursuant to the budget admitted into evidence as Debtors Exhibit "C1" and TierOne's Exhibit "NN" (collectively, "Debtors' Budget") .

13. The DIP Lenders made such loans and advances on a secured basis in accordance with the First Interim Order entered by the Court on the Motion.

14. Debtors represent that, for new advances under the DIP Loan, they are unable to obtain unsecured credit allowable under (i) Section 503(b)(1) of the Bankruptcy Code, (ii) an administrative expense pursuant to Sections 364(a) or (b) of the Bankruptcy Code, (iii) an unsecured debt having the priority afforded by Section 364(c)(1) of the Bankruptcy Code, or (iv) secured credit pursuant to Sections 364(c)(2).

15. The relief requested in the Motion is, to the extent granted by this Order, necessary, essential and appropriate for the continued operation of Debtors' businesses, the management and preservation of their assets and properties and is in the best interest of Debtors, their estates and creditors.

16. Debtors were able to obtain secured credit only by allowing the DIP Lenders to be (i) subrogated to the lien of the taxing authorities whose claims were paid pursuant to the First Interim Order on the Motion entered by this Court, (ii) by granting the DIP Lenders a junior lien (junior to all pre-existing liens on the property including liens of the Sellers) on all real property owned by DLH Master Land Holding, LLC (DLH) other than those parcels which are rented to ADESA or contain Buildings A or Building B, and (iii) by granting the DIP Lenders a junior lien against all assets of ACP except membership interests to which ACP cannot pledge without the consent of third parties. Generally, Debtors were unable to obtain credit allowable under section 503(b)(1) of this title as an administrative expense. With respect to the priming lien granted the DIP Lenders, Debtors were unable to obtain such credit otherwise than by the granting such a priming lien by this Court.

17. Notwithstanding the DIP Lenders' subrogation to the priority of the taxing authorities for previous tax advances, the DIP Facility and DIP Lenders shall not otherwise be governed by the Texas Property Tax Lender Act or associated regulations.

18. Debtors represent and the Court expressly finds that the terms of the DIP Facility among Debtors and DIP Lenders, pursuant to which the post-petition loans or advances have been and will be made or provided to Debtors by the DIP Lenders have

been negotiated at arms' length and in good faith, as that term is used in section 364(e) of the Bankruptcy Code, and are in the best interests of Debtors, their estates and creditors.

19. Debtors represent that the relief requested by the Motion is necessary to avoid immediate and irreparable harm to Debtors' estates.

20. Good and sufficient cause has been shown to justify the granting of the relief requested in the Motion.

21. All further findings of fact and conclusions of law stated by the Court on the record in announcing its ruling from the bench on April 16, 2010 are hereby adopted and incorporated herein.

For the reasons set forth above, it is hereby:

**ORDERED** that the Motion is **GRANTED** solely to the extent set forth herein; and it is further

**ORDERED** that, subject to the terms of this Order, the Debtors are authorized to draw under the DIP Facility pursuant to the terms of this Order through June 15, 2010; and it is further

**ORDERED** that, DLH may expend cash of the estate, including cash collateral and borrowed funds, by making the monthly payments to ACP and ADCC and the payments to Allen Employment Services, Inc. ("AES") shown on the Debtors' Budget as "Services Agreement-Payroll" ("Payroll Expenses"), in the amounts shown on the Debtors' Budget through June 15, 2010; the month of June shall be prorated; and it is further

**ORDERED** that after June 15, 2010, DLH may pay Payroll Expenses and expenses of ACP and ADCC only to the extent necessary to reimburse AES, ACP and

ADCC for DLH's employees and the share of the ACP and ADCC expenses allocated to DLH as shown on the Debtors' Budget; and it is further

**ORDERED**, that the provisions of the above two paragraphs shall govern the expenditure of cash of the estate, including cash collateral and borrowed funds, notwithstanding any other provisions of this Order to the contrary; and it is further

**ORDERED** that the terms and conditions of this Order shall be immediately effective and enforceable upon its entry; and it is further

**ORDERED** that initial loans under the DIP Facility to pay real estate property taxes due on or before January 31, 2010 for properties where the secured creditor chose not to make the payment were and shall continue to be secured by the grant of a perfected lien equal to the amount of real estate taxes due and paid by such advances and with priority over the lien securing DLH's existing senior secured creditors on such properties, effectively subrogating the DIP Lenders to the prior lien position of those taxing authorities; and it is further

**ORDERED** that Southport Properties, L.P. may reimburse the DIP Lenders in the next sixty (60) days for the Property Taxes paid by advances from the DIP Facility and used to pay real property taxes attributable to the Southport Property; and it is further

**ORDERED**, that upon Southport Properties, L.P.'s payment of the Property Taxes to the DIP Lenders, all liens and security interests held by the DIP Lenders against the Southport Property in any way related to the DIP Lenders' payment of the Property Taxes, will be automatically released without the need of recording or further Order of this Court; and it is further

**ORDERED,** that the amounts paid by Southport Properties, L.P. to the DIP Lenders for the Property Taxes shall be secured by the Southport Properties, L.P.'s deeds of trust as if the payment had been made by Southport Properties, L.P. directly to the applicable taxing jurisdictions; and it is further

**ORDERED**, that to secure any additional advances under the DIP Facility, DIP Lenders are granted: a) a junior lien on all DLH real estate except property subject to the ADESA Lease and Buildings A&B, junior only to all properly perfected pre-petition liens against DLH real estate (which shall include any properly perfected lien of any Seller), and (b) a junior security interest against all assets of Allen Capital Partners, LLC (ACP) except membership interests which ACP cannot pledge without the consent of third parties; and it is further

**ORDERED**, that to the extent the automatic stay is lifted as to any lien on any parcel of real estate where the DIP Lenders have received liens pursuant to this Order, it shall automatically be lifted as to every lien on such parcel of real estate; and it is further

**ORDERED** that all the liens and security interests granted to the DIP Lenders as described herein shall be effective and perfected as of the entry of this Order and without the necessity of the execution of mortgages, security agreements, pledge agreements, financing statements or other agreements; and it is further

**ORDERED**, that Debtors are authorized and empowered to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion; and it is further

**ORDERED**, that the Court does not approve the condition requested by the DIP Lenders that proceeds of the DIP Facility not be used to pay administrative expenses

allowed for attorneys fees of the Official Committee of Unsecured Creditors; advances from the DIP Facility for administrative expense claims will be available to pay the professionals retained by the Official Committee of Unsecured Creditors as allowed by this Court; and it is further

**ORDERED**, that this Court will retain jurisdiction to address all disputes related to the interpretation or enforcement of this Order; and it is further

**ORDERED**, that a copy of the documents constituting the DIP Facility as finally documented between the parties shall be promptly filed with this Court as an exhibit to an affidavit or declaration once the documents have been executed by the parties; and it is further

**ORDERED**, that the DIP Facility as finally documented between the parties shall contain the following terms and conditions except as otherwise provided herein:

| Borrowers: (Jointly and Severally Liable) | DLH Master Land Holding, LLC<br>Allen Capital Partners, LLC |
|---|---|
| DIP Lenders: | Pointe Property Group, Inc.<br>Allen Investments, Inc. |
| Maturity Date: | The earlier of (i) the Effective Date for a confirmed Chapter 11 Plan of Reorganization or (ii) December 31, 2011. |
| Closing Date: | The date(s) upon which the Court approves the DIP Facility basis. |
| Purpose/Use of Proceeds: | Proceeds of the Loans under the DIP Facility will be used solely in accordance within 110% of Debtors projected expenditures (on a cumulative basis) which shall be in form and substance satisfactory to the DIP Lenders (the "Expenditure Budget") and which will include the following payments subject to the terms of this Order: (i) funding of the DLH's post-petition operating expenses incurred in the ordinary course of business; (ii) funding of ACP's operating expenses through and including June 15,1010, but not thereafter; and (iii) certain other costs and expenses of administration of Debtors' Chapter 11 cases. |

| | |
|---|---|
| Priority: | All amounts owing by Debtors under the DIP Facility shall be joint and several as to each Debtor and are secured by (a) a perfected security interest with priority over the liens securing Debtors' existing senior secured creditors borrowed for payment of the real estate property taxes due on or before January 31, 2010, enabling the DIP Lenders to be subrogated to the lien position of those taxing authorities; (b) a junior lien on all DLH real estate (excluding the ADESA, Building A and Building B parcels), junior only to all properly perfected pre petition liens against DLH real estate and (c) a junior lien against all assets of ACP except membership interests to which ACP cannot pledge without the consent of third parties.<br><br>All of the liens described herein shall be effective and perfected as of the entry of any DIP Order and without the necessity of the execution of mortgages, security agreements, pledge agreements, financing statements or other agreements. |
| Interest Rate: | Fluctuating rate per annum which shall from day to day be equal to the lesser of (a) the Maximum Rate (as hereinafter defined), or (b) a rate ("Contract Rate"), calculated on the basis of the actual days elapsed but computed as if each year consisted of 365 days, equal to the sum of (i) the Prime Rate of interest ("Base Rate") as established from time to time by Bank of America (which may not be the lowest, best or most favorable rate of interest which Bank of America may charge on loans to its customers) plus (ii) 800 basis points, each change in the rate to be charged on this Note to become effective without notice to Debtors on the effective date of each change in the Maximum Rate or the Base Rate, as the case may be; provided, however, that if at any time the Contract Rate shall exceed the Maximum Rate, thereby causing the interest on this Note to be limited to the Maximum Rate, then any subsequent reduction in the Base Rate shall not reduce the rate of interest on this Note below the Maximum Rate until the total amount of interest accrued on this Note equals the amount of interest which would have accrued on this Note if the Contract Rate had at all times been in effect. The term "Maximum Rate" shall mean at the particular time in question the lesser of 18% per annum or the maximum rate of interest which, under applicable law, may then be charged on outstanding loans under the DIP Facility. If such maximum rate of interest subsequently changes, the Maximum Rate shall be automatically increased or decreased, as the case may be, without notice to Debtors from time to time as of the effective date of each change in such maximum rate. The DIP Lenders and Debtors agree that the Quarterly Rate Ceiling provided under Chapter 303 of the Texas |

| | |
|---|---|
| | Finance Code shall apply to this Note. If applicable law ceases to provide for such a maximum rate of interest, the Maximum Rate shall be equal to 18% per annum. |
| Voluntary Repayments: | Upon three (3) business days written notice and not more frequently than once per calendar week, permitted in whole or in part, with prior written notice but without premium or penalty, subject to limitations as to minimum amounts of prepayments and customary indemnification. Such repayments shall only be in increments of $10,000. |
| Mandatory Repayments: | Mandatory repayments of the Loans under the DIP Facility shall be required in an amount equal to (i) 100% of the net sale proceeds from non-ordinary course asset sales (including, without limitation, a sale of all or substantially all of Debtors' assets), (ii) 100% of the proceeds of the incurrence of any indebtedness of the Debtors incurred other than in the ordinary course of business, and (iii) 100% of insurance and condemnation proceeds, in each case received by Debtors. |
| Repayment at Maturity: | The DIP Facility will be repaid in full at the Maturity Date. |
| Conditions Precedent to Each Advance under DIP Facility | On the date of any advance under the DIP Facility, the following conditions precedent shall have been satisfied:<br><br>• Each of the DIP Orders, as the case may be, shall be in a form that is acceptable to the DIP Lenders in its sole and absolute discretion;<br><br>• This Order, as the case may be, shall be in full force and effect, and shall not have been reversed, modified, amended, stayed for a period of five (5) business days or longer, vacated or subject to a stay pending appeal, in the case of any modification, amendment or stay pending appeal, in a manner, or relating to a matter, that is materially adverse to the interests of the DIP Lenders; and<br><br>• Debtors' use of the proceeds is consistent with the Budget and the cumulative expenditures for each category in the budget are not more than 110% of the cumulative budgeted amount without the consent of the DIP Lenders. |
| Affirmative Covenants: | Debtors jointly and severally covenant and agree with the DIP Lenders that prior to the termination of this Agreement each Debtor will do, and if necessary cause to be done, and cause its Subsidiaries to do, each and all of the following: |

| | |
|---|---|
| | CORPORATE FUNDAMENTALS. At all times: (a) renew and keep in full force and effect all of its licenses, permits and franchises; (b) do all things necessary to preserve its corporate existence and its qualifications and rights in all jurisdictions where such qualification is necessary or desirable; (c) comply with all applicable Legal Requirements in respect of the conduct of its business and the ownership of its Property; and (d) cause its Property to be protected, maintained and kept in good repair and make all replacements and additions to its Property as may be reasonably necessary to conduct its business properly and efficiently.<br><br>INSURANCE. Maintain insurance with such reputable insurers, on such of its Property and personnel, in such amounts and against such risks as is customary with similar Persons or as may be reasonably required by the Lender, and furnish the Lender satisfactory evidence thereof promptly upon request. The Lender shall be named as a beneficiary of such insurance as its interest may appear and the Borrowers shall provide the Lender, within 20 days after execution of this Agreement, with copies of the policies of insurance and a certificate of the insurer that the insurance required by this section may not be canceled, reduced or affected in any manner without 30 days' prior written notice to the Lender.<br><br>INSPECTION. Permit the DIP Lenders and affiliates to inspect and photograph its Property, to examine its files, books and records and make and take away copies thereof, and to discuss its affairs with its officers, all at such times and intervals and to such extent as the Lender may reasonably desire.<br><br>CERTAIN CHANGES. Notify the DIP Lenders at least 30 days prior to the date that any of the Parties changes its name or the location of its chief executive office or principal place of business or the place where it keeps its books and records or the location of any of the Collateral. |
| Negative Covenants. | Debtors jointly and severally covenant and agree with the Lender that prior to the termination of this Agreement no Debtor will:<br><br>RESTRICTED PAYMENTS. At any time: (a) redeem, retire or otherwise acquire, directly or indirectly, any shares of its capital stock or membership interest or any other equity interest; (b) declare or pay any dividend (except stock dividends and dividends paid to a Borrower); or (c) make any other distribution of any Property or cash to owners of an equity interest in their capacity as such. |

|  | NATURE OF BUSINESS; MANAGEMENT. Change the nature of its business or enter into any business which is substantially different from the business in which it is presently engaged, or permit any material change in its management. |
| --- | --- |
| Events of Default: | (a) Debtors shall fail to pay any principal of or interest on the monies owed to the DIP Lenders under the DIP facility as and when due; or<br><br>(b) Any representation or warranty made in connection with any Loan Document shall prove to have been incorrect, false or misleading; or<br><br>(c) Default shall occur in the punctual and complete performance of any covenant of any of the Parties contained in any Loan Document, unless cured within 30 days after written notice specifying such non-performance. |
| Taxes | The DIP Facility will include customary provisions reasonably acceptable to the DIP Lenders, as to the DIP Facility, to the effect that all payments are to be made free and clear of any taxes (other than applicable franchise taxes and taxes on overall net income), imposts, assessments, withholdings or other deductions whatsoever. |
| Assignments and Participations | The DIP Lenders may assign all or any part of the DIP Facility to one or more affiliates, banks, financial institutions or other entities. Upon such assignment, such affiliate, bank, financial institution or entity will become a DIP Lender for all purposes under the loan documents. |

**ORDERED** nothing herein shall be construed as an adjudication of the validity, priority, perfection, voidablity, or existence of any lien against any property of the Debtors except the Replacement Lien and the lien to secure post petition loans made by the DIP Lenders which are specifically authorized by this Court; and it is further

**ORDERED** that nothing herein shall be construed as approving the Services Agreement to which the Debtors are a party that is effective January 1, 2010 and the Court reserves for later adjudication the amount of the liability, if any, that ACP and

ADCC may have to DLH for all post petition advances by DLH or the DIP Lenders under the post petition loan and how such sum shall be repaid to DLH; and it is further

**ORDERED** that the post petition lien granted by DLH in property of DLH to secure post petition loans made by the DIP Lenders will not secure any loans the DIP Lenders may make to ACP or ADCC for expenses incurred after June 15, 2010, unless authorized by further order of this Court; and it is further

**ORDERED** that the Court reserves the right to make further findings of fact and conclusions of law concerning this Order.

### End of Order ##