U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET



**The following constitutes the ruling of the court and has the force and effect therein described.**

*Horlie DeWayne Hale*

**United States Bankruptcy Judge**

**Signed March 23, 2011**

---

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **DLH Master Land Holding, LLC,** | § | |
| **Allen Capital Partners, LLC,** | § | **Case No. 10- 30561-HDH-11** |
| **Richard S. Allen, Inc.** | § | |
| **Richard S. Allen,** | § | **Jointly Administered** |
| | § | |
| Debtors. | § | |
| | § | |

### ORDER APPROVING (I) EXPEDITED MOTION TO SELL THE ADESA PROPERTY FREE AND CLEAR OF LIENS, CLAIMS AND ENCUMBRANCES AND (II) EXPEDITED MOTION FOR THE APPROVAL OF THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES PURSUANT TO 11 U.S.C. § 365

On Friday, March 18, 2011, this Court heard and considered (i) the *Expedited Motion to Sell the ADESA Property Free and Clear of Liens, Claims and Encumbrances* [Docket No. 808] (the "ADESA Sale Motion") and (ii) the *Expedited Motion for the Approval of the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Pursuant to 11 U.S.C. §*

365 [Docket No. 811] (the "ADESA Assumption and Assignment Motion" and together with the ADESA Sale Motion, the "Motions") filed by Debtor and Debtor in possession DLH Master Land Holding, LLC ("DLH"), seeking authority to sell the ADESA Project (which expressly includes the Land and Improvements (as such terms are defined in the PSA),[1] and assume and assign the ADESA Lease, PIA and that certain Lease Guaranty, dated on or about March 31, 2008, by KAR Holdings, Inc., a Delaware corporation ("Guarantor"), in favor of DLH Hutchins Wintergreen 178, LLC, a Delaware limited liability company (the "Guaranty") (collectively, the "Executory Contracts"), to Longo Real Estate Services, Inc. d/b/a Cardinal Industrial and Fortress Credit Corp. or their designee (collectively, "Purchaser"). Having considered the Motions, the objections thereto, the *Amended and Restated Purchase and Sale Agreement* between DLH and Purchaser (a copy of which is attached hereto as Exhibit A) (as may be subsequently amended pursuant to the terms hereof, the "PSA"), the evidence presented at the hearing on March 18, 2011 (the "Sale Hearing"), and the arguments and representations of counsel, it is hereby:

### FOUND AND DETERMINED THAT:

A. This Court has jurisdiction to hear and determine the Motions and to grant the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b). Venue of this case and of the Motions is proper in this District under 28 U.S.C. §§ 1408 and 1409.

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Motions.

B.     The predicates for the relief sought herein are 11 U.S.C. §§ 105, 363, 365, 1107(a),[2] and Rules 6004 and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

C.     Notice of the Motions and the Sale Hearing has been given to all parties entitled thereto, and such notice was appropriate and sufficient to all parties-in-interest.

D.     A reasonable opportunity to object or be heard regarding the relief requested in the Motions has been afforded to all parties-in-interest.  The relief sought in the limited objection [Docket No. 823] of Great Western Bank ("Great Western") and Branch Banking & Trust Company ("BB&T" and collectively with Great Western, "Bank") is granted through the confirmation of their lien priority and the other provisions related to Bank contained herein.  All other objections to the Motions not expressly overruled herein that have not been withdrawn are hereby overruled or denied in their entirety or are resolved by the terms of this Order.  This order provides procedures to promptly resolve the contested lien claims of Tim Foley and the cure amount due, if any, to ADESA.

E.     The form of this Order reflects the good faith attempts of the Debtors, Creditors Committee, Bank, ADESA, Tim Foley and Purchaser to arrive at a consensual order. ADESA and Bank each lodged objections to the form of Order with the Court.  Each of their objections to the form of the Order have been resolved in full by the form of this Order.

F.     This Order does not impair rights of Bank under the Order Approving Settlement by and between Debtors, Great Western Bank and BB&T (Docket No. 665), entered on November 16, 2010 and the Bank Settlement Agreement ("Bank Settlement Agreement") entered into pursuant to such order (collectively with the Bank Settlement Agreement, the "Bank Settlement and Order").  This Order provides DLH the means to perform its obligations under the Bank Settlement and Order.

---

[2]  Except as otherwise noted, section references herein are to 11 U.S.C. § 101, *et seq.* (the "Bankruptcy Code").

G.    The relief requested by DLH in the Motions is lawful and appropriate.

H.    DLH has established sound business justification in support of both the proposed sale of the Land, Improvements and Personal Property (as such terms are defined in the PSA) (collectively, "ADESA Project") and the assumption and assignment of the Executory Contracts to Purchaser.  The ADESA Project and the Executory Contracts shall collectively be referred to herein as the "ADESA Property".  Further, DLH's execution of a purchase and sale agreement substantially in the form of the PSA attached hereto as Exhibit A, hiring a surveyor, and consummation of the sale transaction contemplated therein constitute an exercise by DLH of sound business judgment, and such acts are in the best interest of the Debtors' estates, their creditors, and other parties-in-interest.  Likewise, the assumption and assignment of the Executory Contracts by DLH to Purchaser concurrent with the Closing (as defined in the PSA) is an exercise by DLH of sound business judgment, and such acts are in the best interest of the Debtors' estates, their creditors, and other parties-in-interest.

I.    Purchaser's offer of $50,750,000.00 for the purchase of the ADESA Property (the "Purchase Price"), subject to the terms of the PSA, represents the highest and best offer received by DLH for the ADESA Property.  The Purchase Price and other terms of the PSA are fair and reasonable.  There is no contractual financing condition precedent to Closing.  Based on the combined financial strength of the Fortress Investment Group and Cardinal Industrial, Purchaser can close on the sale of the ADESA Property before it would otherwise be lost by foreclosure to Bank in July 2010.  DLH believes that Purchaser is strongly motivated to promptly close.  The terms contained in the PSA have been negotiated and proposed by DLH and Purchaser in good faith, from an arm's length bargaining position, and without collusion.  Neither DLH nor Purchaser have engaged in any conduct that would prevent the application of section 363(m) of the Bankruptcy Code to this sale transaction and all aspects thereof, including the sale of the ADESA Project and the assumption and assignment of the ADESA Lease and

PIA. Accordingly, Purchaser is a good-faith purchaser of the ADESA Property pursuant to section 363(m) of the Bankruptcy Code.

J.     Upon Closing of the sale of the ADESA Property, unless otherwise specifically provided for herein or in the Motions, the parties, including those parties holding Interests (as defined in paragraph V below) related to the ADESA Property, are authorized and directed to execute such documents and take all other actions as may be necessary to release such Interests in the ADESA Property, as may have been recorded or may otherwise exist. However, the Interests shall attach to the proceeds derived from the sale and/or assignment of the ADESA Property, as applicable, in the same order of priority as existed prior to the filing of DLH's bankruptcy petition. The liens of the DIP Lenders shall not attach to the proceeds as they do not have a security interest in the ADESA Property or any proceeds thereof. This Order contains procedures for the prompt resolution of any interests in the proceeds asserted by Tim Foley.

K.     DLH is further authorized to execute such documents and take all other actions as may be necessary to effectuate the terms of this Order and the PSA. The PSA and any related agreement, document, or other instrument may be modified, amended, or supplemented by the parties in writing signed by the parties, and in accordance with the terms thereof, without further order of this Court; *provided, however*, such modification, amendment, or supplement does not have a material and adverse effect on the Debtors' estates or cause DLH to not be able to perform its obligations under the Bank Settlement and Order, including being unable to pay Bank, at Closing, the sum of $48,000,000 plus any other amounts due Bank, all as provided in the Bank Settlement and Order ("Adverse Bank Event"). DLH shall provide a copy of any modifications, amendments, or supplements to counsel for the Official Committee of Unsecured Creditors (the "Creditors Committee") and counsel for Bank.

L.     DLH and Purchaser are hereby authorized to file, register, or otherwise record this Order with any and all local and state taxing and other governmental authorities after

a Closing pursuant to the PSA and paragraphs 42 and 43 below. This Order shall constitute due and sufficient evidence that, upon the Closing of the sale and/or assignment of the ADESA Property, all Interests in or against the ADESA Property prior to and through the Closing, other than the Permitted Encumbrances, have been unconditionally released, discharged and terminated.

M.  No consideration shall be given to the local, state or federal income tax liabilities of any party.

N.  Purchaser is hereby granted all of the protections provided to a good-faith purchaser under section 363(m) of the Bankruptcy Code related to the sale and/or assignment of the ADESA Property.

O.  The Executory Contracts remain in full force and effect and have not been amended unless so stated in the preamble or the PSA. The City of Hutchins constructed the Wintergreen Expansion Road. The construction of the Wintergreen Expansion Road resulted in substantial completion of the Off Site Improvements as provided for in the ADESA Lease.

P.  There is a benefits sharing provision in paragraph 33 of the ADESA Lease. That provision contemplated that DLH and ADESA would jointly negotiate with the City of Hutchins concerning any such benefits. That joint negotiation never occurred. The agreement ultimately reached with the City of Hutchins on March 2, 2009 (the "City of Hutchins Contract") was with the Allen Group, Inc., which is currently a wholly- owned asset of the chapter 11 estate of Debtor Richard S. Allen. The Court makes no determination in this Order as to the property owner and/or beneficiaries of the rights existing under the City of Hutchins Contract, which issue shall be determined at a later hearing pursuant to paragraph 38 below. However, the City of Hutchins Contract is excluded from the ADESA Property being purchased by Purchaser. If necessary to protect ADESA's rights in any subsequent dispute, this Court has jurisdiction to

effect that result, and counsel for Debtor Richard S. Allen has agreed that any such matter may be resolved by motion rather than requiring the formality of an adversary proceeding.

Q.    The prior potential purchaser of the ADESA Property, Greenfield Companies ("Greenfield"), had a separate business relationship with ADESA, and offered DLH a lower purchase price but agreed with ADESA to an unspecified amendment to the ADESA Lease as part of a two lease package, the terms of which are not known to DLH. Based upon that arrangement, Greenfield signed a purchase and sale agreement (the "Greenfield PSA") with DLH, but DLH never executed that contract. Under the Greenfield PSA, which remained subject to Court approval, in addition to certain other benefits to be provided to ADESA, ADESA would be paid $350,000.00 in full and complete release of any claims, including claims related to paragraph 33 of the ADESA Lease and the City of Hutchins Contract. A copy of the Greenfield PSA was attached as <u>Exhibit B</u> to the ADESA Sale Motion.

R.    In accordance with the prior discussions of the parties and ADESA's arrangement with Greenfield, DLH stands ready to pay $350,000.00 to ADESA in full settlement of any claims by ADESA. At no time has ADESA taken any steps to assert any greater amount against DLH (other than noting the potential for larger claims at the hearing on the ADESA Assumption and Assignment Motion), even though ADESA has continued to make rental payments, without setoff of any kind, pursuant to the ADESA Lease.

S.    At the Sale Hearing, the Court did not have trial time to fully determine the rights of ADESA under the ADESA Lease. However, the increase in the sale price by Purchaser over the Greenfield offer for the ADESA Property, the demonstrated financial capabilities of Purchaser, and the procedures for resolving any claims asserted by ADESA pursuant to the ADESA Lease in paragraph 40 below, more than adequately, separately and collectively, provides a basis for the Court to approve the current sale of the ADESA Property, the assumption and assignment of the ADESA Lease, find any obligations due to ADESA under

the ADESA Lease to be cured as to purchaser, and to find that ADESA has adequate assurance of future performance of the ADESA Lease.

T.    The PSA specifically contemplates that DLH will pay any disputed ADESA claims associated with the cure of the ADESA Lease following the proceedings specified in paragraph 40 below.  Any cure or other amounts found payable to ADESA during the procedures set forth in paragraph 40 below shall be satisfied exclusively out of the (a) net proceeds retained by DLH from the sale of the ADESA Property after satisfaction of (i) all obligations to Bank under the Bank Settlement and Order and (ii) title insurance and title fees, brokerage fees, other miscellaneous fees and charges, and legal fees, all as related to the sale and/or assignment of the ADESA Property, and (b) benefits, if any, available to DLH under the City of Hutchins Contract.  DLH is solely responsible for any such amounts and neither ADESA, nor any other party, shall have recourse against Purchaser, Bank or the ADESA Property related to any such amounts determined by the Court.  Notwithstanding any such amounts that may later be determined by the Court to be due, the ADESA Lease shall not be deemed in default, and no additional cure payments or any other payments shall presently be due by Purchaser, upon assignment of the Executory Contracts to Purchaser, and the Executory Contracts shall be in full force and effect upon such assignment without any obligation of Purchaser to ADESA or Guarantor related to the excluded City of Hutchins Contract, any pre-Closing obligations to ADESA under paragraph 33 of the ADESA Lease, the assignment and assumption of the ADESA Lease, this Order or any other claims asserted by ADESA arising prior to Closing.

U.    DLH may sell and/or assign the ADESA Property free and clear of all Interests of any kind or nature whatsoever except the Permitted Encumbrances (as defined in the PSA and which shall include for all purposes herein (a) the ADESA Lease and (b) 2011 ad valorem real property taxes not yet due and owing as of the date of the Closing), because one or more of the standards set forth in Bankruptcy code section 363(f)(1)-(5) has been satisfied.

Those non-Debtor parties with interests in DLH's assets who did not object, or who withdrew their objections, to the Motions are deemed to have consented to the sale and assignment pursuant to Bankruptcy Code sections 363(f)(2) and 365. Those non-Debtor parties with interests in DLH's assets, who did object, fall within one or more of the other subsections of Bankruptcy Code sections 363(f) and 365. Accordingly, all non-Debtor parties having Interests of any kind or nature whatsoever against or in the ADESA Property shall be forever barred, estopped and permanently enjoined from pursuing or asserting such Interests against the ADESA Property, Purchaser or any of its assets, property, successors or assigns on or after Closing.

V. The conditions of Section 363(f) of the Bankruptcy Code have been satisfied in full. Therefore, upon a Closing pursuant to the PSA and paragraphs 42 and 43 below, DLH may sell and/or assign the ADESA Property free and clear of any and all Interests other than the Permitted Encumbrances. The term "Interests," as used herein, shall mean those claims or interests, arising or existing prior to the Closing: (a) that purport to give to any person or entity a right or option to effect any forfeiture, modification, right of first offer or refusal, or termination of DLH's or Purchaser's interest in the ADESA Property, or any similar rights, (b) relating to taxes arising under or out of, in connection with, or in any way relating to the ADESA Property prior to the Closing, (c) arising under or in connection with any and all mortgages, deeds of trust, security interests (expressly including the liens and encumbrances asserted by Bank), conditional sale or other title retention agreements, pledges, liens (including without limitation mechanics' and materialmen's liens), judgments, demands, encumbrances, rights of use, hypothecations, easements, servitudes, restrictive covenants, leases, subleases, covenants, rights of way, options, claims (including, without limitation, any and all "claims" as defined in Section 101(5) of the Bankruptcy Code), restrictions, encroachments, encumbrances or charges of any kind or nature, if any, including, but not limited to, any restriction on the use, voting, transfer, receipt of income or other exercise of any attributes of ownership, in or related to the

ADESA Property, and (d) and all debts or claims (as defined in Section 101(5) of the Bankruptcy Code), obligations, liabilities, demands, rights of recoupment, set-offs, environmental claims, causes of action, warranties, guaranties, options, rights, contractual or other commitments, restrictions and matters of any kind and nature, including, without limitation, claims arising in any way in connection with any agreements, acts, or failures to act, of the Debtors or any of the Debtors' predecessors or affiliates, with respect to the ADESA Property, including, any claims related to paragraph 33 of the ADESA Lease or the City of Hutchins Contract, in all cases, whether known or unknown, contingent or otherwise, whether arising prior to or subsequent to the commencement of the Debtors' cases pursuant to Chapter 11 of the Bankruptcy Code, and whether imposed by agreement, understanding, law, equity or otherwise, including but not limited to claims and debts otherwise arising under doctrines of successor liability.

      W.     Purchaser would not have entered into the PSA and would not consummate the transactions contemplated thereby, thus adversely affecting the Debtors, their estates, and their creditors, if either (i) the sale of the ADESA Project and the assumption and assignment of the Executory Contracts to Purchaser were not free and clear of all Interests of any kind or nature whatsoever, except those expressly assumed by Purchaser in the PSA, or (ii) Purchaser would, or in the future could, be liable for any of such Interests.

      X.     DLH is authorized to assume and assign the Executory Contracts to Purchaser without the need for any additional actions by either party except closing the sale pursuant to the terms of this Order and the PSA.

      Y.     The acquisition of the Executory Contracts is an essential element of, and inexorably tied to, the acquisition of the ADESA Project and the collective ADESA Property, and Purchaser is entitled to the protections of section 363(m) of the Bankruptcy Code as a good faith purchaser with respect to all elements of the acquisition and/or assignment of the ADESA Property.

Z.      Purchaser has proceeded in good faith in all respects in that: (i) PSA was negotiated and entered into in good faith, based upon arm's length negotiations between the Debtors, Purchaser and the Creditors Committee, and without collusion; (ii) Purchaser has not violated section 363(n) of the Bankruptcy Code by any action or inaction; and (iii) the negotiation and execution of the PSA and any other agreements or instruments related thereto were in good faith. Purchaser is a buyer in good faith, as that term is used in the Bankruptcy Code, and is entitled to the protections of Bankruptcy Code sections 363(m) and 363(n) with respect to the ADESA Property, including both the ADESA Project and the Executory Contracts.

AA.     Neither DLH nor Purchaser have violated Section 363(n) of the Bankruptcy Code by any action or inaction or engaged in any conduct that would cause or permit the PSA or the Sale to be avoided pursuant thereto. Specifically, Purchaser has not acted in a collusive manner with any person and the Purchase Price (as defined under the PSA) was not controlled by any agreement among bidders.

BB.     Following the assumption and assignment of the Executory Contracts to Purchaser, any claims arising under the Executory Contracts that existed, whether known or unknown, prior to the assumption and assignment shall be brought solely against DLH, and not Purchaser.

CC.     Pursuant to sections 105(a) and 363 of the Bankruptcy Code and effective as of the Closing of the sale and/or assignment of the ADESA Property to Purchaser, all Persons (as defined in section 101(41) of the Bankruptcy Code) are hereby enjoined from taking any action against Purchaser or their affiliates (as they exist immediately prior to Closing) to recover or enforce any Interests that such Person(s) may have against the ADESA Property, including, without limitation, with respect to paragraph 33 of the ADESA Lease or the City of Hutchins Contract.

DD.     This Order is an effective and enforceable final order within the meaning of 28 U.S.C. § 158(a) immediately upon entry notwithstanding any provision in the Bankruptcy Code or the Bankruptcy Rules, including Bankruptcy Rules 6004(h) and 6006(d), and the provisions of this Order are self-executing.  The Court expressly finds that there is no just reason for delay in the implementation of this Order and expressly directs entry of judgment as set forth herein.

EE.     The PSA attached hereto as <u>Exhibit A</u> is authorized and approved, and the terms and provisions thereof are incorporated by reference as if fully set forth herein.  The failure to specifically include any particular provision of the PSA or any related agreement in this Order will not diminish the effectiveness of such provision.

FF.     Nothing contained in any subsequent plan of reorganization or plan of liquidation that may be confirmed in this case or any order of this Court confirming such plan shall conflict with or derogate from the terms of this Order or the provisions of the purchase and sale agreement between DLH and Purchaser.

GG.     The provisions of this Order are non-severable and mutually dependent.

HH.     The transfers contemplated by the PSA do not and shall not subject Purchaser to any liability for claims against the Debtors by reason of such transfers under the laws of the United States, any state, territory or possession thereof, including claims relating to the operation of the Debtors' business before the Closing, except as specifically provided in the PSA or this Order with respect to the Executory Contracts.  Purchaser is not a successor to any of the Debtors or their estates.  Purchaser is not a mere continuation of any of the Debtors.  The sale and/or assignment of the ADESA Property does not amount to a consolidation, merger or de facto merger of Purchaser and any of the Debtors.

II.     At the Closing DLH shall assume each of the Executory Contracts and Leases and assign each of them to Purchaser pursuant to sections 363 and 365 of the Bankruptcy

Code and this Order notwithstanding any anti-assignment clause or other similar provision in the relevant Executory Contract, as provided by section 365(f) of the Bankruptcy Code. The assumption and assignment of the Executory Contracts is in the best interests of DLH and its estate, creditors and other parties in interest, and represents the reasonable exercise of sound and prudent business judgment by DLH.

JJ.     DLH has cured, or has provided adequate assurance of cure (including by means of the procedure set forth in paragraph 40 below), of any default existing prior to the date hereof under any of the Executory Contracts, within the meaning of Bankruptcy Code section 365(b)(1)(A) and (B).

KK.     Purchaser and DLH have provided evidence of adequate assurance of future performance by Purchaser under the Executory Contracts (including by means of the procedure set forth in paragraph 40 below). DLH and/or Purchaser have provided adequate assurance of future performance under each of the Executory Contracts, within the meaning of Bankruptcy Code section 365(b)(1)(C) (including by means of the procedure set forth in paragraph 40 below).

LL.     Pursuant to section 363(m) of the Bankruptcy Code, the reversal or modification of this Order on appeal will not affect the validity or the transfer of the ADESA Property to Purchaser, including the assignment of the Executory Contracts, unless the same is stayed pending appeal prior to the Closing and consummation of the sale and/or assignment of the ADESA Property as authorized by this Order.

MM.     The City of Hutchins Contract is expressly excluded from the ADESA Property, and therefore no rights arising thereunder are being assigned or transferred to Purchaser and Purchaser is not assuming any liabilities arising thereunder.

NN.     Tim Foley, a creditor in this case, asserts a lien on distributions received by or made from various entities related to the ADESA Property. This Order provides for the

determination, at a later date, of Tim Foley's interest, if any, to any of the proceeds realized from the sale and/or assignment of the ADESA Property.

OO.    The relief requested by DLH in the Motions and the sale and/or assignment of the ADESA Property to Purchaser provided in this Order are in the best interests of the Debtors' estates, their creditors, and other parties-in-interest.

PP.    All findings of fact and conclusions of law announced by the Court at the Sale Hearing are incorporated herein.

**NOW, THEREFORE, IT IS HEREBY ORDERED ADJUDGED AND DECREED THAT:**

## I.    GENERAL PROVISIONS

1.    The Motions are GRANTED as set forth herein.

2.    All objections to the Motions have either been resolved or are OVERRULED.

## II.    APPROVAL OF PSA

3.    The PSA and all of the terms and conditions thereof, are hereby approved, and the PSA is incorporated herein.

4.    The sale to Purchaser is approved pursuant to sections 105, 363 and 365 of the Bankruptcy Code, and DLH and its affiliates, officers, directors, employees and agents are authorized and directed to immediately take such actions as are necessary to consummate and implement the PSA, including retaining a surveyor and environmental engineer and obtaining a survey and any other relevant study of the ADESA Project pursuant to the PSA.  The terms and conditions of the PSA are hereby approved in all respects.

5.    DLH, as well as its affiliates, officers, directors, employees and agents, are authorized and directed to execute and deliver the PSA, together with all additional agreements,

instruments and documents that may be reasonably necessary or desirable to implement the PSA and effectuate the provisions of this Order and the transactions approved hereby, including the sale of the ADESA Project and the assumption and assignment of the Executory Contracts, all without further Order of the Court. Additionally, pursuant to section 363(b) of the Bankruptcy Code, DLH is hereby authorized and empowered to fully assume, perform under, consummate, and implement the PSA, together with such additional agreements, instruments and documents that may be reasonably necessary or desirable to implement the PSA, and to take all further actions as may reasonably be requested by Purchaser for the purpose of selling, assigning, transferring, granting, conveying, conferring and delivering to Purchaser, or transferring to Purchaser's possession, the ADESA Property, or as may be necessary or appropriate to the performance of the obligations, and make effective the transactions contemplated by the PSA, all without further Order of this Court.

### III. TRANSFER OF THE ADESA PROPERTY

6. Pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, DLH is authorized to transfer or to cause the transfer of ADESA Property in accordance with the terms of the PSA and this Order. Except for the Permitted Encumbrances and the obligations and liabilities of Purchaser under the Executory Contracts pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, the ADESA Property shall be transferred to Purchaser, and upon the Closing shall be, free and clear of all Interests of any kind or nature whatsoever, and all such Interests of any kind or nature whatsoever (including the liens and encumbrances of Bank) shall attach solely to the net cash proceeds of the transactions in the order of their priority, with the same validity, force and effect that they now have as against the ADESA Property, subject to any claims and defenses DLH may possess with respect thereto.

7. From and after Closing, except for holders of Permitted Encumbrances, all persons or entities holding Interests of any kind or nature with respect to the ADESA Property

are hereby barred from asserting such Interests of any kind or nature against Purchaser, its successors or assigns, or the ADESA Property. This Order is and shall be effective as a determination that except for the Permitted Encumbrances, all Interests shall be and are, without further action by any person or entity, released with respect to the ADESA Property as of Closing.

8. Except for holders of Permitted Encumbrances and as expressly provided otherwise by this Order, all persons and entities, including, but not limited to, all debt security holders; equity security holders; governmental, tax and regulatory authorities; lenders; trade creditors; tenants; and other creditors holding Interests of any kind or nature whatsoever against or in DLH or the ADESA Property (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated), arising under or out of, in connection with or in any way relating to DLH, the ADESA Property, the operation of the ADESA Property prior to the Closing or the transactions contemplated in the PSA are forever barred, estopped and permanently enjoined from asserting such persons' or entities' Interests against Purchaser, its successors or assigns, their property or the ADESA Property.

## IV.   ASSUMPTIONS AND ASSIGNMENT OF EXECUTORY CONTRACTS

9. Pursuant to Bankruptcy Code sections 105(a) and 365, and subject to and conditioned upon the Closing of the sale and/or assignment of the ADESA Property is hereby approved, and the requirements of Bankruptcy Code section 365(b)(1) with respect thereto are hereby deemed satisfied, including by means of the procedure set forth in paragraph 40 below.

10. DLH is hereby authorized and directed in accordance with Bankruptcy Code sections 105(a) and 365 to (a) assume and assign to Purchaser, effective upon the Closing of the sale, the Executory Contracts, free and clear of all Interests of any kind or nature whatsoever except for the post Closing obligations of Purchasers to the counterparties thereunder, if any, and (b) execute and deliver to Purchaser such agreements, documents or other

instruments as may be necessary to sell, assign, transfer, convey and deliver the Executory Contracts to Purchaser.

11. The Executory Contracts shall be transferred to, and remain in full force and effect for the benefit of, Purchaser in accordance with their respective terms, notwithstanding any provision in any such Executory Contract (including those of the type described in sections 365(b)(2) and (f) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer and, pursuant to Bankruptcy Code section 365(k), DLH shall be relieved from any further liability (other than its cure obligations) with respect to the Executory Contracts after such assignment to and assumption by Purchaser.

12. All defaults or other obligations of DLH under any Executory Contract arising or accruing prior to the date of this Order (without giving effect to any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code) shall be deemed cured upon payment at the Closing of the Purchase Price to DLH and DLH's payment or reservation of cure amounts, if any, with respect to each Executory Contract.

13. Except for the right to payment of the Cure Amounts from DLH per any future determination of the Court, each non-Debtor party to an Executory Contract hereby is forever barred, estopped, and permanently enjoined from asserting against DLH, Bank or Purchaser, or the property of any of them, including the ADESA Property, any default existing as of the date of the entry of this Order under the Executory Contract, whether declared or undeclared or known or unknown; or, against Purchaser, any counterclaim, defense, setoff or any other claim asserted or assertable against DLH under the Executory Contract.

14. Any provisions in any Executory Contract that prohibit or condition the assignment of any Executory Contract or allow the non-Debtor party to such Executory Contract to terminate, recapture, impose any penalty, condition a renewal or extension, or modify or limit any term or condition upon the assignment of such Executory Contract, constitute unenforceable

anti-assignment provisions that are void and of no force and effect for purposes of challenging the assumption and assignment provided for herein. All other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by DLH and assignment to Purchaser of the Executory Contracts have been satisfied (including by means of the procedure set forth in paragraph 40 below) and all counterparties to such Executory Contracts (other than ADESA) shall be deemed to have consented to the assignment to Purchaser as contemplated by Bankruptcy Code section 365(c). Upon the Closing, in accordance with sections 363 and 365 of the Bankruptcy Code, Purchaser shall be fully and irrevocably vested with all rights, title, privilege and interest of DLH and its predecessors, as applicable, under the each Executory Contract.

15.     DLH's payment of the reservation for and/or payment of cure amounts (if any), including any payments as may be ordered by this Court pursuant to the procedure set forth in paragraph 40 below, shall (a) effect a cure of all defaults existing under the applicable Executory Contract as of the Closing, (b) compensate for any actual pecuniary loss to such non-Debtor party resulting from such defaults, (c) constitutes satisfaction in full of all amounts accrued as of the Closing and (d) together with the assumption and purchase of the Executory Contract by Purchaser, constitute adequate assurance of future performance thereof. Upon Closing, Purchaser shall be deemed to have assumed each Executory Contract and, pursuant to sections 363, 365(f), and 365(k) of the Bankruptcy Code, the assignment and sale by DLH of such Executory Contracts shall not be a default thereunder. Purchaser shall not have any obligations to the non-Debtor parties to such Executory Contracts other than its obligations under each such Executory Contract that accrue on or after the Closing. After the payment of the relevant cure amounts, DLH shall have any further obligations to the non-Debtor parties to such Executory Contracts.

16.    Upon the Closing of the sale and/or assignment of the ADESA Property, Purchaser shall be deemed substituted for DLH and its predecessors, as applicable, as a party to the applicable Executory Contract, and DLH shall be relieved from all liability on the Executory Contracts arising from and after the Closing.

17.    Purchaser has provided adequate assurance of its future performance under the relevant Executory Contract within the meaning of sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code, including by means of the procedure set forth in paragraph 40 below.

18.    There shall be no rent accelerations, assignment fees, increases (including advertising rates), or any other fees charged to Purchaser as a result of the assumption, assignment, and sale of the Executory Contract. The failure of DLH to enforce, at any time prior to Closing, one or more of the conditions of any such Executory Contract shall not be a waiver of such term or conditions, or of Purchaser's right to enforce every term and condition of such Executory Contract.

19.    Pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code, all parties to the Executory Contracts are forever barred and enjoined from raising or asserting against Purchaser or the ADESA Property any assignment fee, default, breach, or claim or pecuniary loss, or condition to assignment, arising under or related to such Executory Contracts existing as of the Closing or arising by reason of the Closing. Any assignments of the ADESA Lease following the Closing shall be made pursuant to the terms of the ADESA Lease.

## V.    ADDITIONAL PROVISIONS

20.    Purchaser shall have no liability or responsibility for any liabilities or other obligations of the Debtors arising under or related to the ADESA Property, except for the Permitted Encumbrances and the assumed obligations under the Executory Contracts. Without limiting the generality of the foregoing, Purchaser shall not be liable for: (i) any fixed, unliquidated or contingent claims against the Debtors or any of its predecessors or affiliates, whether based upon successor or vicarious liability or otherwise, and whether any of such items are known or unknown as of the Closing; (ii) any violation or alleged violation of any environmental laws; or (iii) liabilities under any pension, ERISA, tax, employment, labor, employment or antidiscrimination laws or regulations, any products liability law, or any other liability related to the Debtors.

21.    Purchaser is not a successor to the Debtors or their estates by reason of any theory of law or equity and Purchaser shall not assume or in any way be responsible for any liability or obligation of the Debtors and/or their estates. Specifically, Purchaser is not merely a continuation of the Debtors or their estates, there is no substantial continuity between Purchaser and the Debtors and there is no continuity of enterprise between the Debtors and Purchaser.

22.    On and after the Closing, except for holders of Permitted Encumbrances, each of the Debtors' creditors asserting an Interest in any of the ADESA Property is authorized and directed to execute such documents and take all other actions as may be necessary to release its liens on or against the ADESA Property being sold and assigned pursuant to the PSA and this Order, as such Interests may have been recorded or otherwise exist; provided that the failure of any such creditors to comply with the provisions of this paragraph shall in no way limit the release, discharge and termination of any such Interests against the ADESA Property.

23.    If any person or entity that has filed financing statements, mortgages, mechanics' liens, *lis pendens*, or other documents or agreements evidencing Interests against

DLH or the ADESA Property shall not have delivered to DLH prior to Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all Interests which the person or entity has with respect to DLH or the ADESA Property, or otherwise, then at Closing Purchaser is authorized to file, register or otherwise record a certified copy of this Order (and file any UCC-3 termination statements), which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all Interests against the ADESA Property. This Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state or local government agency, department or office. Holders of Permitted Encumbrances shall not be required to comply with and are not subject to the provisions of this paragraph 23.

24. Each and every federal, state and local government agency or department and all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds and other similar persons are hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the PSA and this Order.

25. The automatic stay provisions of section 362 of the Bankruptcy Code are vacated and modified to the extent necessary to implement the terms and provisions of the PSA and the provisions of this Order.

26. All persons or entities that are presently, or on the date of Closing may be, in possession of some or all of the ADESA Property (other than ADESA with respect to its interests under the ADESA Lease) are hereby directed to surrender possession of the ADESA Property to Purchaser on the date of Closing.

27. Article 6 of the Uniform Commercial Code governing Bulk Sale Transfers and comparable state statutes are not applicable to the sale of the ADESA Property to Purchaser.

28.     The PSA and any related agreements, documents or other instruments may be amended by the parties in a writing signed by such parties without further order of the Court at any time prior to Closing, provided any such amendment does not have a material and adverse effect on DLH or its estate or would result in an Adverse Bank Event; provided, however, that notice of such amendment is provided to counsel for the Creditors Committee and Bank. Absent written consent from the Bank, no amendment to the PSA shall have the effect of impairing Bank's right to foreclose on the ADESA Property on or after July 1, 2011, pursuant to the terms of the Bank Settlement and Order.

29.     This Court retains jurisdiction for all purposes in connection with this Order, including, to (a) enforce and implement the terms and provisions of the PSA, all amendments thereto, any waivers and consents thereunder, and of each of the agreements executed in connection therewith; (b) compel delivery and/or assignment of the ADESA Property to Purchaser, (c) compel delivery of the Purchase Price; (d) compel specific performance of DLH's and Purchaser's obligations under the PSA; (e) resolve any disputes arising under or related to the PSA; (f) interpret, implement and enforce the provisions of this Order; (g) determine any disputes relating to or concerning the receipt, use, application or retention of the proceeds from the sale of the ADESA Property; (h) determine all disputes concerning any Interests in or to the ADESA Property, including the extent, validity, enforceability, priority, and nature of all such Interests; (i) adjudicate any and all issues relating to the sale and/or assignment of the ADESA Property; (j) determine any disputes, conduct any hearings, and otherwise resolve issues relating to the matters to be resolved by the procedures set forth in paragraphs 38, 39 and 40 below; and (k) enforce the Bank Settlement and Order, including compelling DLH to make the payments required thereunder. Any plan of reorganization confirmed for the Debtors shall provide for the continued jurisdiction of the Court, consistent with this paragraph.

30.     To the extent that any provision of this Order is inconsistent with the provisions of the PSA, any prior order, or any pleading with respect to the Motions in these cases, the terms of this Order control.

31.     Purchaser is deemed a buyer in good faith of the ADESA Property and thus entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code, in the event that this Order is modified on appeal or reversed, with respect to both the ADESA Project and the Executory Contracts.

32.     The transactions contemplated by the PSA are not subject to avoidance pursuant to section 363(n) of the Bankruptcy Code.

33.     DLH is hereby authorized and directed to take all actions reasonably necessary to effectuate the terms of the PSA, the transactions contemplated thereunder and the provisions of this Order, all without the necessity of any further order of the Bankruptcy Court.

34.     The provisions of Bankruptcy Rules 6004(h) and 6006(d) shall not apply to stay consummation of the sale and/or assignment of the ADESA Property to Purchaser under the PSA, as contemplated in the Motions and approved by this Order, and DLH and Purchaser are hereby authorized to consummate the transactions contemplated and approved herein immediately upon entry of this Order.

35.     Any appeal seeking to enjoin or stay consummation of the transactions that are the subject of this Order (the "Appeal") shall be subject to the appellant depositing or posting a bond in an amount determined by this Court, but under no circumstances less than the Purchase Price plus projected interest at the applicable judgment rate for a period of no less than one year, pending the outcome of the Appeal.

36.     The failure specifically to include any particular provisions of the PSA in this Order shall not diminish or impair the effectiveness of such provisions, it being the intent of

the Court that the PSA is hereby authorized and approved in its entirety, as it may be amended or supplemented in accordance with its terms and this Order.

37.     This Order and, where applicable, the PSA: (a) shall be binding in all respects upon all creditors of and holders of equity interests in any Debtors (whether known or unknown), any holders of Interests, all non-Debtor parties to the Executory Contracts, Purchaser and all successors and assigns of Purchaser, DLH and its affiliates and predecessors, the ADESA Property and any subsequent trustees appointed in these chapter 11 cases, upon a conversion to chapter 7 under the Bankruptcy Code or upon a dismissal of any of the Debtors' cases; and (b) shall not be subject to rejection. Nothing contained in any plan of reorganization or liquidation confirmed in the Debtors' Chapter 11 cases or any order of this Court confirming such plan or in any other order in any of the Debtors' Chapter 11 cases (including any order entered after any conversion of any of these cases to a case under Chapter 7 of the Bankruptcy Code) shall alter, conflict with, or derogate from, the provisions of the PSA or the terms of this Order. The provisions of this Order and the PSA and any actions taken pursuant hereto or thereto shall survive entry of any order which may be entered confirming or consummating any plan of reorganization of any of the Debtors, or which may be entered converting any of the Debtors' cases from Chapter 11 to Chapter 7 of the Bankruptcy Code or dismissal of any of the Debtors' cases, and the terms and provisions of the PSA, as well as the rights and interests granted pursuant to this Order, shall continue in this or any superseding case or any dismissal of the Debtors' cases and shall be specifically performable and enforceable against and binding upon the Debtors, their estates and Purchaser and its successors and assigns, including any trustee, responsible officer or other fiduciary hereafter appointed as a legal representative of the Debtors under Chapter 7 or Chapter 11 of the Bankruptcy Code or otherwise.

38.     As soon as practicable, the Debtors shall file a motion to set-aside, transfer or otherwise recover the City of Hutchins Contract or the benefits thereof for one or more of the

Debtors' estates.  The Allen Group, Inc., a non-debtor, has consented to this Court's jurisdiction over its interest in the City of Hutchins Contract and consents to this court proceeding via contested matter to determine the property owner(s) or beneficiaries(s) of the City of Hutchins Contract.  The Debtors shall specify the briefing schedule and hearing date related to their motion in accordance with the applicable Bankruptcy Rules, local rules and rules of this Court, but in no event shall the hearing occur later than the Debtors' confirmation hearing.

39.     On or before April 15, 2011, Tim Foley, to the extent he asserts an Interest (as defined above) in the proceeds from the sale of the ADESA Property, shall file a motion asserting his Interests in such proceeds.  Any opposition or response shall be filed by April 29, 2011.  The hearing on any such motion filed by Mr. Foley shall be heard concurrently with the Debtors' confirmation hearing.

40.     On or before April 15, 2011, ADESA shall file a motion seeking to establish the amount of its cure claim and any other claims it asserts against the Debtors with respect to the ADESA Lease.  Any opposition or response shall be filed by April 29, 2011.  The hearing on any such motion shall be heard concurrently with the Debtors' confirmation hearing. DLH shall reserve $350,000 in its debtor-in-possession accounts as a source of payment – although such amount does not constitute a cap for such claims – for the amount due ADESA on an administrative priority basis as determined by this Court.  Any cure amount found to be payable to ADESA shall be satisfied exclusively out of the (a) net proceeds retained by DLH from the sale of the ADESA Property after satisfaction of (i) all obligations to Bank under the Bank Settlement and Order and (ii) title insurance and title fees, brokerage fees, other miscellaneous fees and charges, and legal fees, all as related to the sale and/or assignment of the ADESA Property and (b) benefits, if any, available to DLH under the City of Hutchins Contract, and shall not in any way be due or payable by Purchaser or out of the ADESA Property.

41.     The Initial Earnest Money deposit and the Second Earnest Money deposit (collectively, along with all interest earned thereon, "Earnest Money Deposits"), while in the possession of the Title Company (as such terms are defined in the PSA) shall not be subject to any liens or security interests otherwise encumbering all or any part of the Debtors' assets, including the ADESA Property.  In the event that the Debtors receive payments from the Title Company of the Earnest Money Deposits but not the remainder of the Purchase Price, due to Purchaser's failure to close under the PSA in a manner entitling the Debtors to receive the Earnest Money Deposits, then the Debtors shall deposit all such funds into DLH's debtor-in-possession account pending further order of this Court.

42.     Neither the entry of this Order nor Debtors' entry into the PSA, or any amendments thereto, shall alter or amend in any manner the terms, conditions and provisions of the Bank Settlement and Order as between Bank and Debtors, nor shall Bank's failure to object to the Motions be construed as their agreement to any alteration or amendment of the Bank Settlement and Order or a waiver of any of their rights thereunder.  The Debtors shall comply with the Bank Settlement and Order in the sale and/or assignment of the ADESA Property.

43.     At Closing, and substantially contemporaneous with the transfer of the ADESA Property to the Purchaser, DLH, through Title Company, shall pay to Bank, via immediately available wire transfer funds, the sum of (i) Forty-Eight Million Dollars (U.S.) ($48,000,000.00) plus (ii) all monthly payments due to Bank under the Bank Settlement and Order, without deduction or setoff except for amounts previously paid to Bank by DLH under the Bank Settlement and Order (collectively, "Release Price").  DLH is authorized and directed to pay the Release Price to Bank, through Title Company, in accordance with written instructions received by DLH and Title Company jointly signed by Great Western and BB&T or their respective counsel, including with respect to the designated amounts or percentages to be paid to Great Western and BB&T.  In the absence of such instructions, the Release Price shall be paid at

Closing, via immediately available wire transfer funds, in the following manner (a) 50% of the Release Price to Great Western in accordance with its wire instructions, and (b) 50% of the Release Price to BB&T in accordance with its wire instructions. The Purchaser shall not interfere with, delay or stop any foreclosure sale that Bank is authorized to conduct pursuant to the terms of the Bank Settlement and Order except through this Court which retains jurisdiction.

44. The Debtors shall provide timely copies of all notices received from Purchaser with respect to the PSA or this Order and shall provide concurrent copies of all notices sent to Purchaser with respect to the PSA or this Order to counsel for the Creditors Committee and counsel for Bank. The Debtors shall also provide periodic information to (a) counsel for the Creditors Committee and Bank on the status of the PSA and Closing and (b) counsel for ADESA, following ADESA's reasonable request, on the status of Closing.

45. The Debtors and their professionals and advisors may continue to market the ADESA Property and solicit binding agreements to acquire the ADESA Property by a third party (other than Purchaser, the Debtors or any of their subsidiaries or affiliates) (each third party a "Backup Purchaser") if the PSA is validly terminated in accordance with its terms. No Debtor or any of their subsidiaries or affiliates may be a Backup Purchaser through a section 363 sale or a plan of reorganization. The Debtors shall disclose the existence of this Order to any potential Backup Purchaser and any agreements or understandings entered into with any Backup Purchaser shall be expressly subject to this Order and Purchaser's rights under the PSA. The Debtors shall not have any authority to enter into any agreements or understandings with respect to the ADESA Property that are not expressly subject to this Order and Purchaser's rights under the PSA.

46. No party that appeared before the Court in connection with the Motions may file a motion or otherwise seek an order from this Court or any other court to sell and/or assign the ADESA Property or any part thereof to any Backup Purchaser or prevent the sale

and/or assignment of the ADESA Property to Purchaser, even if the terms of the potential sale and/or assignment are higher and/or better for any of the Debtors' estates, unless such order is expressly (a) conditioned on Purchaser's rights under the PSA, including the right to purchase the ADESA Property pursuant to the terms of the PSA and this Order and to compel specific performance by the Debtors and their estates of such rights, and (b) contingent on Purchaser not Closing the acquisition of the ADESA Property pursuant to the terms of the PSA or pursuing its rights to close the acquisition of the ADESA Property pursuant to the terms of the PSA.

47.     The Debtors and the Creditors Committee each covenant not to directly or indirectly take any action proscribed by or inconsistent with paragraphs 45 and 46 above and the Debtors agree to use commercially reasonable efforts to oppose any effort to contravene the requirements of paragraphs 45 and 46 above, and the Creditors Committee agrees to advise the Court that it does not support any attempt to circumvent the provisions of paragraphs 45 and 46 above, notwithstanding the existence of any potentially higher and/or better offers made or agreements entered into with a Backup Purchaser. The Debtors, on behalf of themselves, their estates, their professionals and their advisors, covenant to pursue the sale and/or assignment of the ADESA Property to Purchaser in good faith pursuant to the terms of this Order and the PSA and shall cooperate with Purchaser in effecting the sale and/or assignment of the ADESA Property to Purchaser. In recognition of Purchaser's reliance on the PSA and this Order, in addition to Purchaser's remedies specified in this Order and the PSA, Purchaser shall also have the right to seek any and all damages (including, actual, compensatory and punitive damages) from the Debtors' estates for the violation of this paragraph and paragraphs 45 and 46 above. All such damages caused by the Debtors or their equity holders, officers, employees, members, or professionals, and established pursuant to further order of this Court (with all parties reserving the right to oppose such claim of damages) shall be granted an administrative priority status senior to the administrative priority claims of the Debtors' professionals.

48.     This Order does not authorize the sale and/or assignment of the ADESA Property to any entity other than Purchaser.

49.     Notwithstanding that the term Permitted Encumbrances includes encumbrances and obligations related to 2011 ad valorem real property taxes not yet due and owing as of the date of the Closing, for the avoidance of doubt, the sale of the ADESA Project shall not be free and clear of the encumbrances and obligations related to the 2011 ad valorem real property taxes not yet due and owing as of the date of the Closing.

### ### End of Order ###

## PROPOSED EXHIBIT TO ORDER DOCUMENT NO. 837

**AGREED AS TO FORM AND SUBSTANCE THROUGH COUNSEL:**

*/s/ Jeremy E. Rosenthal*
Edward Prokop
Jeremy E. Rosenthal
Sidley Austin LLP
555 West 5th St., Suite 4000
Los Angeles, California 90013
Tel: 213-896-6893
Email: jrosenthal@sidley.com

**COUNSEL FOR FORTRESS
CREDIT CORP.**

*/s/ James Jay Rubens*
James Jay Rubens
934 San Vicente Blvd., Suite 1000
Santa Monica, California 90402
Tel: 310-458-2700
Email: jjrubens@earthlink.net

**COUNSEL FOR CARDINAL
INDUSTRIAL**

*/s/ Michael Warner*
Michael Warner
Rachel R. Obaldo
Cole, Schotz, Meisel, Forman & Leonard, P.A.
301 Commerce Street, Suite 1700
Fort Worth, Texas, 76102
Tel: 817.810.5250

**COUNSEL FOR CREDITORS
COMMITTEE**

**AGREED AS TO FORM ONLY:**

*/s/ Michael W. Bishop*
Michael W. Bishop,
Texas State Bar No. 02354860
H. Joseph Acosta, Esq.
Texas State Bar No. 24006731
Looper Reed & McGraw, P.C.
1601 Elm Street, Suite 4600
Dallas, Texas 75201
Tel: (214) 945-4135

**COUNSEL FOR GREAT WESTERN**

*/s/ Timothy J. Vineyard*
Timothy J. Vineyard,
Texas State Bar No. 20587000
Jason T. Rodriguez,
Texas State Bar No. 24042827
HIGIER ALLEN &LAUTIN, P.C.
5057 Keller Springs Road, Suite 600
Addison, Texas 75001-6231

**COUNSEL FOR BB&T**

*/s/ Ian T. Peck*
Ian T. Peck – TBN 24013306
W. Abigail Ottmers – TBN 24037225
John Middleton – TBN 24053742
HAYNES AND BOONE, L.L.P.
2323 Victory Avenue, Suite 700
Dallas, Texas 75219
Tel: (214) 651-5000

**COUNSEL FOR ADESA**

**SUBMITTED AND PREPARED BY:**

*/s/ Mark MacDonald*
Mark E. MacDonald
State Bar No. 12758300
MacDonald + MacDonald, P.C.
10300 N. Central Expressway, Suite 335
Dallas, Texas 75231
Tel.:  (214) 237-4220
Fax:  (214) 890-0818
Email:  mark@macdonaldlaw.com

**COUNSEL FOR DLH MASTER LAND HOLDING, LLC**
**AND ALLEN CAPITAL PARTNERS, LLC,**
**DEBTORS AND DEBTORS IN POSSESSION**