Kenneth Stohner, Jr.
State Bar No. 19263700
Heather M. Forrest
State Bar No. 24040918
JACKSON WALKER L.L.P.
901 Main Street, Suite 6000
Dallas, Texas 75202
(214) 953-6000 - Telephone
(214) 953-5822 - Telecopier

ATTORNEYS FOR COMPASS BANK

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **DLH Master Land Holding, LLC,** | § | **Case No. 10-30561-hdh-11** |
| **Allen Capital Partners, LLC,** | § | |
| **Richard S. Allen, Inc.,** | § | |
| **Richard S. Allen,** | § | **Chapter 11** |
| | § | |
| **Debtors.** | § | **Joint Administration** |

## COMPASS BANK'S OBJECTION TO DISCLOSURE STATEMENT FOR DEBTORS' AMENDED AND RESTATED JOINT PLAN OF REORGANIZATION

NOW COMES Compass Bank ("Compass") and files this Objection to Disclosure Statement for Debtors' Amended and Restated Joint Plan of Reorganization ("Disclosure Statement"), and in support thereof would respectfully show the Court as follows:

**1.**
**Factual Background**

1.     On January 25, 2010 (the "Petition Date"), DLH Master Land Holding, LLC ("DCH") and Allen Capital Partners, LLC ("ACP") (collectively, the "Debtors") commenced this case by filing voluntary petitions under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

2.      On February 22, 2010, the Debtors filed their schedules of assets and liabilities (the "Schedules") and their statement of financial affairs (the "SOFAs").

3.      On February 22, 2011, the Debtors filed the Disclosure Statement and the Amended and Restated Joint Plan of Reorganization (the "Plan").

4.      Compass is a secured creditor of DLH holding secured claims as of the petition date in the approximate amount of $41,751,789.85, represented by two loans, a loan secured by approximately 1,352 acres of undeveloped land and a loan secured by two warehouses. ACP guaranteed the payment of such claims and granted a security interest in certain interests to secure such guaranty.

**2.**
**Argument and Authorities**

A.      **The standard for approval of the Disclosure Statement.**

5.      Disclosure is the pivotal concept in the reorganization process under the Bankruptcy Code.[1] A disclosure statement must inform a creditor what it is going to get, when it is going to get it, and what contingencies exist to getting it.[2] Simply stated, the primary purpose of a disclosure statement is to give a creditor the information necessary for it to decide whether to accept or reject a proposed plan of reorganization.[3]

6.      Section 1125 of the Bankruptcy Code obligates a plan proponent to submit a disclosure statement with "adequate information," which means:

> information of a kind, and in sufficient detail, as far as reasonably
> practicable in light of the nature and history of the debtor and the
> condition of the debtor's books and records, that will enable a

---

[1]      *Westland Oil Dev. Corp. v. MCorp. Mgmt. Solutions, Inc. v. Federal Deposit Ins. Corp.*, 157 B.R. 100, 102 (S.D. Tex. 1993).

[2]      *In re Ferretti*, 128 B.R. 16, 19 (Bankr. D.N.H. 1991).

[3]      *In re Cajun Electric Power Cooperative Inc.*, 155 F.3d 503, 518 (5th Cir. 1998).

hypothetical investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan.[4] Approval of a disclosure statement should be denied when it does not contain adequate information.[5]

7.     A disclosure statement should contain "[a] all factors presently known to the plan proponent that bear upon the success or failure of the proposals contained in the Plan."[6] Among the types of information that generally must be included are the following.

a.     Events which led to the filing of petition;
b.     A description of the available assets and their value;
c.     The anticipated future of the company;
d.     The source of information stated in the disclosure statement;
e.     A disclaimer;
f.     The present condition of the Debtors while in chapter 11;
g.     The scheduled claims;
h.     The estimated return to creditors under chapter 7 liquidation;
i.     The accounting method utilized to produce financial information and the name of the persons responsible for such information;
j.     The future management of the Debtors;
k.     The chapter 11 plan or summary thereof;
l.     The estimated administrative expenses, including attorneys and accountants' fees;
m.     The collectability of accounts receivable;
n.     Financial information data, valuations, or projections relevant to the creditors' decision to accept or reject the chapter 11 plan;
o.     Information relevant to the risk posed to creditors under the plan;
p.     The actual or projected realizable value from recovery of preferential or otherwise voidable transfers;
q.     Litigation likely to arise in a non-bankruptcy context;
r.     Tax attributions to the Debtors;
s.     Any relationship with affiliates.[7]

8.     As discussed below, the Disclosure Statement fails to satisfy the requirements of Section 1125 with regard to many of these factors. Because the Disclosure Statement does not

---

[4]     11 U.S.C. § 1125(a)(1).

[5]     *See Menard Sanford v. Mebey (In re A.H. Robins Co.)*, 880 F.2d 694, 696 (4th Cir. 1989).

[6]     *In re Microwave Prod. of America Inc*., 100 B.R. 376, 377 (Bankr. W.D. Tenn. 1989) (internal quotations omitted).

[7]     *See In re Brass Corp.,* 194 B.R. 420, 424-25 (Bankr. E.D. Tex. 1996)

provide creditors with adequate information enabling them to make an informed judgment about the Plan, approval should be denied.

**B.      The Disclosure Statement lacks adequate information.**

9.      <u>Events During Chapter 11</u>.  The Disclosure Statement does not contain adequate information regarding the marketing efforts by the Debtors and the brokers it engaged to sell the properties owned by DLH.  During the chapter 11, the Debtors engaged Jones Lang LaSalle ("JLL") to market the properties for sale.  The Disclosure Statement contains no information regarding the marketing efforts JLL, the result of such efforts and the impact of such knowledge on the prospects of DLH to sell its properties.

10.      <u>Infrastructure</u>.  The potential sale, development and value of the properties owned by DLH is significantly dependent on the finalization of various infrastructure projects involving roadways, utilities and sewer.  The Disclosure Statement does not provide adequate information regarding the current status of all infrastructure projects, the status of funding from various governmental jurisdictions for such projects, the amount of funds required to complete the projects  and the projected timing and source of funding to complete such projects.  The Disclosure Statement should disclose the current status of each project, the status of funding by governmental jurisdictions what is required from the Debtors to access such funds, the amount required to complete the projects and the projected timing and source of funds for completion of each of the projects.  The information is significant to evaluate the prospects and ability of the Debtors to perform under the Plan.

11.      <u>DIP Loan Treatment</u>.  The Plan provides that the DIP Lenders will convert the DIP Loan into a Term Loan to be paid over a period of three years with interest at 10% and be paid an upfront fee of 1%.  The DIP Loan is secured with a second lien on the properties owned

by DLH. The Plan provides in Exhibits A-1 and A-2 a release prior to be paid to the DIP Lenders from the sale of parcels included in Pool 1 and Pool 2.

The Disclosure Statement does not provide adequate information as to why the DIP Lenders, which hold a subordinate lien, are being paid in full with a higher interest rate plus a 1% fee prior to the payment of Compass and the other Secured Creditors which hold a first and prior lien on the parcels in Pool 1 and Pool 2. Based on the limited Liquidation Analysis provided in the Disclosure Statement, it appears the DIP Lenders would receive nothing in a liquidation but are projected to be paid in full with a higher interest rate and a 1% fee before the Secured Creditors holding a first lien on the property are paid. This information should be disclosed and explained in the Disclosure Statement. It appears the DIP Lenders, which are insiders, are receiving preferred treatment under the plan and the reasons for such preferred treatment should be disclosed. The Disclosure Statement further does not provide adequate information as to the basis for the release prices to be paid to the DIP Lenders.

12. Value. The Disclosure Statement does not contain adequate information regarding the value of the Debtors' assets. There is a general reference to a prior appraisal of the overall properties but no specificity regarding the value of the properties to be retained under the Plan. The Debtors list the parcels of property to be retained by DLH in Exhibits A-1 and A-2 to the Plan. The Debtors should disclose the value of each of the parcels listed in Exhibits A-1 and A-2. Absent such information, the Disclosure Statement lacks the adequate information needed to enable creditor to make an informed decision regarding the Plan.

13. Treatment of Claims.

a. Administrative Claims. The Disclosure Statement does not provide a complete breakdown of the total of all administrative expense claims between DLH and ACP. There

appears to be an estimate of $750,000 but no information as to the makeup of these expenses between DLH and ACP. This estimate is vital as it indicates the amounts the Debtors will need to have the Plan become effective.

b. <u>Compass Bank Land Loan</u>. The Plan provides that the Compass Bank Land Loan will be modified and extended but fails to provide adequate information regarding the specific terms and provisions of the modification documents. The modification and extension documents are important in order to respond to the Plan. The Disclosure Statement does not provide adequate information as to the required timing and amount of interest payments required to be paid to Compass and the cure period provided for DLH, all of which appear to be substantially different from the existing contracts between the parties.

The parcels included in Pool 1 which secure the Compass Bank Land Loan are described in Exhibit A-1. Exhibit A-1 to the Plan allocates the Compass claim among the parcels, specifies a release price for such parcels and the Financial Projections attached as Exhibit D project the sale of such parcels. The Disclosure Statement fails to provide adequate information regarding the basis for the allocation of the claim and the determination of the release prices ascribed to each parcel in Exhibit A-1. The Financial Projections are inadequate regarding the projected sales of the Compass Collateral in that the anticipated sales price for the parcels to be sold is not disclosed. The Disclosure Statement makes a conclusory statement regarding the "FDIC guarantee" but to the knowledge of Compass the Debtor and its counsel are not knowledgeable regarding the "FDIC guarantee."

c. <u>Compass Bank Building Loan</u>. The Plan provides that the Compass Bank Building Loan, if the property is not sold, will be transferred to a new entity. The Disclosure Statement fails to provide adequate information regarding the specific terms and provisions of

the new Note to be issued to Compass. The Plan also provides for an 1111(b) election by Compass. The Disclosure Statement is inadequate and should provide information regarding the specific payments to be received by Compass under the 1111(b) election provided in the Plan and the source of funds to make such payments.

        d.        <u>Pool 2 Claims</u>. The Plan states that Pool 2 Claims will be paid an advance payment of 2.75% of the principal amount within fifteen fourteen days of the Effective Date. Such advance payment is not included in the treatment of the Compass Land Loan. The Disclosure Statement should disclose the reason for this different treatment of secured claims.

        14.        <u>Financial Projections</u>. The financial projections are attached to the Disclosure Statement as Exhibit D. The financial projections fail to provide adequate information in the following areas:

        a.        <u>Use of Funds from Pool Sales</u>. The current projections do not enable Compass to determine the specific amounts from the sale of the parcels securing its claim to be paid to the Term Lenders, to the tax reserve or to the unsecured creditors pool. The projections should separately identify all amounts to be paid from the sale of Pool 1 parcels, including: (i) the release amount paid to Compass; (ii) the release amount paid to Term Lenders; (iii) the amount reserved for taxes; (iv) the additional amount paid to Compass; (v) the additional amount paid to Term Lenders; and (vi) the amount paid to the unsecured creditors pool.

The financial projections and the Disclosure Statement provide that the Debtor will maintain a cash cushion in the amount of $2,175,000.00. The Disclosure Statement does not contain adequate information regarding the reason and basis for determining the amount of the cash cushion, which funds could otherwise be paid to creditors. The Disclosure Statement

further is not clear as to under what circumstances the interest holders and insiders will be entitled to distributions before creditors are paid and the projected amount of such distributions.

     b.     <u>Exit Financing</u>. The Plan states that exit financing will be available from (i) an auction of parcels of land, (ii) a loan from Allen Opportunity Fund, and/or (iii) a loan from Richard Allen. The Disclosure Statement states that Dwayne Toler was engaged by DLH to locate and secure exit financing. The Disclosure Statement does not provide adequate information regarding:

     (1)     The actions and results of the efforts of Dwayne Toler to locate exit financing;

     (2)     The parcels to be auctioned or the terms and timing of the auction to provide exit financing;

     (3)     The terms of the proposed loans from Allen Opportunity Fund and Richard Allen for exit financing;

     (4)     The members or interest holders in the Allen Opportunity Fund; and

     (5)     The basis of a loan from Richard Allen, who is a debtor in a Chapter 11 proceeding with claims of millions of dollars owed to creditors, including Compass under a guaranty agreement.

     (6)     The persons which have been engaged as "financial intermediaries" to receive a commission of 2%.

In addition, the Financial Projections do not appear to include information as to the amount of Exit Financing required and source of funds to repay the Exit Financing.

     c.     <u>General and Administrative</u>. The largest single category in the projected general and administrative expenses for DLH, ACP and LPKC contained in the Financial Projections is for salaries and benefits. The Debtors should be required to disclose the five highest paid persons in the budget for DLH, ACP and LPKC with the disclosure of their specific salary and benefits amounts.

In addition, the Plan provides for a Performance Based Management Fee Pool for payments to certain management persons. The Disclosure Statement does not adequately describe the amounts which are projected to be paid into this management fee pool and the persons and amounts to be paid from this management pool fee.

15. Discharge. The Plan provides for a broad and extensive discharge that also applies to "affiliates" and "principals." The Disclosure Statement does not contain adequate information regarding the identity of the "affiliates" and "principals" included in the discharge and the claims which are discharged. The discharge appears to exceed the scope of the discharge allowed by the Bankruptcy Code which should be disclosed.

16. BNSF Option. BNSF holds an option to purchase approximately 900 acres of land from DLH. This option has been the subject of numerous representations to the Court. The Disclosure Statement contains no information regarding the status of the option or its exercise. There is an extensive discussion of a BNSF option from ACP in Kansas City but no discussion regarding the BNSF option as to DLH, which should be included.

17. Liquidation Analysis. The Disclosure Statement provides only a cursory liquidation analysis for DLH. There is a summary conclusion that the total secured claims exceed the liquidation value of the property. The analysis is insufficient and inadequate. The Disclosure Statement should break out the liquidation value of the parcels to be retained by DLH in Pool 1 and Pool 2 and should contain a waterfall reflecting the payment of the liquidation proceeds.

In addition, the Plan contemplates an auction to create operating funds for the Debtors as part of the Exit Financing. The Disclosure Statement projects that such auction will provide millions of dollars to the Debtors above the release price to be paid to the secured creditor. This

projection is inconsistent and contradictory to the liquidation analysis and conclusions made by the Debtors and should be explained in the Disclosure Statement.

18. <u>Directors and Officers</u>. The Disclosure Statement states that the identity and affiliation of each initial director and officer following the Effective Date, and the compensation to insiders, will be disclosed two days prior to the Confirmation Hearing. The Plan appears to identify the proposed directors and officers so that an inconsistency exists. If the officers and directors are known, as stated in the Plan, their disclosure and compensation should be disclosed now in the Disclosure Statement. The identity and proposed compensation of directors and officers is a required disclosure and important to creditors to determine their response to the Plan.

19. <u>Reimbursement Claims</u>. The Disclosure Statement does not contain adequate information to describe the "reimbursement claims against DLH" in Class 7. It is unclear whether this reimbursement claim is one asserted by ACP or by the guaranteed creditor. The Disclosure Statement does not contain adequate information regarding the rights, interests, or values of the Class B Interests.

20. <u>Tim Foley</u>. The Disclosure Statement fails to provide information regarding potential fraudulent transfer and preference claims which may exist regarding the secured claim of Tim Foley. According to the Schedules and Statement of Affairs, Tim Foley was granted a security interest in collateral within the preference and fraudulent transfer time frames. The Disclosure Statement should contain an analysis of such causes of action.

21. <u>Subordinated Class</u>. The Plan does not contain adequate information regarding the identity of creditors falling into the "Subordinated Class" or the amount of claims which may be included in such class.

22. <u>Compass Secured Claim Against ACP</u>. Compass filed a secured claim against ACP based on a guaranty agreement and a pledge of interests owned by ACP in various ventures. The Disclosure Statement contains no disclosure regarding the Compass secured claim and the interests which were pledged to Compass. The Plan does not address the secured claim of Compass or the reasons why no provision is made for such claim.

23. <u>ACP Unsecured Claims</u>. The Disclosure Statement does not contain adequate information regarding the treatment of Unsecured Claims of ACP and specifically, the treatment of the DLH claims guaranteed by ACP and the apparent required election to be made by such guaranty claimants. The Plan references such claims being as a "single claim" but the meaning and intent of this term is not explained. Compass holds a guaranty claim against ACP.

**3.**
**Prayer**

WHEREFORE, PREMISES CONSIDERED, Compass Bank, N.A. requests that this Court enter an order sustaining its objection to the Disclosure Statement, and for such other and further relief to which it may show itself justly entitled.

Respectfully submitted this 11th day of April, 2011.

By:  */s/ Kenneth Stohner, Jr.*
     Kenneth Stohner, Jr.
     State Bar No. 19263700
     Heather M. Forrest
     State Bar No. 24040918

JACKSON WALKER L.L.P.
901 Main Street, Suite 6000
Dallas, Texas 75202
(214) 953-6000
(214) 661-5822 – Fax

ATTORNEYS FOR COMPASS BANK

## CERTIFICATE OF SERVICE

This is to certify that on this 11th day of April, 2011, a true and correct copy of the foregoing was served via electronic mail and/or by United States first class mail, postage prepaid, to the following parties and upon all parties receiving notice via the Court's ECF/PACER system:

Mark E. MacDonald
MacDonald & MacDonald, P.C.
 10300 N. Central Expressway
Suite 335
Dallas TX 75231

U.S. Trustee
1100 Commerce Street
Room 976
Dallas, TX 75242

Daniel J. Artz
Law Office of Daniel J. Artz
436 East Tripp Rd
Sunnyvale, TX 75182

Patrick J. Neligan, Jr.
Douglas J. Buncher
Seymour Roberts, Jr.
Neligan Foley LLP
325 N. St. Paul, Suite 3600
Dallas, TX 75201

*/s/ Kenneth Stohner, Jr.*
 Kenneth Stohner, Jr.