# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 10-30561-hdh11 |
| DLH MASTER LAND HOLDING, LLC, | § | CHAPTER 11 |
| ALLEN CAPITAL PARTNERS, LLC, | § | |
| | § | |
| Debtors. | § | |
| | § | |
| | § | |
| | § | |
| | § | |

## OBJECTION TO DEBTORS' AMENDED FIFTH JOINT PLAN OF REORGANIZATION

TO THE HONORABLE HARLAN D HALE
UNITED STATES BANKRUPTCY JUDGE:

NOW COMES Coffman Investment, L.P. ("Coffman") and Diane Coffman Garvin ("Garvin") ("Collectively referred to as "Coffman") and files this Objection To Debtors' Amended Fifth Joint Plan of Reorganization (the "Objection") and in support would show the following:

### I. STATEMENT OF CASE

1. On January 25, 2010, Consolidated Debtors Allen Capital Partners, LLC, Debtor DLH Master Land Holding, LLC ("DLH") (collectively referred to as "Debtors") filed for relief under Chapter 11 of the United States Bankruptcy Code.

2. On May 6, 2011, an Order Granting Coffman Investment, L.P.'s and Diane Coffman Garvin's Motion to Modify the Automatic Stay ("Stay Order") [Docket No. 931] was entered. As it relates to this Objection, the Stay Order provided that "the terms of the Loan Documents will control in determining if Movants have a deficiency claim." *Stay Order*, page 2.

3. On May 19, 2011, following the hearing the Debtor filed its Amended Fifth Joint Plan of Reorganization for Allen Capital Partners, LLC and DLH Master Land Holdings, LLC ("Amended Plan") [Docket No. 943].

4. On May 20, 2011, the Order Approving Disclosure Statement for Debtors' Amended fifth Joint Plan of Reorganization was entered [Docket No. 950].

## II. OBJECTION

### A. The Coffman Claim is Recourse as to Attorneys' Fees and is Impaired.

1. In the Amended Plan, the DLH takes the position that "DLH shall surrender to the Secured Creditors holding Pool 4 Allowed Secured Claims on the Pool 4 parcels identified as Parcels 161-164 (Coffman Investments) … on the Effective Date in full satisfaction all such Claims. These Pool 4 Creditors are Unimpaired under the Plan." *Amended Plan*, Page 7. In section 3.01 of the Plan, the DLH again states "[i]n addition, those Secured Creditors of DLH which are receiving their collateral back on or before the Effective Date, Coffman Investments (Parcels 161- 164), …, are also unimpaired under the Plan." *Amended Plan*, Page 32, Section 3.01. See also, *Amended Plan*, Page 42, "DLH Class 3 Subclass D: Pool 4 Seller Financing Pool."

2. By virtue of alleging that Coffman's claim for attorneys' fees is unimpaired, Coffman is being denied the right to vote, notwithstanding the fact that it has filed a proof of claim [Claim No. 10].

3. At issue is whether reimbursement of Coffman's claim for "actual fees and costs" in connection with enforcing its rights under a promissory note is non-recourse. The Promissory Note between Coffman and DLH Master Parcel ##161-164, L.P. provides in pertinent part:

> **3.6 Enforcement Fees and Costs.** *Borrower shall immediately reimburse Holder for all actual fees and costs, including attorneys' and experts'*

*fees and costs, incurred by Holder* for: (i) enforcement of this Note and/or the Deed of Trust or any of their terms, or the exercise of any rights or remedies hereunder, thereunder and/or at law, in equity or otherwise, whether or not any action or proceeding is filed; or (ii) representation of Holder in any bankruptcy, insolvency, reorganization or other debtor relief or similar proceeding of or relating to Borrower, any person liable (by guaranty, assumption, endorsement or otherwise) upon any of the obligations of this Note, or to the Property. All such fees and costs shall bear interest until paid at the rate of 10% per annum. If either party commences litigation for the judicial interpretation, reformation or enforcement of this Note and/or the Deed of Trust, the prevailing party will be entitled to a judgment against the other for an amount equal to reasonable attorneys' fees and court costs and other costs incurred.

*\*\*\**

**3.16    Non-recourse.** Notwithstanding anything herein or in the Deed of Trust to the contrary, the Loan is intended to be and is non-recourse and Borrower (and any member or partner of Borrower) shall not be liable for the repayment of any amounts due, payable, accruing or owing under this Note or with respect to any covenant or obligation contained in this Note or the Deed of Trust, except to the extent of' Borrower's interest in the Property, and Lender shall not pursue or enter any deficiency judgment or enforce the obligations of Borrower under this Note and/or the Deed of Trust by any action or proceeding wherein a money judgment is sought against Borrower but rather Lender shall be limited to suit, judgment and remedies solely against the Property. Nothing in the foregoing shall prevent Lender from bringing a foreclosure action in accordance with Lender's rights under the Deed of Trust.

*Promissory Note*, page 3 and 4 (emphasis added).[1]

4.    Pursuant to the Promissory Note, Debtor is required to reimburse Coffman for actual fees and costs. The "Loan," the "repayment of any amounts due, payable, accruing or

---

[1] The addendum portion of the Deed of Trust, between the parties also has a non-recourse provision which states:

1.    <u>Non-recourse</u>.  Notwithstanding anything contained herein or in the Note to the contrary, the loan evidenced by the Note which is secured by this Deed of Trust is intended to be and is non-recourse and Grantor (and any member or partner of Grantor) shall not be liable for the repayment of any amounts due, payable, accruing or owing under the Note, or with respect to any covenant or obligation contained in the Note or this Deed of' Trust, except to the extent of Grantor's interest in the Property, and Lender shall not pursue or enter any deficiency judgment or enforce the obligations of Grantor under this Deed of Trust and/or the Note by any action or proceeding wherein a money judgment is sought against Grantor but rather Lender shall be limited to suit, judgment and remedies solely against the Property. Nothing in the foregoing shall prevent Lender from bringing a foreclosure action in accordance with Lender's rights under this Deed of Trust.,

*Deed of Trust*, Page 7

owing under the Note" and/or "any covenant or obligation contained in this Note" may be non-recourse but not reimbursement of fees and costs to enforce the note. If the parties intended for the recovery of attorneys' fees to be non-recourse, then there would not have been any reference to the Borrower being required to reimburse Coffman for fees and costs incurred in connection with enforcement of the Note.

5.  This really comes down to the interpretation of an unambiguous contract and the rules of construction to resolve conflicts in the contractual provisions. In *Wells Fargo Bank, Minn., N.A. v. North Cent. Plaza I, L.L.P.*, 194 S.W.3d 723 (Tex. App. Dallas 2006) stated:

> The interpretation of an unambiguous contract is a question of law, which is reviewed de novo. *MCI Telecommunications Corp. v. Tex. Utilities Elec. Co., 995 S.W.2d 647, 650-51, 42 Tex. Sup. Ct. J. 656 (Tex.1999)*. When the parties disagree over the meaning of an unambiguous contract, the court must determine the parties' intent by examining the entire writing in an effort to give effect to the parties' intentions as expressed in the contract. *Coker v. Coker, 650 S.W.2d 391, 393, 26 Tex. Sup. Ct. J. 368 (Tex. 1983)*. The parties' intent must be taken from the agreement itself and the agreement must be enforced as written. *Nicol v. Gonzales, 127 S.W.3d 390, 394 (Tex. App.-Dallas 2004, no pet.)*. A court must favor an interpretation that affords some consequence to each part of the agreement so that none of the provisions will be rendered meaningless. *Coker 650 S.W.2d at 394*. No single provision taken alone will be given controlling effect. *Id. at 393*. All provisions of a contract must be considered with reference to the entire instrument. *Id*.
>
> Courts turn to rules of construction to resolve conflicts in contract provisions. Among those rules are: (1) specific provisions control over general provisions; (2) provisions stated earlier in an agreement are favored over subsequent provisions; and (3) the interpretation of an agreement should not render any material terms meaningless. *See Forbau v. Aetna Life Ins. Co., 876 S.W.2d 132, 133-34 , 37 Tex. Sup. Ct. J. 345 (Tex.1994)*; *Coker, 650 S.W.2d at 393*; *State Farm Life Ins. Co. v. Beaston, 907 S.W.2d 430, 433, 38 Tex. Sup. Ct. J. 947 (Tex. 1995)*.

*Wells Fargo Bank, Minn., N.A. v. North Cent. Plaza I, L.L.P.*, 194 S.W.3d at 726.

6.  In applying the rules of construction, there is a specific provision for reimbursement of fees and costs. The term "reimburse" is defined as follows:

> "1. repay (a person who has expended money). 2. repay (a person's expenses). *The Oxford Desk Dictionary And Thesaurus,* 704 (Second Edition 2007);
>
> 1. To repay. 2. To compensate for money spent or losses incurred. *The American Heritage Dictionary* (Paperback Edition), 595, First Edition, 1970);
>
> 1: to pay back to someone **:** REPAY <*reimburse* travel expenses>
> 2**:** to make restoration or payment of an equivalent to <*reimburse* him for his traveling expenses> *Meriam Webster Dictionary,* http://www.merriam-webster.com/dictionary/reimburse

There is a common theme regarding the definition of "reimburse" regardless of the dictionary: to repay someone for out of pocket expenses. This is distinguishable from the term "loan" which is defined in the Note as "the loan evidenced by this Note." *Promissory Note,* Page 1. It is also defined as follows:

> "1. thing lent, esp. money, 2. lending or being lent; … n. advance, allowance credit; ... *The Oxford Desk Dictionary And Thesaurus,* 486 (Second Edition 2007);
>
> 1. a sum of money lent at interest. 2. Anything lent for temporary use. *The American Heritage Dictionary* (Paperback Edition), 413 First Edition, 1970);
>
> 1. a **:** money lent at interest *b* **:** something lent usually for the BORROWER'S temporary use
> 2 a **:** the grant of temporary use *b* **:** the temporary duty of a person transferred to another JOB for a limited time *Meriam Webster Dictionary,* http://www.merriam-webster.com/dictionary/loan

Loan, on the other hand, is allowing for the temporary use of something, which can result in the charging of interest.

    7.    Thus, when examining the specific provisions of the Note, specific reference is made to the reimbursement of fees and costs which is distinguishable from the term loan and which controls over the general provisions that the loan and all covenants and obligations are non-recourse. Secondly, the reimbursement provision is stated earlier the Note and should therefore be favored over subsequent non-recourse provision. provisions. Finally, if this court

were to find the reimbursement of fees and expenses to be recourse, then it is essentially rendered meaningless.

8. Unless and until the Debtor is able to show that reimbursement of attorneys' fees and costs is non-recourse, Coffman's claim should be treated as impaired and such claim should be treated as impaired.

9. As of the date the Stay Order was entered, the fees incurred by Coffman were approximately $80,000, which for purposes of this Motion, Coffman asserts as the recourse portion of its claim.

### B. The Plan Violates Section 524 (e).

10. Another issue relates to the release provisions in the Plan. Section 11.01 of the Plan provides for the general release of –

> 11.01 **General Discharge Under Plan**. Except with respect to Classes of Claims unimpaired pursuant to this Plan, the distributions and rights afforded in this Plan shall be in complete and full satisfaction, discharge and release, effective as of the Effective Date, of all Claims against and Interests in Debtors or any of their respective assets or properties of any nature whatsoever. Commencing on the Effective Date, except as expressly otherwise provided in this Plan, all Claim holders and Interest holders shall be precluded forever from asserting against Debtors, their respective agents and attorneys or their respective assets and properties, any other or further liabilities, liens, obligations, Claims or Interests, or causes of action belonging to Debtors pursuant to 11 U.S.C. § 541 which could arise up through the Effective Date of the Plan including but not limited to, all principal and accrued and unpaid interest and penalties on the debts of Debtors, based on any act or omission, transaction or other activity or security interest or other agreement of any kind or nature occurring, arising or existing prior to the Effective Date, that was or could have been the subject of any Claim or interest, whether or not Allowed. As of the Effective Date, Debtors shall be discharged and released from and shall hold all the assets and properties received or retained by them pursuant to this Plan, free of all liabilities, liens, Claims and obligations or other claims of any nature, known or unknown, except as set forth pursuant to this Plan. All legal or other proceedings and actions seeking to establish or enforce liabilities, liens, Claims and interests or obligations of any nature against Debtors or assets or properties received or retained by Debtors with respect to debts and obligations, if any, of the estate arising before the Effective Date shall be permanently stayed or enjoined, except as otherwise specifically provided in

> this Plan. **Notwithstanding the foregoing, this provision shall not be interpreted to release any third party claims, liabilities or other causes of action against the affiliates and principals of the Debtors unless the claim or cause of action so released is derivative of a claim or cause of action which was or could have been asserted against a Debtor in this Bankruptcy, or constitutes property of either of the Debtors' bankruptcy estates**.

Plan, §11.01 (emphasis added).

11. Though Debtor acknowledges that the release does not extend to third party claims, it appears that third party claims are released if they are claims that are also derivative of claims that could have been asserted by the Debtor or that constitute property of the estate. To avoid any confusion, if there are claims against third parties which can be brought as derivative claims of the Debtor and can also be brought independent of the Debtor, then such claims which can be brought independently from the Debtor should not be released.

12. In summary, any release granted under the Plan should be consistent with *In re Pacific Lumber Co*., 584 F3d 229 (5th Cir 2009). See also *In re Pilgrim's Pride Corporation*, Case No 08-456664-DML, Memorandum Opinion and Order, January 14, 2010 wherein Judge Lynn stated:

> . . . Code § 524(e) and applicable precedent do not allow the court to protect third parties from liability for debts on which they are liable with a debtor. The protection for claims arising through their conduct during a case that a bankruptcy court may grant third parties, other than committees, members of the committees, and committees' professionals, has also been limited by the Fifth Circuit's decision in *Pacific Lumber. See Pacific Lumber*, 584 F.3d at 253. The court must evaluate the exculpatory relief proposed in the Plan accordingly.

*In re Pilgrim's Pride Corporation*, *supra*, pg. 9.

13. The release provision under Section 11.01 should be clarified to ensure that 3rd Parties are not released so long as claims against 3rd parties are independent of any claims that the Debtor could file against the same 3rd party.

OBJECTION TO DEBTORS' AMENDED FIFTH JOINT PLAN ORF REORGANIZATION, Page 7
1422994.1

### C. The Plan is Not Confirmable Because it Violates the Absolute Priority Rule.

14. In summary, the Absolute Priority Rule provides that "old equity" interests cannot retain their existing equity interests or obtain "new equity" interests or other property on account of those old equity interests unless, among other things, all classes of unsecured claims approve such treatment or all unsecured claims are paid in full. See 11 U.S.C. § 1129(b)(2)(B); *Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434 (1999).

15. The Class 7 Interests of Equity Interest Holders are treated as follows:

**Description:** Class 7 consists of all holders of equity Interests in DLH.

**Treatment:** Except for (i) equity interests in DLH issued as part of the Exit Financing with the consent of the existing interest holders and/or (ii) DLH Class B Preferred Interests in DLH issued to ACP, Richard S. Allen, and/or Richard S. Allen, Inc. under the Plan on account of their DLH Class 6 Claims, all equity holders in DLH shall retain their existing equity interests in DLH. Existing Equity Interests in DLH are impaired under the Plan as a result of: (a) the dilution of the interests of existing Equity Interest holders resulting from the issuance of any new Equity Interests required as part of the Exit Financing, and the issuance of new Equity Interests with preferences as to both returns and liquidation distributions over existing Equity Interests with the creation and distribution of the DLH Class B Interests; and (b) the dilution of existing Equity Interests' control over Reorganized DLH resulting from the voting rights granted to the Creditors Representative on the Board of Reorganized DLH, the voting rights of all new Equity Interests issued, as a result of the Exit Financing or under the Plan, and the right of the holders of the new DLH Class B Interests.

*Plan,* Page 46, Section 4.07.

16. In light of the treatment of the Class 7 Equity Interest Holders, the Plan violates the absolute priority rule.

### D. Miscellaneous

17. Coffman reserves the right to amend and/or supplement these objections. These objections are intended to be objections to both Debtors' Amended Fifth Joint Plan of Reorganization (the "Plan") and the Disclosure Statement.

18. Coffman adopts and incorporates by reference herein any objections to the Disclosure Statement and Plan asserted by any other party in interest.

### III. CONCLUSION

19. For the reasons set forth herein, the Disclosure Statement should not be approved and exclusivity as to the Debtors should be terminated.

WHEREFORE, Coffman Investment, L.P. and Diane Coffman Garvin pray that this Court sustain their objection and for such other and further relief to which they would be justly entitled.

Respectfully submitted,

**COWLES & THOMPSON, P.C.**

By: /s/ William L. Siegel
    **WILLIAM L. SIEGEL**
    Texas Bar No. 18342480

901 Main Street, Suite 3900
Dallas, TX 75202
(214) 672-2000
(214) 672-2020 (Fax)

ATTORNEYS FOR COFFMAN INVESTMENT, L.P. and DIANE COFFMAN GARVIN

## CERTIFICATE OF SERVICE

  I hereby certify that on May 31, 2011, a true and correct copy of the foregoing was served by ECF notification on those parties registered for electronic notification and by email on Mark MacDonald, Sr. via electronic mail.

                  /s/ William L. Siegel_____

**OBJECTION TO DEBTORS' AMENDED FIFTH JOINT PLAN ORF REORGANIZATION, Page 10**
1422994.1