Robert Yaquinto, Jr.
State Bar No. 22115750
SHERMAN & YAQUINTO, L.L.P.
509 N. Montclair Avenue
Dallas, Texas  75208-5498
214/942-5502   Fax: 214/946-7601
ATTORNEY FOR POOL 4 SECURED CREDITORS

## UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **In re:** | § | |
| | § | |
| **DLH Master Land Holding, LLC** | § | **Case No. 3:10-30561-hdh-11** |
| **and** | § | |
| **Allen Capital Partners, LLC,** | § | **Chapter 11** |
| | § | |
| **Debtors.** | § | |

## POOL 4: SELLER FINANCING POOL
## SECURED CREDITORS'OBJECTIONS
## TO CONFIRMATION OF DEBTORS'
## FIFTH AMENDED JOINT PLAN OF REORGANIZATION

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

### Preliminary Statement

The below listed members of  DLH Class 3 Subclass D.  Pool 4: Seller Financing Pool

("Pool 4") as defined in the Amended Fifth Joint Plan of Reorganization for Allen Capital

Partners, LLC and DLH Master Land Holding, LLC, filed May 19, 2011 (the "Plan") each (i)

object to Confirmation of the Plan because the plan is not feasible pursuant to section

1129(a)(11); and (ii) object to the Plan being confirmed over their objection, because the Plan is

not fair and equitable pursuant to section 1129(b) of the Bankruptcy Code.  The following

members are included in Pool 4:

1. Each of the following is a note holder secured by a parcel or real property identified by

    DLH Master Land Holding, LLC in Exhibit A-4 to the Plan and included in Pool 4.  Each

join in these Objections to Confirmation: **1086 Capital Partners I, Ltd & 1086 Hutchins/Wilmer L.P.**, owners and holders of promissory notes secured by the real estate described as Parcel 6 in Exhibit A-4 to the Plan; **1086 Capital Partners I, Ltd & 1086 Hutchins/Wilmer L.P.**, owners and holders of promissory notes secured by the real estate described as Parcel 7 in Exhibit A-4 to the Plan; **99 Acre Investment Tract**, owner and holder of a promissory note secured by the real estate described as Parcel 14 in Exhibit A-4 to the Plan; **Talco Investment Tract**, owner and holder of a promissory note secured by the real estate described as Parcel 15 in Exhibit A-4 to the Plan; **Dallas 216 AC. J.V.**, owner and holder of a promissory note secured by the real estate described as Parcels 16, 17, and 18 in Exhibit A-4 to the Plan; **Pilsner Holding Corp.**, owner and holder of a promissory note secured by the real estate described as Parcels 22 and 23 in Exhibit A-4 to the Plan; **Beltline Investment Tract**, owner and holder of a promissory note secured by the real estate described as Parcels 24 and 25 in Exhibit A-4 to the Plan; **Beltline Investment Tract**, owner and holder of a promissory note secured by the real estate described as Parcel 26 in Exhibit A-4 to the Plan; **Greene Road Investment Tract**, owner and holder of a promissory note secured by the real estate described as Parcel 27 in Exhibit A-4 to the Plan. Each has been classified as a "Pool 4" Secured Creditor of Debtor DLH Master Land Holding, L.L.C. ("DLH") and each is designated as its own class pursuant to the Disclosure Statement for Debtors' Amended Fifth Joint Plan of Reorganization and in the Plan and are hereinafter referred to as "**Pool 4 Secured Creditors**."

## Jurisdiction

2. This Court has jurisdiction over this matter pursuant to 11 U.S.C. §1129; 28 U.S.C. §§157 and 1134. This is a core proceeding.

## Background

3. Without exception each Pool 4 Secured Creditor holds a Non-recourse Note, originally executed February 13, 2006, secured by a deed of trust on property which it sold to an entity other than DLH. Effective February 13, 2009, these Non-Recourse Notes were modified to change the terms of payment because the borrower was unable to make payments required by the notes and was in default. The maturity date for each note was changed to February 13, 2012 with payment terms also modified.

4. As explained in DLH's Disclosure Statement, all of the parcels of real estate which are collateral for the Pool 4 Secured Creditors were transferred, without notice to or consent of the note holder, to DLH in December, 2009 shortly before this bankruptcy was filed.

5. On January 25, 2010, DLH filed this Chapter 11. Since the filing of this case, none of the Pool 4 Secured Creditors has received a payment on its note or any adequate protection payments.

6. Many of the partnership and joint venture participants in the Pool 4 Secured Creditors are elderly with almost half of the participants 70 years of age or older. Some participants have died. All hoped to enjoy this money in this life.

7. All of the land that is collateral for Pool 4 Secured Creditors is raw, undeveloped land and will need substantial infrastructure work before it can be developed. This raw undeveloped land is surrounded by more raw undeveloped land that is also for sale.

8. The Plan provides for the surrender of all of the property in DLH Class 3 Subclass C.

Pool 3: ABOT Pool ("Pool 3"). The Plan allows Pool 4 to obtain surrender of its

collateral within ninety (90) days of the effective date of the plan if requested and if there

is not a contract pending that will close within 150 days of the effective date of the plan.

Otherwise Pool 4 real estate will be offered for sale in auctions, by sealed bid, or other

structured sale for six months from the Effective Date of the Plan. No mention is made

of the other competing sites in the same geographic area.

### Feasibility

9. Section 1129(a)(11) requires that a "confirmation of a plan is not likely to be followed by

the liquidation, or the need for further financial reorganization, of the debtor or any

successor to the debtor under the plan, unless such liquidation or reorganization is

proposed in the plan." The plan must be feasible.

10. DLH worked diligently over the last seventeen (17) months to obtain exit financing. It

has failed to obtain any. It now relies on the proceeds from the ADESA sale of

approximately $2,100,000 which it says will carry it through confirmation and allow it to

make the first round of interest payments to Pool 2 Secured Creditor without a sale of any

of its land inventory. DLH estimates that $846,403 will be used to pay Administrative

Expenses, *Disclosure Statement Exhibit N,* and that $750,000 to pay Allowed Claims that

have to be paid on or within 14 days of the Effective Date. *Debtors' Amended Fifth Joint*

*Plan of Reorganization , Page 8.* The Unsecured Creditors Committee recently filed a

notice of its estimated professional fees and expenses in the amount of $900,000. It is

unclear what the total amount of allowed administrative claims will be. After the

ADESA sales proceeds, DLH is relying on land sales, a loan from Allen Opportunity

Fund, and/or a loan from Richard S. Allen, a chapter 11 debtor. There are no binding loan commitments from the Allen Opportunity Fund or Richard S. Allen, Debtor-in-Possession.

11. DLH's plan is speculative. It principally relies on the sale of raw land. DLH's Liquidation Analysis with regard to Pool 1, Pool 2, Pool 3, and Pool 4 acknowledges: "In liquidation, selling this land quickly would be impossible without deep discounts and any proceeds would be greatly eroded by closing costs, marketing & disposition expenses, default interest on the seller-financed land loans, and by the lender's attorney fees." *Disclosure Statement Exhibit I page 4-5*. This is the same type of structure sale DLH proposes for certain Pool 1, Pool 2, and Pool 4 properties.

12. There is no land currently under contract. There are no motions to sell any land. The auction, sealed bid, or structured sale events described in the Disclosure Statement and Plan have not been presented to the Court, but are progressing.

13. DLH's solvency in year one is entirely dependent on profitable auctions and/or structured sales. Specifically, if DLH is unable to sell 294 acres of land in order to generate Pool 4 sales and net proceeds of more than $9 million after costs of sale and more than $5 million after payment of first lien holders, respectively, within six months of the Effective Date, DLH will lack the necessary funds to continue operations post confirmation. *Disclosure Statement, Exhibit E, Pages 19-21*. Yet this is exactly what DLH proposes: a quick liquidation of the land while leaving the risks on the secured creditors.

14. Given the Plan provisions dealing with Pool 4, DLH may be requested to surrender most if not all of the Pool 4 parcels within 90 days of the Effective Date. DLH hopes that there

will be sales and that sales of these properties will occur within six (6) months of the Effective Date. DLH hopes these sales will generate net proceeds that can be used to pay creditors.

15. DLH has not been sitting idle while the bankruptcy is pending. DLH indicates that it has been aggressively marketing its real estate for at least the last twelve months. *Disclosure Statement*, *Exhibits R and S.* Yet, there have been no sales.

16. If land sales fail, there is no assurance that the loan from Allen Opportunity Fund will be made or when it will be made. There is no reasonable expectation that a Chapter 11 Debtor will be allowed to loan $750,000 to another Chapter 11 Debtor.

## Cram Down

17. If the court finds that the Plan is feasible, DLH will have to obtain confirmation by Section 1129(b). This is confirmation of the plan over the rejection of the plan by a class or classes of creditors. Each of the Pool 4 Secured Creditors have rejected the plan.

18. In order for a plan to be confirmed over rejection of a class of creditors, the plan must be fair and equitable. " With respect to a class of secured claims, the plan provides-

(i)     (I) that the holders of such claims retain the liens securing such claims, whether the property subject to such liens is retained by the debtor or transferred to another entity, to the extent of the allowed amount of such claims; and

(II) that each holder of a claim of such class receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property; …

19. The "fair and equitable" rule requires that the holder of a secured claim receive, post effective date, a reasonable rate of interest based on risk factors assessed by the court. This is based on the assumption that money now is worth more than money later.

20. DLH does not offer any deferred cash payments. It proposes a liquidation of the Pool 4 parcels within six (6) months of the Effective date. If the properties do not sell for the release price, DLH gives them back.

21. DLH has agreed to relief from stay for two Pool 4 Parcels and is surrendering the property in Pool 3. DLH has singled out the remaining Pool 4 Secured Creditors, offered the terms of the pre-petition contract and to surrender the unsold Pool 4 parcels in six (6) months. The proposed treatment is not fair and equitable. The proposed interest rate is insufficient. DLH unfairly discriminates in its treatment of Pool 4 Secured Creditors compared with other members of Class 3 and within this subclass.

22. DLH has no risk other than a loss of opportunity. Each of the Pool 4 Secured Creditor Notes is Non-Recourse. The structure of the plan gives DLH a free six month option and opportunity to sell Pool 4 Secured Creditors collateral. This deprives the Pool 4 Secured Creditors the opportunity to market the property or to look a third party with the ability to actually pay for and develop the land. The risk is on the lender. The ability to "cherry pick" the best parcels shifts additional risk from the debtor to the Pool 4 Secured Lenders.

23. The proposed treatment of the Pool 4 Secured Creditors is not deferred cash payments totaling the amount of the claim with a value equal to the value of the claim on the Effective Date.

## Other Opportunities

24. For the last seventeen (17) months, DLH has sought exit financing. This Court approved the retention of NewSource Partners and a commission agreement to be paid upon securing exit financing. None has been secured.

25. The Pool 4 Creditors understand that various parties have approached DLH with alternative transactions or proposals to the Plan, which could yield better recoveries for DLH's creditors. However, DLH required any interested party to agree to a non-market confidentiality agreement in order to commence negotiations with DLH, which confidentiality agreement restricted interested parties from engaging in discussions with other parties besides DLH regarding a prospective transaction and required DLH to approve any proposed transaction. DLH has failed in its role as a fiduciary, and its process has resulted in freezing any alternatives that could enhance and solidify creditor recoveries or result in a transaction that realizes the potential of the Dallas Logistics Hub for the benefit of creditors and the community at large.

26. Notwithstanding the inhospitable environment created by the Debtors, members of Pool 4 Secured Creditors are aware that at least two parties, which have the financial wherewithal to develop the inland port as the creditors and various municipalities originally envisioned, are highly interested in developing an alternative plan that would pay cash in full or other substantial cash recoveries to Pool 4 Secured Creditors and other creditors upon confirmation.

27. Both of these parties are substantial companies with strong financial attributes and both are very knowledgeable about the Inland Port concept and the various agreements with the surrounding local governments. These parties have conducted diligence on the

project based on publicly available information, but would need access to DLH's due diligence materials to confirm their current assumptions in order to move forward with their proposals.

**<u>Prayer</u>**

Pool 4 Secured Creditors request that this Court SUSTAIN the foregoing objections to Confirmation of the Plan; request this Court deny confirmation; and request any and all other relief to which Pool 4 Secured Creditors may show themselves entitled.

RESPECTFULLY SUBMITTED,


__*/s/ Robert Yaquinto, Jr*_____
Robert Yaquinto, Jr.
State Bar No. 22115750
SHERMAN & YAQUINTO, L.L.P.
509 N. Montclair Avenue
Dallas, Texas  75208-5498
214/942-5502   Fax: 214/946-7601
ATTORNEY FOR
POOL 4 SECURED CREDITORS

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on June 17, 2011, a true and correct copy of the foregoing document was served on the parties listed on the court's ECF noticing system via electronic mail.

*/s/ Robert Yaquinto, Jr.*
Robert Yaquinto, Jr