U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET



**The following constitutes the ruling of the court and has the force and effect therein described.**

*Harlin DeWayne Hale*

**United States Bankruptcy Judge**

**Signed June 21, 2011**

---

## UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **DLH Master Land Holding, LLC** | § | Case No. 3:10-30561-hdh-11 |
| and | § | |
| **Allen Capital Partners, LLC,** | § | Chapter 11 |
| | § | |
| Debtors. | § | |

### ORDER REGARDING SOUTHPORT PROPERTIES, L.P.'S
### OBJECTIONS TO CONFIRMATION OF PLAN

On June 21, 2011, this Court considered SouthPort Properties, L.P.'s Objections to Confirmation of Debtors' Amended and Restated Fifth Joint Plan of Reorganization. Counsel for SouthPort Properties, L.P. ("SouthPort") and the Debtor DLH Master Land Holding, LLC appeared and announced to this Court that they have resolved SouthPort's objections and announced on the record their agreement and stipulations. Therefore, this Court enters this order consistent with such agreement and stipulations.

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§157(b) and 1334. This proceeding is a core proceeding pursuant to 28 U.S.C. §157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§1408 and 1409.

2. On August 24, 2006, DLH Master Parcel ##93-95, L.P., a Delaware limited partnership n/k/a DLH Master Parcel ##93-95, L.L.C, a Delaware limited liability company ("DLH 93-95") executed a Promissory Note in the amount of $2,470,000.00 and payable to the order of SouthPort (the "SouthPort Note"). The SouthPort Note was modified by a Note Modification Agreement (herein so called) dated August 24, 2009 and a Second Note Modification Agreement (herein so called) dated October 24, 2009.

3. The SouthPort Note is secured by, among other things, the following:

     a. Deed of Trust dated August 24, 2006, executed by DLH 93-95, as grantor, for the benefit of SouthPort; Dallas County Clerk File No. 20060031503 (the"DLH 93-95 Deed of Trust");

     b. Deed of Trust dated July 19, 2007, executed by DLH Master Parcel ##156-157 ("DLH 156-157"), as grantor, for the benefit of SouthPort; Dallas County Clerk File No. 20070261615 (the "DLH 156-157 Deed of Trust"); and

     c. Vendor's lien contained in that certain Special Warranty Deed with Vendor's Lien dated August 24, 2006 from SouthPort, as grantor, to DLH 93-95, as grantee; Dallas County Clerk File 200600315104 (the "DLH 93-95 Deed").

4. All collateral securing the SouthPort Note shall be referred to herein as the "SouthPort Collateral." SouthPort has a first and prior perfected lien on, and security interest in, the SouthPort Collateral.

5. The SouthPort Note, the Note Modification Agreement, the Second Note Modification Agreement, the DLH 93-95 Deed of Trust, the DLH 156-157 Deed of Trust, the DLH 93-95 Deed, and any and all other documents related thereto shall be collectively referred to herein as the "SouthPort Loan Documents." The DLH 93-95 Deed of Trust and the DLH 156-157 Deed of Trust shall be collectively referred to herein as the "Deeds of Trust." SouthPort is the lawful owner and holder of the SouthPort Note, the other SouthPort Loan Documents, and the liens securing same.

6.     On January 25, 2010, the Debtor filed a voluntary petition for relief (the "Petition") under Chapter 11 of Title 11 of the United States Bankruptcy Code.  Prior the filing of the Petition, DLH 93-95 and DLH 156-157 were merged into the Debtor.  Thus, as a result of the merger, the Debtor became the owner of the SouthPort Collateral.  For purposes of this Order, the term "Debtor" shall also include DLH 93-95 and DLH 156-157 and any other affiliate of Debtor.

7.     Also prior to the filing of the Petition, the Debtor purportedly granted a subordinate lien on the SouthPort Collateral to secure certain prepetition financing and/or debt incurred.  In addition, the SouthPort Collateral serves as collateral for certain subordinate post-petition financings.  The financing and debt described in this paragraph shall be referred to herein as the "Subordinate Debt."

8.     On March 8, 2011, this Court entered an order granting SouthPort's Motion for Relief from the Automatic Stay (the "Lift Stay Order") which permitted SouthPort to enforce the SouthPort Loan Documents and foreclose upon the SouthPort Collateral.

9.     In accordance with the Lift Stay Order, SouthPort foreclosed and purchased the SouthPort Collateral at two foreclosure sales on May 3, 2011 (the "Foreclosure Sales").  SouthPort's aggregate bid price for the Foreclosure Sales was less than the total debt owed.  The applicable Substitute Trustee's Deeds (herein so called) were recorded in the Dallas County Real Property Records under Clerk's Nos. 201100113977 and 201100113978.

10.    SouthPort asserts that the SouthPort Note is a recourse note and SouthPort is entitled to a deficiency claim.  The Debtor, asserting Tex. Prop. Code §51.003, disputes that SouthPort is entitled to any deficiency claim.

11.     SouthPort and the Debtor desire to settle their disputes and avoid the expense and uncertainties of additional litigation and/or contested hearings.

12.     The Court finds that the settlement between SouthPort and the Debtor is in the best interest of the estate.

**IT IS THEREFORE ORDERED** that SouthPort has released any deficiency claim against the Debtor arising from the Foreclosure Sales.

**IT IS FURTHER ORDERED** that SouthPort has withdrawn its objections to the Debtor's plan of reorganization.

**IT IS FURTHER ORDERED** that the Debtor has released any and all claims in any way relating to the SouthPort Loan Documents, the SouthPort Collateral, and/or the Foreclosure Sales, including, but not limited to, any claims relating to (i) SouthPort's enforcement of the SouthPort Loan Documents, (ii) any alleged violation by SouthPort of the automatic stay or the Lift Stay Order, (iii) SouthPort's notice, posting, and/or conducting of the Foreclosure Sales, (iv) the fair market value of the SouthPort Collateral, or (v) the purchase prices for the SouthPort Collateral at the Foreclosure Sales.

**IT IS FURTHER ORDERED** that, as a result of the Foreclosure Sales,

i.      the liens securing the Subordinate Debt that purportedly encumbered the SouthPort Collateral (and any other inferior encumbrance, condition, grant, conveyance, restriction, easement or any other matter filed after the Deeds of Trust) have been extinguished;

ii.     SouthPort has fee simple title to the SouthPort Collateral under the Substitute Trustee's Deeds, subject only to matters that were filed of record prior to the Deeds of Trust and which are shown to affect the SouthPort Collateral; and

iii.    The Foreclosure Sales are valid and were conducted in accordance with the Lift Stay Order and other applicable law.

*** End of Order***