

US BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

*Harlin DeWayne Hale*

**United States Bankruptcy Judge**

**Signed October 12, 2011**

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **In re:** | § | **CASE NO. 10-30561-hdh-11** |
| | § | |
| **DLH Master Land Holding, LLC,** | § | **CHAPTER 11** |
| **Allen Capital Partners, LLC,** | § | |
| **Richard S. Allen, Inc.** | § | **Jointly Administered** |
| **Richard S. Allen** | § | |
| | § | |
| **Debtors.** | § | |
| _____ | § | |

**FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER
CONFIRMING THE AMENDED FIFTH JOINT PLAN OF
REORGANIZATION FOR ALLEN CAPITAL PARTNERS, LLC**

CAME ON FOR HEARING AND CONFIRMATION (the "**Confirmation Hearing**")

the *Amended Fifth Joint Plan of Reorganization for Allen Capital Partners, LLC and DLH
Master Land Holding* [Docket No.943], as modified by the *Modifications to Amended Fifth
Joint Plan of Reorganization for Allen Capital Partners, LLC and DLH Master Land Holding*
[Docket No.1092], and as clarified by the *Debtors' Clarification to Modifications to Amended
Fifth Joint Plan of Reorganization for Allen Capital Partners and DLH Master Land Holding*
[Docket No. 1127], and further modified by *Debtors' Second Modifications to Amended Fifth*

*Joint Plan of Reorganization for Allen Capital Partners and DLH Master Land Holding* [Docket No. 1189] (the "**Second Modification**") (collectively, as amended, modified, clarified and/or supplemented, the "**Plan**" or as it pertains to ACP, the "**ACP Plan**") jointly filed with the Court on May 19, 2011 by Debtors and Debtors-in-Possession ALLEN CAPITAL PARTNERS, LLC ("**ACP**") and DLH Master Land Holding, LLC ("**DLH**" and together with ACP, the "**Debtors**").[1]

The Court, having considered the *Certificate of Service* [Docket No. 968] filed with the Court by the Debtors' agent on June 1, 2011 (the "**Certificate of Mailing**") regarding service of the (i) Disclosure Statement (as defined in the Plan);[2] (ii) Plan; (iii) *Order Approving Disclosure Statement for Debtors' Amended Fifth Joint Plan of Reorganization* [Docket No. 950] (the "**Disclosure Statement Order**"); (iv) *Notice of Approval of Disclosure Statement and Scheduling of (A) Voting Deadline, (B) Deadline for Objecting to Confirmation, and (C) Confirmation Hearing on Amended Fifth Joint Plan of Reorganization for Allen Capital Partners, LLC and DLH Master Land Holding, LLC* (the "**Notice**"); (v) *Notice of Debtors' Amended Fifth Joint Plan of Reorganization and of Classification of Unimpaired Classes* (the "**Unimpaired Notice**")**;** (vi) solicitation letter (the "**Solicitation Letter**") from the Official Committee of Unsecured Creditors (the "**Committee**"); and (vii) appropriate ballots related to the Plan (collectively, the "**Ballots**"), is of the opinion that due notice of the Disclosure Statement, the Plan, the Disclosure Statement Order, the Notice, the Unimpaired Notice, the Solicitation Letter and the Ballots was given to all holders of Claims against, and Interests in, the Debtors, in accordance with Title 11 of the United States Code (the "**Bankruptcy Code**") and the Federal

---

[1] For the avoidance of doubt, the term "Debtors" as used in this Order shall not include related debtors Richard S. Allen, Inc. or Richard S. Allen, each of which is expressly excluded from the terms of the ACP Plan (as defined herein) and will be administered separate and apart from the provisions of the ACP Plan.

[2] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Plan.

Rules of Bankruptcy Procedure (the "**Rules**"), and no other or further notice is required or need be given.

The Court, having further considered the Disclosure Statement, the ACP Plan, the Certificate of Service, the *Summary of Voting on the Plan* submitted to the Court on June 20, 2011 [Docket No.1001] (the "**Ballot Summary**"), all filed objections to confirmation of the ACP Plan, the arguments of counsel, the evidence presented, and having taken judicial notice of the pleadings and evidence presented in, and the record of, this case, and the announcement during closing argument at the Confirmation Hearing by BBVA Compass Bank ("**Compass**") regarding its objection to the ACP Plan, and after due deliberation and sufficient cause therefor, hereby enters its findings of fact and conclusions of law (the "**Findings and Conclusions**") with respect to confirmation of the ACP Plan as follows:

**I.**
**FINDINGS OF FACT AND CONCLUSIONS OF LAW[3]**

**A.**     **General Findings and Conclusions Concerning Confirmation**

1.     This Court has heard testimony over many days involving confirmation of the ACP Plan.  An initial overview of the Court's findings and conclusions concerning feasibility of the ACP Plan should assist in understanding the principal litigated issues.  Those findings and conclusions are as follows:

- ACP has established all essential elements for confirmation of the ACP Plan under chapter 11 of the Bankruptcy Code.

---

[3] These Findings and Conclusions together with any findings of fact or conclusions of law announced from the bench by the Court constitute the Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052, made applicable to this proceeding pursuant to Federal Rule of Bankruptcy Procedure 9014.  To the extent any findings of fact constitute conclusions of law, they are adopted as such.  Likewise, to the extent any conclusions of law constitute findings of fact, they are adopted as such.

- The Committee, which has been quite active in the case, supports confirmation of the ACP Plan.

- The Unsecured Creditors Class as concerns ACP has voted to support the ACP Plan.

- The ACP Plan is in the best interest of the ACP creditors and the ACP estate, and the ACP Plan provides each creditor of ACP at least as much as it would receive in a liquidation under chapter 7 of the Bankruptcy Code.

- Confirmation of the ACP Plan will resolve potential issues under prior settlement agreements such as with Tim Foley.

- Compass filed two proofs of claims against ACP. One claim relates to a loan to DLH to construct two warehouses (the "**Compass Warehouse Loan**") which was secured by two warehouse properties owned by DLH and guaranteed by ACP. The two warehouses were sold by DLH during the bankruptcy case, with the consent of Compass, resulting in an allowed deficiency claim of $2,992,325.00. This claim is an allowed unsecured claim in the ACP case. The second claim filed by Compass relates to a loan to DLH secured by undeveloped real estate (the "**Compass Land Loan**") which continues to be secured by real estate owned by DLH and is guaranteed by ACP.

- Compass asserts that the Compass claim against ACP arising from ACP's guarantee of Compass Land Loan is further secured by a pledge of interests by ACP and certain related entities in various entities owned by them, some of which own interests in DLH. ACP has filed an objection to the Compass claim against ACP, related to the Compass Land Loan, including objections to both whether it should be determined contingent until DLH fails to perform on the loan and whether the pledge of interests by ACP and certain

related entities is valid and enforceable and the value of such interests. No resolution of that objection to claim was sought by either party prior to confirmation of the ACP Plan.

- ACP further seeks, in the ACP Plan, a stay or injunction against Compass to enforce its claim against ACP based on the Compass Land Loan. With regard to the claim of Compass against ACP based on the Compass Land Loan, the nature, extent, value and amount of such secured claim and the request for a stay or injunction is not determined in this Order but shall be determined in a subsequent hearing by the Court. Compass announced it would not object to the confirmation of the ACP Plan subject to the carrying forward for subsequent determination by the Court the nature, extent, value and amount of its secured claim related to the Compass Land Loan and whether a stay or injunction should be entered against Compass.

- The ACP Plan seeks to enjoin enforcement of Compass' ACP guarantee of the Compass Land Loan unless there is a default by DLH under its Plan. This request will not be determined in this Order but will be determined in a subsequent hearing to determine the claim of Compass under the Compass Land Loan.

- The ACP Plan should be confirmed because the only remaining objection to the ACP Plan from Compass was withdrawn by Compass at the Confirmation Hearing with the understanding that the determination of the secured claim of Compass asserted against ACP under the Compass Land Loan and the determination of any objection against Compass as requested in the ACP Plan will be determined in a subsequent hearing and Compass' objection to the ACP Plan will be resolved as part of the resolution of ACP's objection to Compass's claim against ACP. Pending such resolution by this Court,

Compass will not enforce its claimed collateral related to the claim based on the Compass Land Loan which is the subject of the claims objection.

- ACP has established through the evidence that the ACP Plan is feasible.

- The projections in the ACP Plan are supported by the testimony of Richard Allen, ACP's chief executive officer, and Dwayne Toler, ACP's acting chief financial officer.

- The development activities of LPKC, which is ACP's principal subsidiary, are promising. Witnesses concurred at the Confirmation Hearing that ACP will i) meet its projections under the ACP Plan, ii) pay all of its creditors with stated interest, and iii) leave equity value for Richard Allen even without consideration of the enhanced value of ACP's interests in DLH in five years.

- The BNSF railroad selected LPKC as its development partner to develop eight million square feet of buildings surrounding its $250 million intermodal facility now under construction just south of Kansas City.

- In Kansas City, the public sector has committed $120 million to the LPKC project. The securing of public funding of this magnitude underscores the capability and confidence in the ACP management team, which has the track record, confidence, relationships, trust and respect of the public sector.

- Cisterra has signed a joint venture agreement with LPKC agreeing to provide 100% of the capital and guarantees required to construct hundreds of millions of dollars of vertical development in Kansas City. This agreement provides a validation of ACP's management team and projects.

- During the pendency of its bankruptcy case, ACP eliminated approximately $50 million of its debt.

**B.**     <u>**Specific Additional Findings and Conclusions Concerning Confirmation**</u>

2.     <u>**Jurisdiction**</u>.  This Court has jurisdiction over ACP's chapter 11 bankruptcy case pursuant to 28 U.S.C. § 1334.  Venue is proper before this Court pursuant to 28 U.S.C. § 1408.  Confirmation of the ACP Plan is a core proceeding under 28 U.S.C. § 157(b)(2), and this Court has exclusive jurisdiction to determine whether the ACP Plan complies with the applicable provisions of the Bankruptcy Code.

3.     <u>**Notice**</u>.  The Disclosure Statement, the ACP Plan, the Disclosure Statement Order, the Notice, the Unimpaired Notice, the Solicitation Letter, and the Ballots were transmitted and served in compliance with the Rules and this Court's orders, and service thereof was adequate and sufficient to satisfy due process.  All parties, including, without limitation, those taxing authorities, attorneys general, and other governmental units entitled to notice of the Confirmation Hearing and the deadline for submitting Ballots and filing and serving objections to confirmation of the ACP Plan, received adequate notice in accordance with the Rules and have had an ample opportunity to appear and be heard.  No other or further notice is necessary or required.

4.     <u>**Judicial Notice**</u>.  This Court takes judicial notice of the docket maintained in the Debtors' bankruptcy cases by the Clerk of the Court and/or its duly-appointed agent, including, without limitation, all pleadings and other documents filed, all orders entered, and all evidence and arguments made, proffered, or adduced at hearings held before the Court in the above-referenced and jointly administered bankruptcy case.  These Findings and Conclusions incorporate the official record (the "**Record**") and the transcript of the Confirmation Hearing, including the Court's ruling on confirmation of the ACP Plan, for all purposes.

5.     <u>**Compliance with the Applicable Provisions of the Bankruptcy Co**</u>de.  As set

forth below, ACP has met its burden of proving the elements required under the Bankruptcy Code for confirmation of the ACP Plan by a preponderance of the evidence.

a.    The ACP Plan Complies with Section 1129(a)(1).  The ACP Plan complies with the applicable provisions of the Bankruptcy Code, thereby satisfying 11 U.S.C. § 1129(a)(1). Specifically,

   i.    Proper Classification of Claims and Interests.  The ACP Plan designates seven (7) Classes of Claims and Interests against or in ACP.  The Claims or Interests placed in each Class are substantially similar to other Claims or Interests, as the case may be, in such Class.  Valid business, factual, and legal reasons exist for separately classifying the various Classes of Claims and Interests created under the ACP Plan, and such Classes do not unfairly discriminate among holders of Claims or Interests.  Thus, the ACP Plan satisfies 11 U.S.C. §§ 1122 and 1123(a)(1).   This finding does not resolve or determine the nature, extent, status and amount of the Compass secured claim based on the Compass Land Loan, the objection by ACP to such claim and whether a stay or injunction should be entered against Compass.  The ACP Plan complies with Section 1129(a)(8).

   ii.    Specification of Unimpaired Classes.  The ACP Plan specifies that Class 1 (Allowed Administrative Expense Claims against ACP) and Class 2 (Allowed Priority Claims against ACP) are not impaired under the ACP Plan and are deemed to have accepted the ACP Plan, thereby satisfying 11 U.S.C. § 1123(a)(2) of the Bankruptcy Code.

   iii.    Specification of Treatment of Impaired Classes.  Article 4 of the Plan

designates each of Class 3 (Allowed Secured Claims against ACP), Class 4 (Allowed Unsecured Claims against ACP), Class 5 (Administrative Convenience Claims against ACP), Class 6 (Reimbursement Claims against ACP), and Class 7 (Equity Interest Holders in ACP) as impaired and specifies the treatment of Claims and Interests in those Classes, thereby satisfying 11 U.S.C. § 1123(a)(3).

iv.     <u>Equal Treatment Within Classes.</u> The ACP Plan provides for the same treatment for each Claim or Interest in a particular Class unless the holder of a particular Claim or Interest in such Class has agreed to a less favorable treatment of its Claim or Interest, thereby satisfying 11 U.S.C. § 1123(a)(4).

v.     <u>Implementation of Plan.</u> The ACP Plan provides adequate and proper means for implementation of the ACP Plan, thereby satisfying 11 U.S.C. § 1123(a)(5).

vi.     <u>Non-Voting Securities.</u> The ACP Plan does not provide for the issuance of any non-voting securities in Reorganized ACP, and the Amended Limited Liability Company Operating Agreement for Reorganized ACP prohibits the issuance of any non-voting equity securities. Further, the ACP Plan provides adequate means for the selection of directors of Reorganized ACP, thereby satisfying 11 U.S.C. § 1123(a)(6).

vii.     <u>Selection of Officers and Directors.</u> The Board of Directors of Reorganized ACP shall include one additional independent Director, a Creditors Representative selected by the Committee. The Board of

Directors of Reorganized ACP shall continue to include the Creditors Representative until the ACP 50% Notes and the ACP 100% Notes have been paid in full or otherwise discharged.  Accordingly, the ACP Plan is consistent with the interests of creditors, equity security holders and public policy and therefore satisfies the requirements of 11 U.S.C. § 1123(a)(7).

viii.    Rule 3016(a).  The ACP Plan is dated and identifies the entity submitting it, thereby satisfying Federal Rule of Bankruptcy Procedure 3016(a).

ix.    Additional ACP Plan Provisions.  The provisions of the ACP Plan are appropriate and not inconsistent with any other applicable provisions of the Bankruptcy Code.

b.    The ACP Plan Complies with Section 1129(a)(2).  ACP has complied with the applicable provisions of the Bankruptcy Code, thereby satisfying 11 U.S.C. § 1129(a)(2).  Specifically,

i.    Proper Debtor and Plan Proponent.  ACP is a proper debtor pursuant to 11 U.S.C. § 109 and proper proponent of the ACP Plan pursuant to 11 U.S.C. § 1121(c).

ii.    Compliance With Applicable Bankruptcy Code Provisions.  ACP has complied with the applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by orders of the Court.

iii.    Compliance With Solicitation Requirements.  ACP has complied with the applicable provisions of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and the Disclosure Statement Order in transmitting

the solicitation materials identified therein and in the Certificate of Service and in soliciting and tabulating votes on the ACP Plan.

c.    <u>ACP Plan Proposed in Good Faith.</u>  ACP has proposed the ACP Plan in good faith and not by any means forbidden by law, thereby satisfying 11 U.S.C. § 1129(a)(3).  In determining that the ACP Plan has been proposed in good faith, the Court has examined the totality of the circumstances surrounding the filing of ACP's bankruptcy case and the arms-length negotiations related to the formulation of the ACP Plan.  ACP's bankruptcy case was filed and the ACP Plan was proposed with the legitimate and honest purposes of developing and realizing upon the value of ACP's properties while maximizing returns to all Creditors and expeditiously making distributions to ACP's Creditors and Interest holders.  The ACP Plan reflects the results of these negotiations and is reflective of the interests of all of the ACP estate's constituencies.

d.    <u>Payments for Services or Costs and Expenses.</u>  Except as otherwise provided or permitted by the ACP Plan, any payment made or to be made by ACP for services or for costs and expenses in or in connection with its bankruptcy case, or in connection with the ACP Plan and incident to  its bankruptcy case, has been approved by, or is subject to the approval of, the Court as reasonable, thereby satisfying 11 U.S.C. § 1129(a)(4).

e.    <u>Directors, Officers, and Insiders.</u>  ACP has complied with 11 U.S.C. § 1129(a)(5).  The ACP Plan identifies those individuals who will serve as directors and officers for ACP following confirmation of the ACP Plan, as well as any insiders.  The Board of Directors of Reorganized ACP will remain the

same as prior to the filing of ACP's bankruptcy case, but shall also include one additional independent Director, the Creditors Representative. The initial Creditors Representative shall be Harold Kessler. The Board of Directors of Reorganized ACP shall continue to include the Creditors Representative until the ACP 50% Notes and the ACP 100% Notes have been paid in full or otherwise discharged. Accordingly, the Plan is consistent with the interests of creditors, equity security holders and public policy.

f.  No Rate Changes.  The ACP Plan does not propose any rate changes that are subject to governmental regulation. Thus, 11 U.S.C. § 1129(a)(6) is not applicable and is deemed satisfied.

g.  Best Interests of Creditors.  The ACP Plan satisfies 11 U.S.C. § 1129(a)(7) as each holder of a Claim or Interest in an impaired Class either has accepted the ACP Plan or will receive or retain under the ACP Plan, on account of such Claim or Interest, property of a value, as of the Effective Date of the ACP Plan, that is not less than the amount that it would receive if ACP was liquidated under Chapter 7 of the Bankruptcy Code.

h.  Acceptance by Certain Classes.  With respect to ACP, Classes 3-1 (Tim Foley), 3-2 (Pacific Western), and Classes 4, 6, and 7, which are impaired and eligible to vote under the ACP Plan, have voted to accept the ACP Plan. No Class voted to reject the ACP Plan. The ACP Plan complies with 11 U.S.C. §1129(a)(8), and, because at least one Class of Claims which is impaired under the ACP Plan has voted to accept the ACP Plan, determined without any acceptance of the ACP Plan by any insider, the ACP Plan complies with 11 U.S.C. §1129(a)(10).

i.      <u>Treatment of Administrative Expense Claims.</u>  The ACP Plan's treatment of Allowed Administrative Expense Claims satisfies the requirements of 11 U.S.C. § 1129(a)(9). The ACP Plan provides for the payment in full, in Cash, of Allowed Administrative Expense Claims on the later of (i) the Effective Date of the ACP Plan, (ii) the date such Claim was due and payable by its terms, (iii) a date agreed to by the holder of such Claim, or (iv) within thirty (30) days following the date such Claim, if contested, is Allowed by Final Order..

j.      <u>Acceptance of at Least One Impaired Class.</u>  The ACP Plan satisfies 11 U.S.C. § 1129(a)(10).  As set forth in the Ballot Summary, at least one of the Impaired Classes of Claims voting under the ACP Plan has voted to accept the ACP Plan and has accepted the ACP Plan in requisite numbers and amounts without the need to include any acceptance of the ACP Plan by any insider.

k.      <u>Feasibility.</u>  The ACP Plan satisfies 11 U.S.C. § 1129(a)(11) as confirmation of the ACP Plan is not likely to be followed by further liquidation or the need for further financial reorganization.  The ACP Plan presents a workable framework of reorganization and there is a reasonable probability that the provisions of the ACP Plan will be performed.  The ACP Plan is found and determined to be feasible.

l.      <u>Payment of Certain Fees.</u>  All fees payable on or before the Effective Date under 28 U.S.C. § 1930 either have been paid or will be paid on the Effective Date pursuant to Section 13.05 of the ACP Plan.  Accordingly, the ACP Plan satisfies 11 U.S.C. § 1129(a)(12).

m.      <u>Continuation of Retiree Benefits.</u>  ACP is not liable for the payment of any

retiree benefits, as defined in 11 U.S.C. §1114. 11 U.S.C. §1129(a)(13) is not applicable to ACP.

n. <u>Principal Purpose.</u> The principal purpose of the ACP Plan is neither the avoidance of taxes nor of Section 5 of the Securities Act of 1933 (15 U.S.C. §77e, *et seq.*). The ACP Plan, therefore, satisfies the requirements of 11 U.S.C. § 1129(d).

o. <u>Transfers of Property.</u> All transfers of property under the ACP Plan shall be made in accordance with any applicable provisions of non-bankruptcy law that govern the transfer of such property by ACP. The ACP Plan satisfies 11 U.S.C. § 1129(a)(16).

6. **Good Faith Solicitation**. Based upon the Record before the Court, ACP and its officers, directors, managers, members, affiliates, associates, employees, agents, attorneys, accountants, and other professionals have acted in good faith with respect to, and in compliance with, applicable provisions of the Bankruptcy Code in soliciting votes on the ACP Plan and such solicitation is hereby determined to have been in good faith and in compliance with the applicable provisions of the Bankruptcy Code and the foregoing are entitled to the protections afforded by 11 U.S.C. § 1125(e) and the exculpatory protections set forth in Section 13.29 of the ACP Plan.

7. **Rule 9019(a) Settlement**. Pursuant to Federal Rule of Bankruptcy Procedure 9019, and in consideration for the classification, distribution, and other benefits provided under the ACP Plan, the provisions of the ACP Plan constitute a good faith compromise and settlement of all Claims and Interests or controversies resolved pursuant to the ACP Plan. The Court's findings herein constitute its determination, upon consideration of governing legal standards, that

such compromises and settlements are in the best interests of ACP, its estate, and any entity holding Claims against or Interests in ACP.

8. **Exculpation.** The Disclosure Statement, the Plan, and the Record of the Confirmation Hearing are sufficient to support the exculpation provided for in Section 13.29 of the ACP Plan, and such exculpation is fair and reasonable.

**C.** **Other Matters Relating to Confirmation**

9. **Satisfaction of Confirmation Requirements.** The ACP Plan satisfies all requirements for confirmation set forth in 11 U.S.C. § 1129(a).

10. **Retention of Jurisdiction.** The Court finds and concludes that it may properly retain jurisdiction over the matters set forth in the ACP Plan.

## II.
## DECREES

NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, DECREED AND DETERMINED AS FOLLOWS:

1. The ACP Plan, attached hereto as Exhibit A, as amended, modified, clarified and/or supplemented, is **CONFIRMED (but only as to ACP; the Plan as to DLH shall be addressed by further order of the Court)** in accordance with 11 U.S.C. § 1129, and all terms and conditions set forth therein are **APPROVED except as provided herein**.

2. All objections to the ACP Plan not withdrawn or otherwise resolved are expressly overruled.

3. The provisions of the ACP Plan and this Order are binding on each holder of a Claim against or Interest in ACP, any party in interest in ACP's chapter 11 case, and any other Person receiving notice of the ACP Plan or Confirmation Hearing, and their respective heirs, successors and assigns.

4.     Except as otherwise provided in the ACP Plan, upon the Effective Date, all Claims against ACP that arose before the Effective Date are discharged and terminated, and all holders of Claims against and interests in ACP are permanently enjoined from threatening, commencing or continuing any lawsuit or other legal or equitable action against ACP and Reorganized ACP (and its successors and assigns) or its property to recover any Claim based on any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date, whether or not such holder filed a proof of Claim or Interest and whether or not the facts or legal basis therefor were known or existed prior to the Effective Date.  Except as provided in the ACP Plan, all holders of Claims against and Interests in ACP (and all representatives, trustees or agents on behalf of each such holder) shall be precluded and permanently enjoined from asserting against the Exculpated Persons, any Claim based on any act or omission, transaction, or other activity of any kind or nature that occurred in connection with ACP's chapter 11 case from the Petition Date through the Effective Date, whether or not such holder has filed a proof of Claim or proof of Interest and whether or not the facts or legal bases therefor were known or existed prior to the Effective Date.

5.     Unless otherwise provided in the ACP Plan or this Order, any and all injunctions or automatic stays provided for in ACP's chapter 11 case pursuant to 11 U.S.C. §§ 105 and 362, or otherwise, and in existence on the Confirmation Date shall remain in full force and effect through the Effective Date.

6.     Except as otherwise provided in the ACP Plan or this Order, on the Effective Date, all executory contracts and unexpired leases to which ACP or its estate were parties on or prior to the Confirmation Date, and that have not been already assumed by ACP or otherwise rejected by other order of this Court, are assumed pursuant to Bankruptcy Code §§ 365 and 1123.

7.      Any Claim for damages arising from the rejection of an executory contract or unexpired lease of ACP under the ACP Plan will be forever barred and shall not be enforceable against ACP unless a Proof of Claim is filed with the Bankruptcy Court and served upon Reorganized ACP no later than thirty (30) days after the Confirmation Date.  Notwithstanding the rejection of any executory contract or unexpired lease at any time during ACP's chapter 11 Case, ACP reserves all rights and defenses it may have or have had against the other parties to such contracts and leases.

8.      Pursuant to Article IV of the ACP Plan, requests for payment of Administrative Expense Claims (other than Fee Claims, a liability incurred and paid in the ordinary course of business of ACP and previously Allowed Administrative Expenses) must be filed with the Court and served on ACP and its counsel, and any other party entitled to receive such notice, no later than fifteen (15) days after the Confirmation Date.  Failure to properly and timely file and serve notice of an Administrative Expense Claim as described in the ACP Plan and this Order shall result in such Administrative Expense Claim being forever barred and discharged.

9.      Pursuant to Article IV of the ACP Plan, each person or entity asserting a Fee Claim for services rendered or expenses incurred prior to the Effective Date shall file and serve on ACP and its counsel, and any other party entitled to receive such notice, a formal Fee Application for final allowance (or disallowance) of a Fee Claim no later than sixty (60) days after the Effective Date.  Failure to timely file and serve a Fee Application as described in the ACP Plan and this Order shall result in the corresponding Fee Claim being forever barred and discharged.

10.      Pursuant to Article X of the ACP Plan, all Avoidance Actions are preserved in ACP estate for the benefit of ACP's creditors.   Such Avoidance Actions shall, by operation of

this Order, be assigned free and clear of all liens (as defined in section 101(37) of the Bankruptcy Code), Claims and Interests to the ACP Creditor Trust on the Effective Date.  Additionally, Reorganized ACP and the ACP Creditors Trust Trustee retain the right to (a) commence, prosecute to judgment, settle and collect upon any cause of action (including Avoidance Actions), whether or not such cause of action is listed in Schedules and Statement of Financial Affairs as an asset of ACP's chapter 11 estate, and (b) include as defendants in any suit all parties which are, at this time, named and unnamed.

11.    Except with respect to Classes of Claims unimpaired pursuant to the ACP Plan, the distributions and rights afforded in the ACP Plan shall be in complete and full satisfaction, discharge and release, effective as of the Effective Date, of all Claims against and Interests in ACP or any of its respective assets or properties of any nature whatsoever.  Commencing on the Effective Date, except as expressly otherwise provided in the ACP Plan, all Claim holders and Interest holders shall be precluded forever from asserting against ACP, its agents and attorneys, or its assets and properties, any other or further liabilities, liens, obligations, Claims or Interests, or causes of action belonging to ACP  pursuant to 11 U.S.C. § 541 which could arise up through the Effective Date including but not limited to, all principal and accrued and unpaid interest and penalties on the debts of ACP, based on any act or omission, transaction or other activity or security interest or other agreement of any kind or nature occurring, arising or existing prior to the Effective Date, that was or could have been the subject of any Claim or interest, whether or not Allowed.  As of the Effective Date, ACP shall be discharged and released from and shall hold all the assets and properties received or retained by it pursuant to the ACP Plan, free of all liabilities, liens, Claims and obligations or other claims of any nature, known or unknown, except as set forth pursuant to the ACP Plan.  All legal or other proceedings and actions seeking to

establish or enforce liabilities, liens, Claims and interests or obligations of any nature against ACP or assets or properties received or retained by ACP with respect to debts and obligations, if any, of the ACP estate arising before the Effective Date shall be permanently stayed or enjoined, except as otherwise specifically provided in the ACP Plan. Notwithstanding the foregoing, this paragraph shall not be interpreted to release any third party claims, liabilities or other causes of action against the affiliates and principals of ACP unless the claim or cause of action so released is derivative of a claim or cause of action which was or could have been asserted against ACP in its chapter 11 case, or constitutes property of the ACP estate.

12.     Upon the Effective Date, except as otherwise in the ACP Plan, all promissory notes, shares, certificates, instruments, indentures, stock or agreements evidencing, giving rise to or governing any Claim or Interest against or in ACP (but expressly excluding: (a) any Guaranty Agreement executed by ACP for which the holder of such Guaranty elects to have the Guaranty ride through unaffected by the ACP Plan; and (b) the Operating Agreement of ACP, as amended pursuant to the ACP Plan) shall be deemed canceled and annulled without further act or action under any applicable agreement, law, regulation, order or rule. Obligations of ACP under such promissory notes, share certificates, instruments, indentures or agreements shall be discharged and the Holders thereof shall have no rights against ACP, the ACP Estate or Reorganized ACP, and such promissory notes, share certificates, instruments, indentures or agreements shall evidence no such rights, except the right to receive the distributions provided for in the ACP Plan. Notwithstanding the foregoing, the cancellation of such instruments and agreements shall be solely effective as to the ACP's obligation under such Instruments and Agreements and shall not be interpreted to discharge or release any claims against guarantors or any claims against any third party under those Instruments or Agreements.

13.     Neither ACP, nor the Committee or the ACP Creditors Trust Trustee, nor any of their respective members, officers, directors, employees, agents, advisors, affiliates, attorneys, accountants, nor any other professional person retained or employed by any of them (collectively, the "Exculpated Persons") shall have or incur any liability to any Creditor, Interest holder, or any other person or entity for any act taken or omission made in good faith in connection with or relating to the formulation, negotiation, implementation, confirmation, or consummation of the ACP Plan, including any settlement referenced or described therein, or in connection with or relating to the Disclosure Statement or any document, instrument, note or agreement executed or to be executed and delivered pursuant to the ACP Plan.  Such Exculpated Persons shall have no liability to ACP, any Creditor, Interest holder, or any other party in interest in the ACP's chapter 11 case, or any other person or entity, for actions taken or not taken under the ACP Plan, in connection therewith, or with respect thereto, or arising out of their administration of the ACP Plan or distributions of money or property under the ACP Plan, in good faith, including, without limitation, the failure to satisfy any condition or conditions, or refusal to waive any condition or conditions, to the occurrence of the Effective Date, and in all respects the Exculpated Persons shall be entitled to rely upon the advice of counsel with respect to their duties, rights, and obligations under the ACP Plan.

14.     On the Effective Date, ACP is specifically authorized, empowered and directed to take any and all actions necessary or appropriate to implement, effectuate and consummate the ACP Plan.

15.     On the Effective Date, the ACP Creditors Trust shall become effective.  The ACP Creditors Trust is hereby authorized, as of the Effective Date, to assume the responsibilities and exercise the rights as provided in the ACP Plan and the ACP Creditors Trust Agreement.  The

initial ACP Creditors Trust Trustee shall be SLTN TRUST LLC d/b/a Solution Trust. The powers, authority, responsibilities and duties of the ACP Creditors Trust Trustee shall be as set forth in and governed by the ACP Creditors Trust Agreement, in form and substance in conformity with Exhibit D-1 to Debtors' Supplement to the Plan [Docket No. 978], the terms of which are hereby approved. Other documents in connection with the ACP Creditors Trust may be executed and entered into by the ACP Creditors Trust Trustee on behalf of the beneficiaries of the ACP Creditors Trust. The ACP Creditors Trust Trustee shall be the representative of the ACP Creditors Trust. The ACP Creditors Trust Trustee shall also serve as the Disbursing Agent under the ACP Plan.

16.    On the Effective Date, all duplicative Claims (identical in both amount and subject matter) filed against ACP automatically will be expunged so that only one Claim survives against ACP (but in no way shall such surviving Claim be deemed Allowed by reason of this Order).

17.    The Committee, as concerns ACP, shall continue in existence for a period of ninety (90) after the Effective Date, at which point it shall dissolve automatically with respect to ACP, whereupon its members, Professionals and agents shall be released from any further duties and responsibilities in the ACP chapter 11 case and under the Bankruptcy Code, except as otherwise provided in the Plan. The Committee for DLH shall continue in effect pending confirmation of the DLH Plan and/or further Court order.

18.    Notwithstanding any provision in the ACP Plan, the Disclosure Statement or this Order to the contrary, it is expressly ordered that neither the ACP Plan nor the confirmation thereof nor this Order shall be deemed or construed to affect or impair in any way the rights of Allen Rosedale Land Venture I, LLC or FKM Associates, LLC to enforce the Amended and

Restated Operating Agreement of Rosedale Land Venture I, LCC (dated June 15, 2006) and the First Amendment to Amended and Restated Operating Agreement of Rosedale Land Venture I, LLC (effective as of August 17, 2009) in accordance with applicable law.

19.    Notwithstanding any provision in the ACP Plan, the Disclosure Statement or this Order to the contrary, it is expressly ordered that the determination of the nature, extent, amount and secured status of the Compass claim based on the Compass Land Loan and the objection filed by ACP to such claim, the validity and extent of Compass's security interest  in and to the collateral asserted in such claim and the value of such collateral are expressly reserved and shall be determined in a subsequent hearing before the Court along with the determination of whether any stay or injunction should be entered against Compass regarding the enforcement and payment of any allowed amount on the Compass claim against ACP based on the Compass Land Loan.

20.    In the event of any inconsistency between the ACP Plan and any other agreement, instrument or document intended to implement the provisions of the ACP Plan, the provisions of the ACP Plan shall govern unless otherwise expressly provided for in such agreements, instruments or documents.  In the event of any inconsistency between the ACP Plan and any other agreement, instrument or document intended to implement the provisions of the ACP Plan and this Order, the provisions of this Order shall govern unless otherwise expressly provided for in such agreements, instruments or documents.  Pursuant to Bankruptcy Code §§ 1123(a) and 1142(a) and this Order, the ACP Plan shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.

21.     Upon consultation with, and agreement by (with such agreement not to be unreasonably withheld), the Committee and Compass, ACP is authorized to make any technical, clerical and non-material modifications to the ACP Plan without further order of this Court.

22.     All Findings and Conclusions contained in this Order shall be applicable solely to the ACP Plan and shall not be applicable or determinative of any findings or conclusions by the Court as to the DLH Plan which is under consideration by the Court.

23.     To the extent that, under applicable non-bankruptcy law, any of the actions required by the ACP Plan and/or this Order would otherwise require the consent or approval of the holders of Interests in ACP, this Order shall constitute such consent or approval, and such actions shall be, and are deemed to have been, taken by unanimous action of the holder of all Interests in ACP.

24.     This Order is in recordable form and shall be accepted by any filing or recording officer or authority of any applicable governmental unit for filing and recording purposes without further or additional orders, certifications or other supporting documents.

25.     Neither the failure to specifically reference herein any particular provision of the ACP Plan nor the mistaken reference of any particular provision of the ACP Plan shall have any effect on the validity or enforceability of such provision, all of which provisions are hereby authorized and approved.

26.     In accordance with Bankruptcy Rules 2002 and 3020(c), on or before the Effective Date, ACP shall give notice of the entry of this Order, including a copy of this Order in the form entered by the Court, by first-class, postage-prepaid, U.S. Mail to all holders of Claims against or Interests in ACP and to all parties who requested notice pursuant to Bankruptcy Rule 2002.

27. Promptly after the occurrence of the Effective Date, Reorganized ACP shall give written notice of entry of the Effective Date by first-class, postage-prepaid, U.S. Mail to all holders of Claims against or Interests in ACP and to all parties who requested notice pursuant to Bankruptcy Rule 2002.

28. On and after the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction, to the fullest extent permissible under law, notwithstanding entry of this Order, over all matters arising out of or related to ACP's chapter 11 case as specifically set forth under Article XII of the ACP Plan.

### ###End of Order###

Submitted and Prepared by:

 /s/ Mark MacDonald
Mark E. MacDonald
State Bar No. 12758300
MacDonald + MacDonald, P.C
10300 N. Central Expressway, Suite 335
Dallas, Texas 75231
Tel.: (214) 237-4220
Fax: (214) 890-0818
Email: mark@macdonaldlaw.com

**COUNSEL FOR DLH MASTER LAND HOLDING, LLC
AND ALLEN CAPITAL PARTNERS, LLC,
DEBTORS AND DEBTORS IN POSSESSION**